**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:19-cv-624**

| | |
|---|---|
| DAVID DUVALL ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **COMPLAINT** |
| NOVANT HEALTH, INC. ) | |
| ) | |
| Defendant. ) | |

1. Plaintiff is a citizen and resident of Michigan. He is a Caucasian male.

2. Defendant Novant Health, Inc. is a North Carolina non-profit corporation with principal offices in both Forsyth County and Mecklenburg County, North Carolina. It operates health care facilities and employed approximately 29,000 employees at the time of Plaintiff's termination by Defendant in July 2018.

## JURISDICTION & VENUE

3. This Court has jurisdiction under 42 U.S.C. § 1331, as this action presents federal claims under 42 U.S.C. § 2000e-2 and 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 1140.

4. Defendant was Plaintiff's employer and employs more than 500 persons for purposes of the Title VII, including 42 U.S.C. § 2000e(b) and 42 U.S.C. § 1981a, and the North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.2.

5. Plaintiff was Defendant's employee for purposes of 42 U.S.C. § 2000e(f).

6. Plaintiff had exhausted all administrative prerequisites for filing an action under 42 U.S.C. § 2000e-5(f). He filed a timely charge of discrimination with the Equal Employment Opportunity Commission, charge number 430-2019-00733. The agency issued notice of the right to sue on September 19, 2019.

7. The Court also has jurisdiction under 42 U.S.C. § 1332 and 42 U.S.C. § 1367 over Plaintiff's state law claims. He is a resident of a foreign state and presents claims against a Defendant citizen of this state with a value in excess of $75,000. And, alternatively, the state law claims arise out of a common nucleus of operative fact.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), as Plaintiff worked for Defendant in Mecklenburg County and most if not all of the challenged actions occurred in Mecklenburg County.

**FACTS**

9. Plaintiff had a successful career in marketing and public relations when Novant Health, Inc. ("Novant") hired him on August 5, 2013 to the position of Senior Vice President of Marketing and Communications.

10. Plaintiff reported to Jesse Cureton, the Executive Vice President and Chief Consumer Officer, and worked out of the Novant offices in Mecklenburg County.

11. Plaintiff was hired pursuant to an agreement that classified him as a "Tier II" executive in the company's "Executive and Leader" compensation plan.

12. Among the terms of his employment offered at the time he was hired, was a severance pay plan that provided specific severance benefits to Plaintiff as a Tier II executive.

13. Under the severance plan, if, after at least six months but less than five years of employment, a Tier II or III executive was terminated without cause or their salary reduced or their position eliminated or downgraded, the executive was entitled to severance of 12 months of base pay, paid in installments over the next 12 months with most employee benefits intact, plus a lump sum payment of the amount of bonus that the executive had received in the prior fiscal year.

14. Upon five years of employment, the severance amount, triggered in the same possible ways, increased to 18 months of base pay and benefits, paid in installments over 18 months, plus a lump sum of 1.5 times the bonus the executive had received in the prior fiscal year.

15. Also, by the express terms of the severance plan, any executive in any of the "Tiers" who was terminated without cause would, "under normal circumstances," receive 30 days' notice of that decision.

16. Without prior warning, and without any explanation as to why that promised "normal circumstances" did not apply, Novant terminated Plaintiff on July 30, 2018 and ordered him off the premises immediately, five days before his fifth work anniversary.

17. Jesse Cureton notified Plaintiff of this decision and offered no explanation for it, stating the decision had nothing to do with Plaintiff's performance, that Plaintiff had done everything asked of him and more.

18. In fact, Plaintiff's performance during his five years with Defendant had been very highly rated, both internally and externally.

19. Internally, Plaintiff received strong evaluations from Cureton every year. And an assessment process conducted for Novant by the consulting group, Press Ganey, rated Plaintiff as a Tier I performer every year, the highest possible classification.

20. Further, his team received a "resiliency" score near 95 (out of 100) each year, one of the highest scores in Novant, indicating a high level of workplace satisfaction among the members of Plaintiff's team.

21. Plaintiff also sat on numerous steering committees and strategic councils and he co-led with the Novant medical group Chief Operating Officer a unique and extensive program of digital access for health consumers that was the first of its kind in health care; a project successfully rolled out in June 2018 shortly before he was terminated.

22. Externally, marketing projects developed under Plaintiff's leadership earned industry-wide recognition and awards, and Plaintiff, as Novant's representative, became one of four leaders of a national Consumer Consortium organized by the Health Management Academy.

23. In fact, Plaintiff was so productive that Novant split his duties between two separate positions, promoting one of Plaintiff's direct reports, a white female, into a new role of Chief Communications Officer, and hiring a black female as the leader of Marketing.

24. Novant fired Plaintiff without warning or cause as part of an intentional campaign to promote diversity in its management ranks; a campaign it has boasted about publicly.

25. The following persons, all white men, were separated from Novant and replaced by either a racial minority and/or female in a period of 12 to 18 months. On information and belief, like Plaintiff, all were terminated suddenly, without warning and without any public statement of appreciation or any event to recognize the departing employee's service.

26. The Chief Legal Officer was replaced by a black male; the Medical Group President was replaced by a black female; the Chief Information Officer was replaced by a white female; the Patient Experience Officer was replaced by a white female; and the President of Haymarket Medical Center in Northern Virginia was replaced by a black male.

27. While the goal of achieving diversity in leadership has recognized value, terminating high performing employees with no justification or purpose other than to achieve diversity constitutes an adverse employment action based on race and/or gender.

28. Further, Defendant purposely did not give Plaintiff the 30 days' notice expected under the severance plan to avoid him reaching his fifth-year anniversary and becoming eligible for the severance plan's provision for 18 months of base pay and benefits and 1.5 times his prior year's bonus upon five years of employment.

29. Plaintiff was terminated just weeks after an email announcing plans to recognize him and others for their five years of service to Novant.

30. As a result of the termination and its timing, Plaintiff was unemployed for nearly a year, lost the severance pay of 18 months of base pay and 1.5 times his prior bonus, over $200,000 in 457(f) plan retirement benefits, incurred out of pocket expense for health insurance and suffered the humiliation of being abruptly terminated because of his race and gender.

## FIRST CLAIM FOR RELIEF
### (Title VII)

31. All prior paragraphs are incorporated by reference.

32. Defendant's termination of Plaintiff to achieve racial and gender diversity constituted employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

33. Plaintiff is a white male who was performing at a high level and exceeding the performance expectations of Defendant.

34. Defendant nonetheless terminated Plaintiff for the purpose of replacing him with two persons, one of a different gender and the other of a different gender and race.

35. In fact, Plaintiff was performing at such a high level that Defendant divided his duties among that white female and black female.

36. Defendant's termination of Plaintiff for the purpose of improving diversity constituted discrimination based on sex and race.

37. Plaintiff seeks and is entitled to all damages recoverable, including his lost wages, the lost severance benefits of 18 months of base pay and a lump payment that is 1.5 times the amount of bonus he received in the fiscal year before he was fired, the replacement value of lost 457(f) retirement benefit, the cost of maintaining health insurance and any other benefits after he was terminated.

38. He also seeks compensatory damages under 42 U.S.C. §1981a.

39. He also seeks punitive damages under §1981a, as Defendant's highest managers acted with malice toward Plaintiff, as shown in not providing 30 days' notice to deny him severance benefits, and/or the reckless indifference to the violation of his rights under Title VII.

40. He also seeks reasonable attorneys' fees under 42 U.S.C. § 1988 and § 2000e-5(k).

## SECOND CLAIM FOR RELIEF
### (29 U.S.C. § 1140)

41. All prior paragraphs are incorporated by reference.

42. The severance plan, which included the guaranteed continuation of salary and health and life insurance benefits for certain classified employees, was an employee benefit plan subject to ERISA.

43. Plaintiff was a participant in that benefit plan under 29 U.S.C. § 1102(7).

44. 29 U.S.C. § 1140 makes it unlawful to "discharge" or "discriminate" against a participant or beneficiary of an employee benefit plan to prevent the "attainment of any right to which [a] participant may become entitled under the plan."

45. The Defendant terminated Plaintiff five days before his fifth anniversary to prevent him from attaining the severance benefit available to those with five years of service, and thus violated 29 U.S.C. § 1140.

46. Plaintiff is entitled to reinstatement with back pay and benefits and an order making his service continuous to make him eligible for the severance benefit of a five-year Tier II executive.

47. Plaintiff is also entitled to the costs of this action, including reasonable attorneys' fees under 29 U.S.C. 1132(g)(1).

## THIRD CLAIM FOR RELIEF
### (Wrongful Discharge)

48. All prior paragraphs are incorporated by reference.

49. Defendant terminated Plaintiff on account of his race and sex.

50. Plaintiff is a white male and was performing his job at a satisfactory level, exceeding the performance expectations of Defendant when he was terminated, then replaced by two persons, a white female and a black female for the express purpose of increasing gender and racial diversity among Novant executives, a fact Novant has boasted publicly about pursuing and accomplishing as an organization.

51. The North Carolina Legislature has declared in N.C.G.S. § 143-422.2, the North Carolina Equal Employment Practices Act that:

> It is the public policy of this State to protect and safeguard the right and

opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of . . . . race (or) sex. . .by employers which regularly employ 15 or more employees.

It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment foments domestic strife and unrest, deprives the State of the fullest utilization of its capacities for advancement and development, and substantially and adversely affects the interests of employees, employers, and the public in general.

52. Defendant's termination of Plaintiff on account of his race and sex directly violated this express public policy of the State of North Carolina. Thus, the termination of Plaintiff was wrongful and unlawful under state law.

53. As a result of his wrongful discharge, Plaintiff has lost wages and benefits, lost the severance promised at five years, lost retirement benefits and incurred out of pocket expenses, as well as suffered humiliation. He seeks actual and compensatory tort damages.

54. The actions of Defendant were taken and approved by the highest-level executives at Novant and exhibited willful and wanton disregard for Plaintiff's rights and well-being. Such actions were contrary to the public interest and warrant exemplary or punitive damages to the extent allowed by Chapter 1D of the General Statutes.

## FOURTH CLAIM FOR RELIEF
### (Wrongful Discharge)

55. All prior paragraphs are incorporated by reference.

56. Defendant terminated Plaintiff just days before his fifth work anniversary to avoid paying him the severance to which he was contractually entitled, in violation of the public policy set out in North Carolina's Wage and Hour Act N.C.G.S § 95-25.1, *et seq.*

57. To the extent his termination is not preempted by his claim under 28 U.S.C. § 1140, Plaintiff brings this wrongful discharge claim for violating the public policy set out in the Wage and Hour Act.

58. Under N.C.G.S §95-25.2(5), Defendant is an "employer."

59. Under N.C.G.S §95-25.2(4), Plaintiff was an "employee" of Defendant.

60. The severance amounts owed Plaintiff under the severance plan are "wages" under N.C.G.S § 95-25.2 (16).

61. Defendant fired Plaintiff without cause or justification just days prior to his fifth-year work anniversary solely to avoid its obligation to pay severance wages of 18 months and 1.5 times his last bonus, as promised to him by Defendant to secure his employment.

62. Terminating Plaintiff to deny a person a promised wage is contrary to the public policy set out in the Wage and Hour Act and thus constitutes wrongful discharge.

63. As a result of his wrongful discharge, Plaintiff has suffered loss of employment, income and benefits, lost the severance promised at five years, incurred out of pocket expenses as well as suffered humiliation. He seeks actual and compensatory tort damages.

64. The actions of Defendant were taken and approved by the highest-level executives of Novant who exhibited malice in the timing and willful and wanton disregard for Plaintiff's rights and well-being and knew or should have known that a termination to avoid paying earned wages was unlawful. Such actions were contrary to the public interest and warrant exemplary or punitive damages to the extent allowed by Chapter 1D of the General Statutes.

## Jury Demand

65. Plaintiff demands that all matters except the claim under 29 U.S.C. § 1140 be tried before a jury of his peers. Plaintiff's counsel understands that the claim under 29 U.S.C. § 1140 is a matter for the court by statute. Should that understanding be incorrect, Plaintiff asks that the claim also be tried before a jury.

## Prayer for Relief

Upon the trial of this action, Plaintiff prays that the Court enter judgment against the Defendant and Order Plaintiff the following relief:

a. Full equitable relief, including reinstatement with full back pay and all lost benefits, both health and retirement and the five-year severance package, and, in lieu of reinstatement, full back pay and benefits and reasonable front pay;

b. Compensatory damages under 42 U.S.C. § 1981a(b) and the common law;

c. Punitive damages against Defendant to the extent allowed under Chapter 1D of the North Carolina General Statutes and under 42 U.S.C. § 1981a (b) and § 1988;

d. The costs of this action, including reasonable attorney's fees under 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k) and 29 U.S.C. § 1132(g)(1);

e. Interest on the judgment at the statutory rate; and,

f.  Any further relief the Court deems just and necessary.

Respectfully submitted this 18th day of November, 2019.

*/s/ S. Luke Largess*
S. LUKE LARGESS
N.C. Bar Number 17486
Tin, Fulton, Walker & Owen, PLLC
301 East Park Ave.
Charlotte, North Carolina 28203
Tel.: 704-338-1220
Fax: 704-338-1312
llargess@tinfulton.com