IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| DAVID DUVALL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 3:19-cv-624-DSC |
| NOVANT HEALTH, INC., | ) ) |
| Defendant. | ) ) |
| | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT NOVANT HEALTH, INC.'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

COMES NOW Defendant Novant Health, Inc. ("Novant Health"), by and through its counsel, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, and respectfully submits this Memorandum in Support of its Renewed Motion for Judgment as a Matter of Law.

## I.     INTRODUCTION

Although jury trials play an important role in the justice system, the law bars verdicts that lack a legally sufficient evidentiary basis. Fed. R. Civ. P. 50. In this case, Plaintiff failed to submit any competent evidence from which a reasonable jury could conclude that his sex (male) or race (white) were motivating factors in the decision to terminate his employment. To the contrary, Plaintiff – in his own testimony – admitted that Novant Health's executive decisionmaker did not intentionally discriminate against him. The failure to prove intentional discrimination requires the entry of judgment in Novant Health's favor as a matter of law.

As set forth below, there are multiple, material reasons that warrant the entry of judgment as a matter of law for Novant Health. First, Plaintiff's evidence of discriminatory animus was based on his testimony regarding the terminations of other non-similarly situated Novant Health

employees – despite prior rulings from the Court correctly barring this evidence as inadmissible. Such a disregard for the Court's orders on a paramount issue merits judgment in Novant Health's favor. Further, because Plaintiff admitted at trial that this inadmissible pattern evidence is the basis for his belief that he was discriminated against, judgment in his favor must be vacated.

Second, Plaintiff cited Novant Health's diversity, inclusion, and health equity (hereinafter "D&I") efforts as evidence of discriminatory animus. At trial, Plaintiff presented extensive evidence of those D&I efforts – which even Plaintiff admitted were "**properly done**" during his employment. (Doc. 117, 84:16-21). Despite his focus on this evidence, Plaintiff never established any evidentiary tie between these efforts and his own termination – other than sheer speculation. Evidence of lawful and proper diversity efforts cannot serve as a basis to establish discriminatory animus and thus, even if properly admitted, cannot support judgment in Plaintiff's favor. To accept Plaintiff's contentions regarding Novant Health's D&I efforts would undermine diversity programs by countless employers and turn back decades of progress in integrating the workplace.

When Plaintiff's case is stripped of the inadmissible "other employee" evidence – and evidence of Novant Health's admittedly proper and unconnected D&I efforts – there is not a shred of evidence to support a judgment that Plaintiff was the victim of actionable race or sex discrimination. In fact, absent this "other employee" evidence, one is left with Plaintiff claiming wrongful termination based solely on his own speculation while (1) previously admitting that not a single individual discriminated against him in his termination, and (2) admitting that the person who decided to terminate his employment did not have any personal animus against him and "didn't treat [Plaintiff] prejudicially." (Doc. 117, 61:7-25). Because Plaintiff offered no competent evidence of discriminatory animus, this case should not have been permitted to proceed to verdict.

## II.    LAW, ARGUMENT, AND INCORPORATED FACTS

### A.    Standard for Judgment as a Matter of Law

Under Fed. R. Civ. P. 50, a motion for judgment as a matter of law calls for judgment in a defendant's favor if the evidence does not provide a legally sufficient basis for a reasonable jury to find in the plaintiff's favor. *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 244 (4th Cir. 2020). This standard tests whether the plaintiff has presented "substantial evidence" to support each element of his claim. *Stamathis v. Flying J, Inc.*, 389 F.3d 429, 436 (4th Cir. 2004). A motion for judgment as a matter of law is reviewed with the same standard as a motion for summary judgment. *Dennis v. Columbia Colleton Med. Ctr.*, 290 F.3d 639, 644 (4th Cir. 2002). Therefore, a mere scintilla of evidence is insufficient to support a verdict, as are speculation and conjecture. *DeJarnette v. Corning Inc.*, 133 F.3d 293, 297 (4th Cir. 1998); *Fry*, 964 F.3d at 244.

Moreover, while "[t]he court should draw reasonable inferences on behalf of the non-moving party, … it must not slip into 'sheer speculation.'" *Gibson v. Old Town Trolley Tours of Washington*, *D.C., Inc.*, 160 F.3d 177, 181 (4th Cir. 1998) (quotation omitted). "[I]f the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture, judgment as a matter of law must be entered." *Bennett v. CSX Transp., Inc.*, 552 F. App'x 222, 226 (4th Cir. 2014) (citation omitted) ("it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture."). Here, Plaintiff produced no competent evidence that Novant Health's decision to terminate his employment was the result of intentional race or sex discrimination, and the jury consequently based its verdict on speculation and conjecture. Accordingly, the Court should enter judgment as a matter of law in Novant Health's favor.

## B.     Plaintiff's Reliance on Inadmissible "Pattern" Evidence Compels Judgment for Novant Health

Before trial, Novant Health timely filed a Motion *in Limine* to exclude anticipated evidence and trial testimony regarding the terminations of other former Novant Health employees. (Doc. 70, 71). Novant Health argued that the evidence was irrelevant, had the potential to create mini-trials that would confuse and distract the jury from the ultimate issue, and would cause undue prejudice. (Doc. 71). The Court granted this motion in full, barring presentation of this "other employee" evidence at trial. (Doc. 84).

Despite this Order, Plaintiff's counsel sought reconsideration of the issue at the Pretrial Conference – first by requesting that the evidence be allowed to support his ERISA claim and then requesting that it be admitted to support Plaintiff's reverse discrimination claim. (Doc. 108, 7:15-16:24). Defendant's counsel objected, noting: "All this does is create mini trials, confusion for the jury and, frankly, prejudice to the Defendant, because the one thing that's not being tried here is whether or not *David Duvall* was discriminated against." (*Id.*, 17:22-18:10) (emphasis added). In response, the Court denied Plaintiff's request for reconsideration, including introduction of the evidence for ERISA purposes, "to be consistent as far as what I ruled in the Motion in Limine..." (*Id.*, 19:13-20).

Plaintiff sought immediate reconsideration of the issue at the conference, again asking to introduce the "other employee" evidence for his ERISA claim. (*Id.* at 19:22 to 20:8). The Court again denied this request. (*Id.* at 20:9-22). Notably, the Court recognized that should such evidence be presented at trial even for consideration by the Court, a cautionary instruction to the jury would be ineffective:

> And then I would be in a position of having to give a cautionary instruction and tell them well, you heard this, but you're to disregard it as far as the discrimination complaint or discrimination claim. I think that gets – that gets pretty confusing.

(*Id.*)

Thereafter, for the third time during the Pretrial Conference, Plaintiff's counsel sought permission to introduce the evidence, again for ERISA purposes. (*Id.* at 20:23 to 21:16). The Court again reaffirmed its ruling excluding the evidence. (*Id.* at 21:17-18).

In light of Plaintiff's counsel's repeated requests, Novant Health's counsel expressed concern "that despite the Court's ruling with respect to the comparators, that Plaintiff, in his testimony, is going to veer off on his own, talking about comparators unilaterally. And we'd just like some guidance on that, when and if that happens, Judge." (*Id.*, 33:23-34:4). The Court declined to preemptively address the issue.

After the conference, Plaintiff filed a Motion for Reconsideration, again asking that the Court reconsider its explicit and repeated rulings excluding Plaintiff's "other employee" evidence. (Doc. 88). After Novant Health responded to this request, the Court again denied Plaintiff's request to introduce this evidence. (Doc. 94, Text Order 9/7/21).

On the first day of trial, Novant Health's counsel repeated its concern about Plaintiff violating the motion *in limine* ruling and subsequent orders affirming it. (Doc. 114, 4:21-5:23). In response, Plaintiff's counsel confirmed his understanding that Plaintiff could not introduce evidence of terminations by other decisionmakers. (*Id.*, 6:5-7:23). He claimed, however, that Plaintiff was entitled to present evidence of terminations by Jesse Cureton, the decisionmaker in this case. (*Id.*, 6:14-7:10). In response, Novant Health objected, explaining, among other things, that this was a "classic 403 situation." (*Id.*, 8:2-9:10). The Court ultimately ruled: "I'm going to

allow the evidence as to those individuals who came under Mr. Cureton consistent with the motion in limine. I'll sustain the objection to the remainder."[1] (*Id.*, 41:3-8).

Despite this ruling, Plaintiff testified explicitly at trial about the very evidence the Court had now barred five times:

> **And then, you know, I was aware that several senior male executives had been let go from the company in the months prior to me being let go. And then in the weeks and months following my termination, more and more were being let go. And that's when you know, a very clear pattern started to emerge when you have, you know, your chief legal officer, your chief experience officer, your chief medical officer, your chief IT officer, your president of the Charlotte market, yourself.**

(Doc. 116, 198:21-199:5).[2] Novant Health objected pursuant to Rule 103, stating: "Mr. Duvall in his testimony unilaterally raised all of the positions that were barred by the Court's decision on the motion *in limine* that were verbally re-argued in the pretrial conference and also denied and were also denied in the motion for reconsideration." (*Id.*, 212:15-19).

Notably, in attempting to downplay Plaintiff's testimony directly violating the Court's Order, Plaintiff's counsel admitted that they had already repeatedly offered evidence regarding this claimed – and barred – pattern of terminations. (Doc. 117, 5:16-7:7). Ultimately, the Court elected to provide a curative jury instruction, despite its previous misgivings on doing so. (*Id.*, 13:16-14:1, 23:7-17). That instruction was insufficient.

---

[1] Plaintiff presented evidence regarding individuals reporting to Mr. Cureton throughout the trial. (Doc. 114, 148:21-25, Doc. 115, 184:4-185:13, Doc. 116, 198:21-199:5). As set forth below, this testimony should never have been presented at trial and does not provide support for the jury's verdict, even if properly admitted.

[2] Mr. Cureton made the decision to involuntarily terminate only one of the individuals listed in Plaintiff's quoted testimony – Plaintiff. (Doc. 117, 167:14-171:6).

6

After this ruling, Plaintiff again testified about the barred "other employee" evidence: "But then having seen other executives that I had worked with prior to me being terminated, which was confusing, and then others being terminated after I had been terminated; a pattern just clearly emerged in my mind." (*Id*. at 56:18-57:1). He went on: "But a pattern emerged that entitled me to step back and look at the totality of the facts and file this." (*Id*., 62:9-11). On cross examination, however, Plaintiff admitted that he did not believe he was discriminated against at any time during his employment, and he testified that he did not believe he was the victim of individualized or personal discrimination. Instead, Plaintiff testified that the inadmissible pattern evidence was *the basis* for his belief that he was discriminated against. (*Id*., 56:18-57:1, 62:9-11, 73:4-9).

Plaintiff's counsel also confirmed the central nature of the putative pattern evidence, explaining: "I want to at least include the people who reported directly to Mr. Cureton and who he terminated in that period of time under this diversity plan. That's the whole plan of this lawsuit." (Doc. 114, 11:17-24). Plaintiff's counsel then highlighted this barred evidence in his closing argument, albeit through avenues other than Plaintiff's testimony: "And that pattern was described by Mr. Armato, described by Mr. Cureton to the recruiter, and described by Mr. Brunstetter that began this focus on the numbers." (Doc. 119, 57:3-11). Plaintiff's counsel also sought this inadmissible evidence directly from witness Matthias Krebs:

> Q.    Mr. Krebs, in the people you saw being let go without reason … to you was the pattern one where they intended to be white men?
>
> A.    Yes

(Doc. 115, 233:3-13).

Based on the foregoing, it is clear that Plaintiff knowingly offered testimony and argument that violated the Court's Order (reiterated four more times) barring Plaintiff's putative pattern evidence. The testimony was on an issue that Plaintiff believed was so material that he requested

reconsideration of it on three separation occasions and that Plaintiff and his counsel confirmed was the entire basis for his claim. While the Court provided the jury with a limiting instruction following this improper testimony, that instruction was plainly ineffective. There was simply no way to "un-ring the bell" and retract this evidence or to ensure it was disregarded. That is particularly so in light of Plaintiff's emphasis in closing argument on this previously excluded evidence.

In unilaterally disobeying the Court's repeated Orders on a material issue, Plaintiff risked having his verdict overturned. Under the Court's inherent authority, willful disobedience of a court's order is grounds for entering judgment contrary to a jury verdict. *See Fuery v. City of Chicago*, 900 F.3d 450, 454-57 (7th Cir. 2018) (affirming entry of judgment in favor of the non-prevailing party based on plaintiff's counsel's willful disobedience during the trial, which included repeated violations of the court's motions *in limine* orders). The Court can – and should – overturn the verdict for this reason alone.

Importantly, even if Plaintiff's violation of the Court's repeated Orders could be excused, the Court may not consider such inadmissible evidence in ruling on judgment as a matter of law. *See Weisgram v. Marley Co.*, 528 US 440, 457 (2000) (inadmissible evidence contributes nothing to a "legally sufficient evidentiary basis" and therefore should not be considered when ruling on a Rule 50 motion). Given Plaintiff's admission that his belief he was discriminated against was developed because of, and rests upon, this claimed and inadmissible pattern evidence, Plaintiff's judgment is entirely unsupported and must be overturned. *See Tinsley v. City of Charlotte*, 854 F. App'x 495, 496 (4th Cir. 2021) (unpublished) (overturning judgment for plaintiff in employment case, finding that where plaintiff's comparator theory failed as a matter of law, and that was what he relied upon at trial, there was no remaining evidence of discrimination to support a verdict).

## C.   Plaintiff's Evidence Related to the Other Employees Reporting to Mr. Cureton Cannot Support His Case

Without the foregoing inadmissible "other employee" evidence, Plaintiff may argue that a pattern is still established through the separations of individuals reporting to Mr. Cureton. This argument fails for two reasons.

### i.   *The Cureton Separations are Inadmissible*

First, evidence regarding other employees reporting to Mr. Cureton should not have been admitted at trial. *Precision Fabrics Group, Inc. v. Tietex Intl., Ltd.*, 367 F. Supp. 3d 487, 498 (D.S.C. 2019), *aff'd*, 790 F. App'x 208 (Fed. Cir. 2020) (unpublished) (citation omitted) ("the district court is fully empowered to reverse its evidentiary rulings post-trial and to reconsider that evidence's effect on the trial").

Novant Health has set forth the legal landscape on admitting "other employee" evidence several times. (*See, e.g.* Doc. 94). In short, to be admissible at trial, this evidence must satisfy Rules 401 and 403. *Calobrisi v. Booz Allen Hamilton, Inc*., 660 F. App'x 207, 209 (4th Cir. 2016). This admissibility inquiry must be made "for each piece of other employee evidence." *Id*. at 209 (citing *Sprint/United Mgt. Co. v. Mendelsohn,* 552 U.S. 379, 387-88 (2008)).

In this case, there was no individualized inquiry into whether any of these employees was similarly situated to Plaintiff, beyond the bare fact that some (but not all) employees were separated by Mr. Cureton. When considered on an individualized basis as required, it is clear that these separations do not sufficiently mirror Plaintiff's. *See Calobrisi*, 660 F. App'x at 209 (quoting *Griffin v. Finkbeiner*, 689 F.3d 584, 599 (6th Cir. 2012)) (the factors that courts consider when determining the admissibility of this evidence include: whether the other discriminatory behavior described "is close in time to the events at issue in the case, whether the same decisionmakers were

involved, whether the witness and the plaintiff were treated in a similar manner, and whether the witness and the plaintiff were otherwise similarly situated.").

As an example, one employee discussed at trial did not even report to Mr. Cureton at the time of his termination – and Mr. Cureton did not make the decision to end his employment. (Doc. 117, 167:14-171:20). As another example, one employee was not even terminated – he voluntarily quit and no longer reported to Mr. Cureton when he resigned. (*Id.*) A third employee was a white male who was replaced by another white male, and a fourth was a black male. (*Id.*) These individuals – for obvious reasons – were not similarly situated and, thus not comparable to Plaintiff.

This evidence is inadmissible under Rule 403. Permitting Plaintiff to reference multiple dissimilar separations under Mr. Cureton allowed Plaintiff to repeatedly refer to a "pattern" throughout the trial, though the Court had already barred Plaintiff from presenting pattern evidence five times, including due to Rule 403. (Doc. 84). It also allowed Plaintiff to present handpicked, anecdotal evidence of a claimed pattern despite objective evidence that Novant Health had no pattern of terminating and replacing white men at the SVP level. (Doc. 115, 44:16-48:2). Repeated introduction of this evidence was highly misleading and prejudicial. *See Ellison v. Fund for Theological Educ., Inc*., No. 5:13CV136, 2015 WL 1221293, at *2 (N.D.W. Va. Mar. 17, 2015) (refusing to admit evidence of nine other white employee terminations, noting that an employee's perception of a pattern of terminations in a protected class does not "reveal a discriminatory policy or practice" of the employer).

### ii. *The Cureton Separations Do Not Establish Plaintiff's Claimed Theory*

Even if evidence related to the separations under Mr. Cureton was properly admitted at trial, such evidence does not support judgment in Plaintiff's favor. In fact, virtually none of the

handpicked employees about whom Plaintiff presented testimony fit his claimed pattern of replacement of white males by female or minority candidates. For example, one employee was not even terminated and another was replaced with another white male. (Doc. 117, 167:14-171:20). Testimony regarding such varied individuals does not establish a pattern of race or sex discrimination, and it may not be used to support Plaintiff's claims.

Other evidence at trial demonstrates how Plaintiff's cherry-picked testimony regarding Mr. Cureton fell far short of permissible pattern evidence. For instance, during the same time period, Mr. Cureton hired and fired an African American employee at the same level as Plaintiff. (*Id.*) Mr. Cureton also hired Plaintiff, as a white man, over a diverse slate of candidates. (*Id.*, 147:17-22). And Plaintiff's theory regarding pattern evidence was entirely undercut by Plaintiff's insistence that hiring two black female employees is a "pattern" of discrimination, while hiring two white men is not:

> Q.    Okay. Let me ask you a question. When you were hired by Novant into that SVP position, did you believe you received preferential treatment?
>
> A.    No.
>
> Q.    Okay. Mr. Duvall, do you happen to know who had the SVP marketing and communications prior to you?
>
> A.    I do.
>
> Q.    Who's that?
>
> A.    Jim Tobowski.
>
> Q.    And Jim Tobowski, is he male?
>
> A.    He is.
>
> Q.    Is he a white male?
>
> A.    He is.

Q.     So despite the fact that Mr. Tobolski was a white male and you were hired as a white male, two white males in a row, that was not preferential treatment when you were hired, but when these two ladies were hired it was preferential treatment?

A.     Mr. Holland, I didn't say preferential. I said pattern, a very specific pattern that I believe was used to select that slate of candidates.

…

Q.     And the pattern that you identify is the fact that the two African-American woman were required for that in a row. What I pointed out that two white men were in that role prior to that. Why is it a pattern when only the African-American are being hired?

A.     Because the white men – you know, that falls outside of the diversity definition.

(Doc. 117, 79:3-80:24).  Such testimony underscores the selective and dubious nature of Plaintiff's putative pattern evidence. Plaintiff's presentation of anecdotal evidence of dissimilar separations cannot support the verdict. *See Tinsley*, 854 F. App'x 495 (overturning jury verdict based on introduction of a dissimilar employee evidence and remanding the case for judgment in favor of the defendant).

**D.     Evidence Relating to Novant Health's D&I Efforts Was Improperly Admitted and Cannot Support a Verdict in Plaintiff's Favor**

At trial, Plaintiff launched an extensive attack on Novant Health's D&I efforts, which became the focus of Plaintiff's evidence at trial. As Novant Health argued in its pretrial motion *in limine*, (Doc. 70, 71), Plaintiff's evidence regarding its D&I efforts – much of which was from after Plaintiff's termination – was irrelevant, misleading, confusing, and prejudicial and should have been excluded. As admitted, the evidence of Novant Health's D&I efforts does not support a judgment for Plaintiff because Plaintiff did not establish any evidentiary connection between these efforts and his termination.

Plaintiff characterized Novant Health's D&I efforts as broad and related to values and perspectives – not simply characteristics like race or gender. (Doc. 117, 81:25-82:24). Plaintiff further admitted that Novant Health's D&I program was "**properly done**" during his employment. (Doc. 117, 84:16-21).[3] Where Plaintiff conceded that Novant Health's D&I efforts were lawful and not focused on race or gender, such efforts cannot provide evidence of unlawful discriminatory intent. Plaintiff's evidence of those D&I efforts thus was not relevant to Plaintiff's claim of unlawful discrimination and should have been excluded.

Moreover, at no point in the case did Plaintiff establish a connection between Novant Health's admittedly proper D&I efforts and his own termination. When asked on cross examination whether he had evidence connecting his termination to the D&I program, Plaintiff said that such evidence was limited to what he previously discussed. (Doc. 73:24-74:4). Plaintiff's previous trial testimony contains no evidence – aside from Plaintiff's speculation that he was part of an inadmissible pattern of terminations – linking his termination to Novant Health's D&I efforts:

> But I would say within a few months of my termination I began to see -- you know, I -- I actually went back and I really reflected very hard on what might have led to this and literally could come up with nothing. But then having seen other executives that I had worked with prior to me being terminated, which was confusing, and then others being terminated after I had been terminated, a pattern just clearly emerged in my mind.

(Doc. 117, 56:18-57:1). It is well-settled that Plaintiff's speculation "on what might have led to this" is insufficient to support a verdict, as the Fourth Circuit has twice found in entering judgment as a matter of law in employment cases. *Bennett*, 552 F. App'x 222 (granting JMOL in employment

---

[3] And he would know: Plaintiff actually sat on Novant Health's D&I executive council – a committee of only 13-15 employees out of a workforce of 27,000. (Doc. 115, 14:6-15).

case where plaintiff's theory was based entirely on her own speculation of wrongdoing); *Gibson*, 160 F.3d 177, 182 (granting JMOL in employment case where plaintiff's causation showing fell "into the realm of the speculative, which is insufficient to sustain a jury verdict" and "much of the evidence in this case goes the other way."). Here, Plaintiff's speculation, based on inadmissible evidence of a putative pattern, is entitled to no weight.

Courts universally bar evidence of discriminatory motive where, as here, a plaintiff offers such evidence without connecting it to the challenged employment decision. Indeed, courts routinely have rejected evidence much more tangibly connected to a plaintiff's claims than the evidence Plaintiff presented here. *E.g.*, *Rayyan v. Virginia Dept. of Transportation*, 719 Fed. Appx. 198, 202 (4th Cir. 2018) (unpublished) (alleged derogatory statements by plaintiff's supervisor referring to plaintiff as a "dumb" "Arab", and stating "I don't care where you come from ... this is not how it's done here in America" were insufficient to demonstrate that race was a motivating factor in his termination where there was no nexus connecting these comments to plaintiff's dismissal); *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir. 1999) (statement by a coworker that he could not work for a woman and statement by male chief operating officer commenting on the physical attributes of a waitress were insufficient as a matter of law to create a genuine issue of material fact, given the lack of a sufficient connection to the employment decision at-issue), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148 (2003). Such evidence must be excluded altogether in jury trials, where the potential for prejudice is high. *See Smith v. Leggett Wire Co*., 220 F.3d 752 (6th Cir. 2000) (admitting evidence of racial statements made by co-workers not responsible for termination decision was reversible error because the evidence was highly prejudicial; "[t]he derogatory and graphic racial

comments in this case are the 'smoking gun' type evidence that added an 'emotional element' likely to inflame a jury and influence a verdict).

Consistent with the foregoing authority, courts have held that evidence of an employer's affirmative action program – such as that alleged by Plaintiff – is relevant only if the employment decision at issue was made pursuant to the program. In other words, *there must be a connection between a workforce demographics program and the challenged action for the program to be relevant*. Where no such connection exists, judgment as a matter of law is appropriate.

For example, in *Bostron v. Apfel*, plaintiffs attempted to argue that the mere existence of an affirmative employment plan constituted proof of intentional discrimination. 104 F. Supp. 2d 548, 555 (D. Md. 2000), *aff'd*, 2 F. App'x 235 (4th Cir. 2001). In granting the defendant's motion for judgment as a matter of law, the court found that such evidence was too attenuated to constitute substantial evidence that plaintiffs were subjected to intentional discrimination where there was no evidence that any decisionmaker relied on the affirmative employment plan in the promotional decisions challenged by plaintiff. *Id*. at 556.

The same result should follow here. Like the plaintiff in *Bostron*, Plaintiff essentially argues that the mere existence of D&I efforts at Novant Health constitutes proof that he was discriminated against. But, also as in *Bostron*, the decisionmaker – Mr. Cureton – testified that he was not acting pursuant to any D&I based initiatives, goals, or financial incentives in relation to Plaintiff's termination or the hiring of Plaintiff's replacement – and no diversity-based numeric targets or incentives existed during Plaintiff's employment. (Doc. 117, 159:19-160:5, 174:9-21). Further, Plaintiff admitted that Tanya Blackmon, Novant Health's Executive Vice President and Chief Diversity, Inclusion and Equity Officer, played no role in his termination:

Q.      Sitting here today, do you have any personal knowledge that would indicate that Tanya Blackmon played any role whatsoever in your termination?

A.      I do not.

(*Id*., 73:20-23). Ms. Blackmon likewise confirmed that she was not involved in Plaintiff's termination and did not want Plaintiff to be terminated. (Doc. 115, 17:10-18). Thus, as in *Bostron*, there is no connection between a claimed workforce demographics program and Plaintiff's termination. Novant Health's D&I efforts cannot substitute for missing evidence of discriminatory animus.

Plaintiff's counsel argued repeatedly at trial that there was a connection between Novant Health's D&I efforts and Plaintiff's termination, but that argument mischaracterizes the evidence, as reflected in the trial transcript. The actual trial evidence makes clear that Novant Health's D&I efforts had no bearing whatsoever on the decision to terminate Plaintiff's employment.

For example, Plaintiff's counsel suggested to the jury repeatedly that Novant Health had certain "targets" and "financial incentives" in place to replace white men in leadership positions and these claimed targets and incentives led to Plaintiff's termination. He stated: "So there's this kind of perverse financial incentive built in to meeting those diversity goals that if we can meet the number, we get more money. And that is what leads to David losing his job." (Doc. 114, 54:4-7).

Yet no evidence supported this erroneous contention. The only evidence of any numeric goal with respect to workforce representation was Novant Heatlh's long-term goal for the three-year cycle of 2019 to 2021 to close the gap in certain demographic aspects of its entire workforce versus the communities it serves. (Pl. Ex. 20). The 2019 to 2021 goal was effective only in years after Plaintiff's termination and had nothing to do with replacing white men in senior leadership positions. Instead, it related to closing the gap in Asian and Latino workforce representation.

16

Plaintiff was not replaced with an employee in either demographic group, and there can be no rational inference that this goal prompted Plaintiff's termination.

Plaintiff further relied on a presentation put together by Ernst & Young Consulting after his termination identifying proposed "targets" for increasing representation in Novant Health's workforce. (Pl. Ex. 19). Ms. Blackmon testified, however, that these proposed targets were not implemented by Novant Health. (Doc. 115, 32:22-35:6). In fact, the record contains no evidence that numeric targets or related compensation goals concerning workforce demographics or the diversity of Novant Health's employees were in place during Plaintiff's employment. Moreover, Mr. Cureton – the decisionmaker – testified that he did not have any targets or goals with respect to workforce diversity and did not get any financial bonus or incentive based on Plaintiff's termination or the hiring of Plaintiff's replacement. (Doc. 117, 159:190160:5, 174:9-21). Absent such evidence, Plaintiff's claim that Novant Health had "targets" or "financial incentives" to encourage the replacement of white male leaders was false and highly prejudicial. Such an unsupported claim does not establish a nexus between Novant Health's D&I efforts and Plaintiff's termination.

Plaintiff's evidence in support of such a nexus is based on documents created and events occurring after Plaintiff's termination. Because such evidence did not exist at the time of Plaintiff's termination, it could not have caused Plaintiff's termination. Such evidence, which Plaintiff repeatedly cited at trial, was not probative and served only to confuse, mislead, and inflame the jury with racial politics. Accordingly, the D&I evidence, with no nexus to Plaintiff's termination other than Plaintiff's mere speculation, should have been excluded and cannot be used to support a verdict in Plaintiff's favor.

### E.  Judgment as a Matter of Law is Warranted on Plaintiff's "Reverse Discrimination" Claims

When the inadmissible, irrelevant, and prejudicial pattern and D&I evidence is removed from consideration, no reasonable jury could find in favor of Plaintiff on his claims of wrongful discharge in violation of Title VII or the policy contained in NCEEPA.[4]

### i.  Plaintiff Failed to Demonstrate by a Preponderance of Evidence that Sex or Race Were Motivating Factors for his Termination

Plaintiff did not submit evidence at trial from which a reasonable jury could conclude that his race or sex played any role in his termination. Plaintiff testified that his entire case is based on his belief that he was terminated as part of a pattern that he believed was related to D&I efforts. But as set forth above, Plaintiff's pattern evidence is inadmissible, and there is no identifiable link between Novant Health's D&I efforts and Plaintiff's termination other than Plaintiff's speculation. Therefore, Plaintiff's case – even as he frames it – has no competent evidence to support a verdict.

The case of *Malone v. Lockheed*, 610 F.3d 16 (1st Cir. 2010), is apposite. In *Malone*, the plaintiff claimed race discrimination in violation of Title VII and state law. *Id.* at 18. After a jury verdict in the plaintiff's favor, the district court granted the defendant's renewed motion for judgment as a matter of law, and the plaintiff appealed. *Id.* at 19. The plaintiff's theory was that his first supervisor was racially biased against him and his subsequent supervisor's decision to discipline and terminate him was tinged by the bias of the prior supervisor. *Id.* at 21. The plaintiff

---

[4] These claims are evaluated under the same framework. *Jones v. Lowe's Companies, Inc.*, 402 F. Supp. 3d 266, 284 (W.D.N.C. 2019).

admitted, however, that he only reached this conclusion "after ruling everything [else] out."[5] *Id*.
He presented no evidence that either supervisor's actions were motivated by racial animus. *Id*. at
21-22. Against this backdrop, the First Circuit affirmed judgment for the defendant, concluding
that judgment as a matter of law was appropriate because there was no evidence that discriminatory
animus motivated the defendant's actions other than the plaintiff's own conjecture. *Id*. at 22. This
decision is in accord with Fourth Circuit authority overturning jury verdicts that rely upon a
Plaintiff's speculation as opposed to actual evidence. *Bennett*, 552 F. App'x 222; *Gibson*, 160 F.3d
177, 181-2.

  In this case, Plaintiff's claim of discriminatory animus is unsupported by any competent
evidence. When his speculative pattern/D&I theory is set aside, Plaintiff presented no other
evidence at trial tending to establish that his race or sex played a motivating role in his termination.
To the contrary, Plaintiff admitted that: (1) Mr. Cureton did not discriminate against him
personally, and (2) Plaintiff did not believe Mr. Cureton had any "personal animosity" or prejudice
towards him. (Doc. 117, 61:22-24, 73:4-19). Plaintiff also conceded that he previously testified
under oath in his deposition that no individual discriminated against him in his termination. (*Id*.,
61:7-24, 62:24-63:13). No rational jury could find intentional discrimination in light of such
admissions. *See Danial v. Morgan State Univ.*, 426 F. Supp. 3d 135, 147 (D. Md. 2019),
*reconsideration denied*, No. CV CCB-17-959, 2020 WL 4016174 (D. Md. July 16, 2020) (finding

---

[5] Plaintiff here made a similar admission: "Within a few months of my termination I actually went
back and I really reflected very hard on what might have led to this *and literally could come up
with nothing*. But then having seen other executives that I had worked with prior to me being
terminated, which was confusing, and then others being terminated after I had been terminated, a
pattern just clearly emerged *in my mind*." (Doc. 117, 56:18-57:1).

Case 3:19-cv-00624-DSC   Document 125   Filed 02/01/22   Page 19 of 23

plaintiff could not proceed with race discrimination claim where he admitted in his deposition that he did not believe he was discriminated against).

### ii. *Novant Health Established its Affirmative Defense as a Matter of Law*

Even if Plaintiff had established sufficient evidence for the jury to conclude Plaintiff's termination was unlawfully motivated by his sex or race, which is denied, Novant Health proved its affirmative defense that it would have terminated Plaintiff's employment regardless of those factors.

Mr. Cureton, the sole decisionmaker, testified that he based his decision to terminate Plaintiff's employment on multiple legitimate considerations:

> The decision was … an aggregation of a number of different things that started back with the presentation where he didn't deliver there; starting with engagement and lack of support from the executive team; staring with the delegating of his opportunities to speak before the board; and the last incident that I shared with you. In addition to the fact that our organization was moving in a different direction.

(Doc. 117, 181:17-182:18). Mr. Cureton's testimony, along with uncontroverted supporting testimony, established Novant Health's affirmative defense.

Where an employer shows that it "would have taken the same action in the absence of the impermissible motivating factor," a plaintiff's damages under Title VII are limited to injunctive and declaratory relief, and attorney's fees and costs as a matter of law. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 317 (4th Cir. 2005); 42 U.S.C. § 2000e–5(g)(2)(B). Accordingly, at a minimum, the Court should enter judgment as a matter of law precluding Plaintiff from recovering punitive damages, back pay or front pay.

### III.   <u>CONCLUSION</u>

Under Fed. R. Civ. P. 50, a court is not a "rubber stamp" for a jury verdict. *Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1250 (4th Cir. 1996). Rather, the court has a duty to reverse a jury verdict if the evidence cannot support it. *Id.* As shown above, the admissible evidence does not support a verdict in Plaintiff's favor. Novant Health, therefore, respectfully requests the Court to grant its Renewed Motion for Judgment as a Matter of Law and enter judgment in its favor on all claims.

*(Signature block appears on the next page.)*

Dated this 1st day of February, 2022.

s/ Benjamin R. Holland

Benjamin R. Holland
N.C. Bar No. 28580
ben.holland@ogletree.com
Margaret Santen
N.C. Bar No. 52947
maggie.santen@ogletree.com
Elizabeth R. Gift
N.C. Bar No. 44331
elizabeth.gift@ogletree.com
S. Abigail Littrell
N.C. Bar No. 49354
abby.littrell@ogletree.com

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, North Carolina  28244
Telephone:     704.342.2588
Facsimile:      704.342.4379

*and*

Charles E. Johnson
N.C. Bar No. 9890
cejohnson@robinsonbradshaw.com
Stephen M. Cox
N.C. Bar No. 23057
scox@robinsonbradshaw.com
Angelique R. Vincent-Hamacher
N.C. Bar No. 29547
avincent@robinsonbradshaw.com

ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina  28246
Telephone:     704.377.2536
Facsimile:      704.373.3996

***Attorneys for Defendant Novant Health, Inc.***

## CERTIFICATE OF SERVICE

I, Benjamin R. Holland, hereby certify that I have this day electronically filed the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT NOVANT HEALTH, INC.'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW** with the Clerk of Court using the CM/ECF system, which will send notification of the filing to the following person:

S. Luke Largess
*Attorney for Plaintiff*
Tin, Fulton, Walker & Owen, PLLC
301 East Park Avenue
Charlotte, NC 28203
Telephone: 704.338.1220
Facsimile: 704.338.1312
Email: llargess@tinfulton.com

Dated this 1st day of February, 2022.

s/ Benjamin R. Holland
Benjamin R. Holland, N.C. Bar No. 28580
*Attorney for Defendant*
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC 28244
Telephone: 704-342-2588
Facsimile: 704-342-4379
Email: ben.holland@ogletree.com