IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| DAVID DUVALL, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 3:19-cv-624-DSC |
| NOVANT HEALTH, INC., | ) |
| Defendant. | ) |

**MEMORANDUM OF DEFENDANT NOVANT HEALTH, INC. IN OPPOSITION TO PLAINTIFF'S REQUEST FOR BACK PAY AND FRONT PAY**

COMES NOW Defendant Novant Health, Inc. ("Novant Health"), by and through its undersigned counsel, and files this Memorandum in Opposition to Plaintiff's Request for Back Pay and Front Pay. Prior to the trial of this action, Plaintiff withdrew all of his claims for compensatory damages and conceded that his entitlement to the equitable remedies of back pay and front pay is to be determined by this Court.

## I. INTRODUCTION

Though Title VII of the Civil Rights Act of 1964 gives a successful plaintiff the right to back pay and front pay, it imposes significant responsibilities on a party who pursues such relief. Among other things, a plaintiff must exercise "reasonable diligence" to find a new job by "actively" looking for work, not merely by waiting for work to come to him. A plaintiff who fails to "persistently and industriously" look for a new job is disqualified from both a back pay and a front pay award.

Plaintiff has blithely disregarded his duty to mitigate. After his employment was terminated by Novant Health in July 2018, his search for work was neither diligent nor active. Indeed, Plaintiff

has conceded that he *did not apply for any jobs at all,* but simply responded to LinkedIn contacts and executive recruiters that reached out to him. Of the fewer than ten employment opportunities he considered over a three-year period, Plaintiff rejected several for groundless, speculative, or unsubstantiated reasons. Such conduct falls far short of the "reasonable diligence" that the law demands of a Title VII plaintiff who seeks back pay and front pay.

Remarkably, despite his cavalier attitude toward his duty to mitigate, Plaintiff secured a position at Henry Ford Health System ("HFHS") that was substantially more lucrative than his job at Novant Health. The job was so lucrative, in fact, that it fully offset any interim lost earnings from Novant Health to which Plaintiff may have been entitled. Plaintiff ultimately lost his job at HFHS, however, because, according to him, HFHS questioned his commitment to the system. That assessment of Plaintiff's fitness for his job at HFHS—made by Plaintiff's *successor* employer—cannot be ascribed to Novant Health and did not make Plaintiff re-eligible for back pay.

After Plaintiff left HFHS, his efforts to find new work dwindled to nothing. He continued to refrain from applying for jobs, once again deciding only to respond to search firms that reached out to him first. And he continued to refuse even to consider opportunities that he considered beneath him, including a position with the "billion-dollar" Cape Fear Health System in Fayetteville, North Carolina. Such conduct was neither persistent, industrious, nor reasonable. Under the governing precedents of the Supreme Court and the Fourth Circuit, Plaintiff's claims for back pay and front pay must be rejected due to his failure to mitigate alone.

Title VII also requires a plaintiff who seeks front pay to provide the court with the "necessary data" to support such an award, including a proposed award amount and an applicable

2

discount rate. These conditions help ensure that the calculation of front pay—an inherently speculative enterprise—does not yield a windfall to the plaintiff.

Just as he shirked his duty to mitigate, Plaintiff has failed to satisfy his duty to provide the court with data to support a front pay award. He did not offer a proposed front pay award or an applicable discount rate in evidence; thus, any amount that he seeks now will be based on nothing more than conjecture. For this additional, independent reason, Plaintiff's request for a front pay award should be denied.

### III. ARGUMENT

#### A. Back Pay

1. Plaintiff is Not Entitled to Back Pay Because He Failed to Mitigate His Damages

Title VII allows a successful plaintiff in an employment discrimination action to recover back pay in an amount determined by the court. 42 U.S.C. § 2000e-5(g). That remedy, however, is subject to the plaintiff's duty to mitigate his damages. *See id.* (noting that a back pay award must be reduced by "interim earnings or amounts earnable with reasonable diligence"). As the Fourth Circuit has explained, "[i]n the case of a Title VII claimant who has been unlawfully discharged, the duty to mitigate damages requires that the claimant be reasonably diligent in seeking and accepting new employment substantially equivalent to that from which he was discharged." *Brady v. Thurston Motor Lines, Inc.,* 753 F.2d 1269, 1273 (4th Cir. 1985), *citing Ford Motor Co. v. EEOC,* 458 U.S. 219, 232 (1982). "Thus," the *Brady* court explained, "a Title VII plaintiff cannot remain idle after an unlawful discharge and receive back pay for that period where he was not actively seeking employment." *Id.*

As the *Brady* court made clear, the "reasonable diligence" that the duty to mitigate demands from a Title VII plaintiff requires him "actively" to look for work. Thus in *EEOC v. Service News*

*Co.*, 898 F.2d 958 (4th Cir. 1990), the court disallowed a district court's award of back pay for the first five months after plaintiff's termination, finding that plaintiff had not submitted any job applications during that period and had only perused the want ads. "Looking through want ads for an unskilled position, without more," the Fourth Circuit stated, "is insufficient to show mitigation, and the back pay award should accordingly be reduced." *Id.* at 963. Likewise, in *Szedlock v. Tenet*, 139 F. Supp. 2d 725 (E.D. Va. 2001), *aff'd,* 61 F. App'x 88 (4th Cir. 2003), the court explained that the "diligence [required of a Title VII plaintiff] implies persistence and industriousness." *Id.* at 734. The *Szedlock* court found that the plaintiff in that case had failed to meet that standard, noting that "plaintiff has made at best only modest or intermittently persistent efforts to seek employment." *Id.* In particular, the efforts that the *Szedlock* court found wanting included plaintiff's "[applying] for only ten positions, [placing] her resume in a nationwide human resources database, and [searching] vacancy announcements periodically." *Id.* Such efforts, the *Szedlock* court concluded, "do not reflect reasonable diligence and therefore suggest that plaintiff has not sustained her duty to mitigate damages." *Id.*

Here Plaintiff has failed to satisfy the standards of "reasonable diligence," persistence, and industriousness that the courts of this circuit have imposed on a Title VII plaintiff who seeks back pay. Plaintiff has twice conceded that he "technically didn't apply" *for any jobs at all* after he left Novant Health. (Exhibit A - *David Duvall Deposition* 215:3-5, 252:1-253:2).[1] "[A]t [his] level," Plaintiff claims, "we don't typically apply for jobs." (*Id.* at 252:11-12). Instead, Plaintiff testified, he waited for recruiters to reach out to him. (*Id.* at 252:9-25). Plaintiff did not even take the

---

[1] The cited portions of Plaintiff David Duvall's deposition transcript were included as part of Defendant's designations of Plaintiff's Deposition testimony and were included in the Proposed PreTrial Order. (*See* Doc. 69, pp. 26-29). They were also admitted at trial. (Doc. 118, 8:13-22).

initiative to approach his LinkedIn contacts; rather, he "responded to people who … reached out to [him]." (*Id.* at 158:22-159:3).

Such a lax, casual attitude toward his employment prospects disqualifies Plaintiff from a back pay award. Duvall did not even exhibit the energy of the plaintiff in *Service News* who at least took the time to peruse the want ads, or of the plaintiff in *Szedlock,* who applied for ten positions over an eighteen-month period. Instead, Plaintiff relied entirely on a strategy of waiting for job offers to come to him. Just as the plaintiffs in *Service News* and *Szedlock* were deemed ineligible for back pay due to a lack of diligence, persistence, and industriousness, so must the even less diligent Plaintiff in this case.

> 2. Separately and Independently, Plaintiff's Claim for Back Pay Should be Denied Because He was Not Reasonably Diligent in Pursuing the Few Employment Opportunities that were Brought to Him by Recruiters Over a Three-Year Period

The trial record indicates that, from the time Plaintiff left Novant Health until the date of the jury's verdict in this action, recruiters brought Plaintiff employment opportunities at eight different employers: HFHS, the University of Michigan Medical Center, Johns Hopkins, Minnesota Fairview, Miami Health, Ohio State, Brigham and Women's/Massachusetts General, and Cape Fear Medical Center. (*See* Doc. 116, 199:23-200:16; Exhibit A*,* 248:22-249:9 (identifying employers)). Other than the position at HFHS, the record indicates, Plaintiff pursued only the opportunity at Johns Hopkins. (Doc. 116, 203:17-18). He withdrew from consideration for the Minnesota Fairview position because a friend of his speculated that "it was potentially a very kind of difficult situation to step into." (Doc. 117, 95:7-96:1). He spurned the University of Michigan Medical Center because he had categorically decided not to consider positions that paid less than $300,000 in base salary. (Doc. 117, 97:25-98:7). He rejected the Miami Health position,

too, even though it offered in the "low 400 thousands" (his base pay at Novant Health)[2] because he perceived the cost of living in Miami to be high and Miami has a large Spanish-speaking population. (Doc. 117, 98:3-25). He "never even got into active discussions" with Cape Fear Health System in Fayetteville because he considered the size of the system and the scope of the job too small—only a "billion-dollar system with a team of ten people and two reports." (Exhibit A, 249:12-22). In fact, Duvall never even bothered to find out what the Cape Fear position paid. (*Id.,* 249:23-25). Finally, Duvall engaged only in "pleasantries" with an Ohio State recruiter during a preliminary phone call. (*Id.,* 250:6-23).

In sum, the record indicates that Plaintiff meaningfully pursued only *two* of the potential employment opportunities brought to him by recruiters. This number is far fewer than the *ten* employment opportunities that the *Szedlock* court found to be insufficient to demonstrate reasonable diligence. Plaintiff rejected a number of opportunities out of hand because he considered the positions beneath him— for example, the salary in the "low fours" at Miami Health was too low and the opportunity at Cape Fear's "billion-dollar system" was too small. The law does not permit Plaintiff to be so choosy, however. Indeed, "[a]fter a period of unemployment," one court in this circuit has explained, "[a] [p]laintiff is required to lower her sights and seek the best job available." *Lampley v. Big Disc. Food Store, Inc.,* 687 F. Supp. 211, 216 (M.D.N.C. 1988). Plaintiff's cavalier disregard for several lucrative job opportunities brought to him by recruiters flies in the face of this injunction and offers a separate, independent reason to deny Plaintiff an award of back pay.

---

[2] Plaintiff's base salary at Novant Health at the time of his termination was $402,000-$403,000. (Doc. 116, 106:18-20).

3. <u>Even if Plaintiff Had Fulfilled His Duty to Mitigate, the Extremely Lucrative Position that He Secured with HFHS, Coupled with the Severance Package that HFHS Gave Him Upon His Departure Fully Offset Any Interim Lost Earnings from Novant Health</u>

Plaintiff testified at trial that the most he ever made in a full year of employment at Novant Health was in 2017. (Doc. 117, 114:17-23). His W-2 tax form from that year shows that he received **$656,155** in compensation (including deferred compensation). (*See* Pl. Ex. 116). In 2018 (the year his employment at Novant Health ended), his W-2 shows that Plaintiff received **$617,207** in compensation from Novant Health (again including deferred compensation)—a difference of less than $40,000 from 2017. (*See id.*)

In 2019, Plaintiff landed a position at HFHS that paid him substantially more than his job at Novant Health. Plaintiff's base pay at HFHS alone was $575,000, compared to the $402,000 that Plaintiff had been receiving at Novant Health. (*See* Attachment A to Joint Ex. 14 (offer letter to Plaintiff from HFHS)). The total annual cash compensation that HFHS offered Plaintiff (base pay plus annual and long-term incentive bonuses) was $833,750. (*See id.*) This was in addition to a relocation bonus of $150,000, a signing bonus of $100,000, and a host of deferred compensation, retirement, and other benefits. (Doc. 117, 100:17-102:5; Joint Ex. 14).

HFHS was similarly generous in its severance arrangements with Plaintiff. Not only did it not require Plaintiff to repay the $250,000 in signing and relocation bonuses, (Doc. 117, 106:6-12), it gave him a year of base pay ($575,016), a pro-rated bonus of $100,625, and a SERP payment of approximately $32,000, for a total of over $700,000. (Doc. 117 104:20-106:5).

Plaintiff's tax forms reflect these lucrative agreements with HFHS. His 2019 W-2 shows a total compensation of **$551,127**, Pl. Ex. 117, even though Plaintiff did not begin working at HFHS until June of that year. (Doc. 116, 199:25-200:6). His 2020 W-2 shows a total compensation of **$700,567**, Pl. Ex. 117, even though Plaintiff was terminated in January of that year. (Doc. 117,

115:4-9). Plaintiff testified that he received an additional **$72,000** from HFHS in 2021. ( Doc. 117, 54:6-13).

In sum, even if Plaintiff had discharged his duty to mitigate his damages (which he did not), the substantial increases in compensation that he received from HFHS fully offset any lost earnings that he suffered between the time he left Novant Health and the time he started working for HFHS.

> 4. <u>Any Entitlement that Plaintiff Had to Back Pay From Novant Health Ended When He joined HFHS and Did Not Resume When HFHS Terminated His Employment</u>

Plaintiff started working for HFHS in Detroit in June 2019. Doc. 116, 199:25 – 200:6. As explained above, Plaintiff's position at HFHS offered substantially more compensation than his job at Novant Health, entirely offsetting any interim lost earnings from Novant Health. Accordingly, any entitlement that Plaintiff had to back pay ended when he went to work for HFHS.

HFHS terminated Plaintiff in January 2020. (Doc. 117, 115:4-9). Plaintiff claims that he was fired because, after he had filed his lawsuit against Novant Health, HFHS questioned his commitment to his new position and wondered whether he wanted to return to Novant Health. (Exhibit A, 235:7-24; Doc. 117, 44:21-24, 103:21-104:5, 108:17-20). Consequently, Plaintiff concludes, his entitlement to back pay from *Novant Health* continued after he was fired by *HFHS*. This argument cannot be sustained, for several reasons.

First, as noted in Section II.A.1, *supra*, Plaintiff did not undertake any meaningful efforts to find employment after he left HFHS. On that basis alone, he is not entitled to back pay for that post-HFHS period. More fundamentally, however, Plaintiff's theory that HFHS fired him because he had sued Novant Health is based on nothing more than conjecture. Indeed, Plaintiff admits that HFHS hired him even *after* he had told them that he had an "unresolved matter" with Novant

Health and that a lawsuit could ensue. (Doc. 116, 204:14-23). Plaintiff also concedes that HFHS's CEO told him at the time of his termination that "I don't care about the lawsuit." (Exhibit A, 230:23-231:10; Doc. 117, 104:3-5). These facts are fatally inconsistent with Plaintiff's theory that he was fired for suing Novant Health.

The Fourth Circuit has explained that "[a]s part of the process of making the victims of employment discrimination whole, the offending employer is made responsible only for losses suffered by the claimant *as a result of the discrimination*." *Brady,* 753 F.2d at 1278 (emphasis added). Thus a Title VII plaintiff who is fired by a successor employer because he fails to meet that new employer's work rules or reasonable business expectations is not permitted to "revive" his back pay claim against the prior employer. *See id.* at 1280 (holding that successful Title VII plaintiffs who were fired by a successor employer for misconduct were not entitled to additional back pay following that firing); *see also Richardson v. Tricom Pictures & Prods., Inc.,* 334 F. Supp. 2d 1303, 1314 (S.D. Fla. 2004) (*citing Brady* and holding that Title VII plaintiff who was fired from a successor employer not because of a violation of work rules but because of an inability to get along with her colleagues was not entitled to back pay for the period following that termination).

Here, Plaintiff's own admissions prove that it was not his lawsuit against Novant Health that caused HFHS to fire him. To the contrary, HFHS hired him even *after* he said a lawsuit against Novant Health was possible, and the CEO of HFHS reassured Plaintiff that he didn't care about the lawsuit. What HFHS did care about, however, was Plaintiff's commitment to his new job. HFHS had a reasonable business expectation that Plaintiff would demonstrate that commitment—an expectation that Plaintiff apparently failed to satisfy. *Brady* and *Richardson* stand for the proposition that Plaintiff cannot seek additional back pay from Novant Health attributable to his

9

failure to meet his new employer's legitimate business expectations. Accordingly, and for this separate and independent reason, Plaintiff is not entitled to any back pay for the period following his departure from HFHS.

**B. <u>Front Pay[3]</u>**

1. <u>Plaintiff Has Failed to Meet His Burden to Provide the Court With the "Necessary Data" to Calculate a Front Pay Award, and Any Request for Front Pay Should be Denied</u>

The Supreme Court has defined front pay as "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.,* 532 U.S. 843, 846 (2001). The Fourth Circuit has cautioned, however, that a front pay award is inherently speculative, and, therefore, "its use must be tempered." *Duke v. Uniroyal, Inc.,* 928 F.2d 1413, 1423 (4th Cir. 1991). To ensure that any such award is properly grounded in fact and not excessively conjectural, the courts put the burden on the plaintiff to show an entitlement to front pay by providing the court with the "necessary data to calculate a reasonably certain front pay award." *McKnight v. Gen. Motors Corp.,* 973 F.2d 1366, 1372 (7th Cir. 1992), cited in *Benson v. Thompson Cadillac-Oldsmobile, Inc.,* No. 5:04-CV-237-F(1), 2006 WL 8438575 at * 17 (E.D.N.C. July 18, 2006). These necessary data include, among other things, "the amount of the proposed award, the length of time the plaintiff expects to work for the defendant, and the applicable discount rate." *Id.*

Here Plaintiff has failed to provide such "necessary data." Though he offered a chart illustrating a proposed *back pay* award, (Pl. Ex. 76), he did not offer a corresponding *front pay*

---

[3] Though front pay is considered to be a remedy in lieu of reinstatement, Plaintiff has testified that he does not want to be reinstated at Novant. (Exhibit A, 235:25-236:2).

proposal. Nor did he offer an applicable discount rate for the Court's consideration. Because of these failings alone, Plaintiff's request for a front pay award should be rejected.

2. <u>Plaintiff's Request for a Front Pay Award Should Be Rejected Because Plaintiff Failed to Mitigate His Damages</u>

As explained above, a Title VII plaintiff's entitlement to a back pay remedy is subject to a duty to mitigate. That duty to mitigate applies with equal force to a request for front pay. Thus in *Grier v. Zimmer, Inc.,* 795 F. Supp. 1379, 1384-85 (W.D.N.C. 1992), the court denied a front pay award to plaintiffs who had failed to mitigate their damages.

For all of the reasons stated in Sections III.A.1 and III.A.2, *supra,* Plaintiff has utterly failed to mitigate his damages during the period following his termination by HFHS. His inaction disqualifies him from both a back pay and a front pay award.

### III. CONCLUSION

Novant Health separately has moved this Court to enter judgment in its favor on all claims as a matter of law and to sanction Plaintiff by dismissal of this action. If such relief is granted, Plaintiff's claims for back pay and front pay will be eliminated. Additionally, for the foregoing reasons, Plaintiff's requests for back pay and front pay should be denied.

(*Signature block appears on the next page.*)

Dated this 1st day of February, 2022.

        s/ Benjamin R. Holland
Benjamin R. Holland
N.C. Bar No. 28580
ben.holland@ogletree.com
Margaret Santen
N.C. Bar No. 52947
maggie.santen@ogletree.com
Elizabeth R. Gift
N.C. Bar No. 44331
elizabeth.gift@ogletree.com
S. Abigail Littrell
N.C. Bar No. 49354
abby.littrell@ogletree.com

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, North Carolina 28244
Telephone: 704.342.2588
Facsimile: 704.342.4379

    *and*

Charles E. Johnson
N.C. Bar No. 9890
cejohnson@robinsonbradshaw.com
Stephen M. Cox
N.C. Bar No. 23057
scox@robinsonbradshaw.com
Angelique R. Vincent-Hamacher
N.C. Bar No. 29547
avincent@robinsonbradshaw.com

ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone: 704.377.2536
Facsimile: 704.373.3996

***Attorneys for Defendant Novant Health, Inc.***

# CERTIFICATE OF SERVICE

I, Benjamin R. Holland, hereby certify that I have this day electronically filed the foregoing **MEMORANDUM OF DEFENDANT NOVANT HEALTH, INC. IN OPPOSITION TO PLAINTIFF'S REQUEST FOR BACK PAY AND FRONT PAY** with the Clerk of Court using the CM/ECF system, which will send notification of the filing to the following person:

S. Luke Largess
*Attorney for Plaintiff*
Tin, Fulton, Walker & Owen, PLLC
301 East Park Avenue
Charlotte, NC 28203
Telephone: 704.338.1220
Facsimile: 704.338.1312
Email: llargess@tinfulton.com

Dated this 1st day of February, 2022.

s/ Benjamin R. Holland
Benjamin R. Holland, N.C. Bar No. 28580
*Attorney for Defendant*
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC 28244
Telephone: 704-342-2588
Facsimile: 704-342-4379
Email: ben.holland@ogletree.com