IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| DAVID DUVALL,<br><br>               Plaintiff,<br><br>      v.<br><br>NOVANT HEALTH, INC.,<br><br>              Defendant. | )<br>)<br>)<br>)<br>)   Civil Action No. 3:19-cv-624-DSC<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF DEFENDANT NOVANT HEALTH, INC.'S MOTION TO SET ASIDE PUNITIVE DAMAGES

COMES NOW, Novant Health, Inc. ("Novant Health"), and files this Memorandum in Support of its Motion to Set Aside Punitive Damages.

## I.      INTRODUCTION

The jury in this case awarded $10 million in punitive damages to Plaintiff David Duvall without a determination that he had any actual damages (he has none) and despite his sworn testimony that he did not believe he was discriminated against in his termination. Plaintiff also admitted that the Diversity and Inclusion Program ("D&I Program") he now challenges was "properly done," which is why he never complained about it at any time during his employment. In fact, by Plaintiff's own admission, there was *no discrimination at all* during his time at Novant Health, let alone evidence of the requisite malice or reckless disregard required to justify an award of punitive damages. Absent evidence of intentional discrimination, let alone malice or reckless disregard, this punitive damages award must be set aside under controlling Supreme Court and Fourth Circuit precedent.

This punitive damages award rests solely on Plaintiff's statements invoking improper prejudices, politics, and passions – emotions that the Federal Rules of Evidence are designed to keep out of trials. Among the improper statements by Plaintiff and his counsel were: (1) repeated references to improper comparators, in direct violation of the Court's *in limine* Order, (2) repeated references to alleged diversity targets or quotas and diversity bonuses that did not exist during Plaintiff's employment; and (3) false statements in closing argument in which Plaintiff's counsel told the jury that "one round" for punitive damages was that Novant Health fired a witness with a "nine-year-old young daughter and a wife" because he was willing to "come here" and testify for Plaintiff. (Doc. 119, 54:22-56:15). He then urged the jury to consider Novant Health's significant wealth and assets, without "worry[ing]" about any actual damages, when picking a number to "send a message." (Doc. 119, 109:3-15)

Any one of these statements could have inflamed the jury and resulted in an award of improper punitive damages. Together they provoked an extreme emotional response – a $10 million punitive damages award in a case where no direct evidence of discrimination exists. To allow Plaintiff to recover punitive damages here would be a miscarriage of justice and a violation of Supreme Court and Fourth Circuit precedent. It would also set a dangerous example, incentivizing disgruntled employees and their attorneys to challenge lawful D&I programs by stoking racial and political passions in the hope of a windfall recovery. Permitting such a result would contravene the purpose of the federal antidiscrimination statutes and set back decades of progress by employers in creating workplaces with more racial and gender diversity.

An award of punitive damages in this case is not warranted under the law or the facts. Accordingly, the Court should set aside the jury's award in its entirety.

## II.    **ARGUMENT**

### A.  **Standard of Review**

Judgment as a matter of law is proper: "[i]f a party has been fully heard on an issue during a jury trial and the court finds a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50. As the Fourth Circuit has made clear:

> The jury's determination of the amount of punitive damages is "not a factual determination about the degree of injury but is, rather, an almost unconstrained judgment or policy choice about the severity of the penalty to be imposed, given the jury's underlying factual determinations about the defendant's conduct." *Atlas Food Sys. & Servs., Inc. v. Crane Nat. Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996)). The review of a jury's punitive damages award is accordingly reviewed "less deferentially than are factual findings." *Id.* at 595. The trial court must compare its own 'independent judgment on the appropriate amount with the jury's award to determine whether the jury's award is so excessive as to work an injustice.'"

*Bryant v. Aiken Reg'l Med. Centers Inc.*, 333 F.3d 536, 548 (4th Cir. 2003). *See also Cline v. Wal-Mart Stores, Inc.,* 144 F.3d 294, 306 (4th Cir. 1998) (reducing punitive damages award because it would result in a miscarriage of justice).

### B.  **Discussion**

The punitive damages award is excessive and unsupported by law or fact. For the following reasons, the Court should set it aside in its entirety:

First, the evidence is not sufficient to meet the mandatory threshold of "malice or reckless disregard" required to sustain the "extraordinary remedy" of punitive damages in the Fourth Circuit.

Second, even if Plaintiff had made such a threshold showing – which he did not – Novant Health established a good faith defense, precluding an award of punitive damages under Fourth Circuit law. Plaintiff's testimony that Novant Health's D&I Program was "properly done" at all

3

times during his employment and substantial evidence of Novant Health's good faith efforts to eradicate discrimination from the workplace thus preclude a punitive damages award.

Third, even if an award of punitive damages were otherwise permissible, Plaintiff's misconduct in inflaming the prejudices of the jury requires the Court to aside the award. Such misconduct includes: (1) repeated statements regarding an amorphous "pattern" of white male terminations, which were barred by the Court; (2) multiple false representations regarding supposed diversity targets and bonuses that did not exist during Plaintiff's employment; and (3) an incendiary false statement accusing Novant Health of terminating a witness because he was willing to testify in favor of Plaintiff at trial. Such misconduct amounts to a violation of due process for Novant Health, and courts have often set aside punitive awards for less egregious misconduct.

Finally and alternatively, even if an award of punitive damages were permissible, the Court would be required to reduce the jury's award to $300,000, the maximum allowed under Title VII. *See* 42 U.S.C. § 1981a(b)(3). Plaintiff waived his claim for punitive damages under North Carolina law.

1. Controlling Fourth Circuit and Supreme Court Precedent Requires the Award to Be Set Aside Because Plaintiff Cannot Show Malice or Reckless Disregard

As long recognized by the Fourth Circuit, punitive damages are "an extraordinary remedy" only allowed in Title VII actions under limited circumstances. *Stephens v. S. Atl. Canners (Coca Cola Co.)*, 848 F.2d 484, 489 (4th Cir. 1988); *U.S. Equal Emp. Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 151 (4th Cir. 2017). *See also Harris v. L & L Wings, Inc.*, 132 F.3d 978, 983 (4th Cir. 1997) *("the text and background of the Civil Rights Act of 1991, which authorizes punitive damages, emphasize that this extraordinary remedy is not to be awarded automatically . . .")* (emphasis added).

To obtain an award of punitive damages under Title VII, Plaintiff must establish that Novant Health engaged in: unlawful intentional discrimination "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Ward v. AutoZoners,* 958 F.3d 254, 268 (4th Cir. 2020) (*quoting* 42 U.S.C. § 1981a(b)(1)). This requires a showing that "the evidence [is] sufficient for a reasonable jury to find that the 'employer's decision maker'—that is, the managerial employee—'discriminated in the face of a perceived risk that the decision would violate federal law.'" *Ward*, 958 F.3d at 268 (*quoting EEOC v. Fed. Express Corp.*, 513 F.3d 360, 372 (4th Cir. 2008)) (reversing award of punitive damages because there was no evidence that the decision maker manager intentionally discriminated against plaintiff). In other words, the evidence must establish that the employer knew or "subjectively appreciated" that it was discriminating in a manner that could violate the law. *EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 151 (4th Cir. 2017) (observing that the employer was not liable for punitive damages because the evidence failed to show management "subjectively appreciated that its efforts [to accommodate] were inadequate").

The Fourth Circuit has followed the seminal Supreme Court case, *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535, 119 S. Ct. 2118 (1999), in determining whether this standard is met. *Lowery v. Cir. City Stores, Inc.*, 206 F.3d 431, 442 (4th Cir. 2000). *Kolstad* gives specific examples of when intentional discrimination **does not** give rise to punitive damages liability under this standard:

> *In some circumstances, the employer may simply be unaware of the relevant federal prohibition. There will be cases, moreover, in which the employer discriminates with the distinct belief that its discrimination is lawful. The underlying theory of discrimination may be novel or otherwise poorly recognized, or an employer may reasonably believe that its discrimination satisfies a bona fide occupational qualification defense or other statutory exception to liability.*

*Lowery,* 206 F.3d at 442 (*quoting Kolstad,* 119 S. Ct. at 2124) (emphasis added). But as the Fourth Circuit has noted, the inquiry of whether a company can be liable for punitive damages "does not end with a showing of the requisite 'malice . . . or reckless indifference' on the part of certain individuals." *Id.* (*quoting Kolstad*, 119 S. Ct. at 2126). "Rather, if it cannot be said that a principal of the employer actually engaged in the discriminatory conduct at issue, the plaintiff must offer evidence sufficient to impute liability for punitive damages from the individual who did so engage to the employer." *Lowery,* 206 F.3d at 442 (*citing Kolstad,* 119 S. Ct. at 2126-27)).

These controlling legal principles require the Court to set aside the punitive damages award in its entirety. First, it is undisputed that Jesse Cureton made the decision to terminate Plaintiff's employment. (Doc. 117, 72:19-73:3, 159:7-18). Plaintiff admitted that neither Cureton nor any other individual within Novant Health discriminated against him at any time during his employment or in his termination. (Doc. 117, 61:22-24 *("I didn't feel like Jesse Cureton had any personal animosity towards me, that didn't treat me prejudicially.");* Doc. 117, 62:8-9 *("At the time I was terminated, I did not feel that Jesse [Cureton] had discriminated against me.")*; Doc. 117, 73:4-19). On cross examination, Plaintiff admitted that he never felt like he was discriminated against at any point during his employment with Novant Health.

> *Q. And you'd agree here today with that, correct?*
> *A. While at Novant Health I did not feel discriminated against.*
> *Q. So the entire five-year period while you were at Novant Health you never felt like, even in your own mind, that you were discriminated against, correct?*
> *A. That's correct.*

(Doc. 117, 55:22-56:3; *see also* Doc. 117, 61:7-24, 62:24-63:13, and 66:18-25).

Plaintiff also admitted in multiple contexts that he never *complained* about discrimination at any time during his employment. *See* Doc. 117, 66:18-25 (Plaintiff never complained that he was discriminated against while at Novant Health); Doc. 115, 15:7-22 (Plaintiff never complained

that white men were being discriminated against based on the D&I Program); Doc. 117, 162:21-163:3 (Plaintiff never raised concerns of white male discrimination to Cureton at any point); (Doc. 117, 74:5-7 (Plaintiff did not claim discrimination at his termination meeting).

Despite these admissions, Plaintiff pointed to a putative "pattern" of white males allegedly terminated by Cureton. However, even if such terminations were relevant, and they are not, they do not support the extraordinary remedy of punitive damages. First, there was no "pattern" of white male terminations. Cureton testified that several of his subordinates either voluntarily resigned or reported to someone else when they were terminated. (Doc. 117, 167:14-171:20). Moreover, Cureton replaced several of the white men he terminated with other white men. (Doc. 117, 169:1-20). He also terminated an African-American subordinate. (Doc. 117, 170:12-171:6). Cureton also hired Plaintiff. (Doc. 115, 105:10; Doc. 117, 72:19-73:3, and 146:21-23). Finally, such a "pattern" is belied by the fact that the number of white male Senior Vice Presidents—the position held by Plaintiff—remained unchanged from 2015 to 2019. (*See* Def. Ex. 16; Doc. 115, 44:16-48:2).

Plaintiff also cannot show that Cureton terminated him in the "face of a perceived risk that his actions could violate the law," which would be required for the punitive damages award to stand. The evidence is undisputed that Cureton did not terminate Plaintiff to make room for diverse candidates, nor did he have any personal or financial incentive to do so. (Doc. 117, 159:19-160:5). Likewise, Carl Armato, Novant Health's CEO, did not direct Cureton (or anyone else) to eliminate white males from his team. (Doc. 116, 102:3-11). At the time Cureton terminated Plaintiff, he did not have a successor in mind, nor did he instruct his team to only recruit diverse candidates. (Doc. 117, 160:6-11, 164:20-165:3). Rather, he looked for months to find the most qualified candidate. (Doc. 115, 178:8-179:15; Doc. 117, 146:24-147:16).

Where, as here, no evidence of intentional discrimination *by the decision maker* exists, the Fourth Circuit has held that punitive damages awards must be overturned. *See Ward*, 958 F.3d 254 (reversing punitive damages award in its entirety). In *Ward*, plaintiff claimed he was sexually harassed or physically groped by a lower-level manager, Atkinson, on at least 20 different occasions. Plaintiff reported the harassment to other managers, complaining at least 20 times over a five-month period. *Id.* 260-61. In response, one told plaintiff to "knock it off" even though plaintiff had not been accused of misconduct. *Id.* Another told plaintiff the "whole thing was his fault" and he "should have been able to … prevent[]" the behavior because he was a man. *Id.* at 261. At trial, the jury found the employer liable for sexual harassment and intentional infliction of emotional distress, awarding $150,000 in compensatory damages and $600,000 in punitive damages, which the district court reduced to the $300,000 cap under Title VII. *Id.* at 262.

On appeal, the Fourth Circuit reversed the award of punitive damages entirely, finding that plaintiff had failed to present evidence from which a reasonable jury could conclude that Geer or Tarkington, the two managerial employees with authority, "engaged in intentional discrimination with malice or reckless indifference." *Id.* at 268. The Fourth Circuit reasoned that when an employee seeks to impute punitive damages vicariously to an employer, the plaintiff must introduce evidence showing the *alleged managers themselves* engaged in intentionally discriminatory practices with malice or reckless indifference—or in the face of a perceived risk that the conduct was unlawful. *Id.* at 266-268. Recognizing this is a "high burden to meet," the Fourth Circuit ruled that punitive damages were improper. *Id.* at 269.

Notably, the Fourth Circuit reasoned that "while a reasonable jury might have concluded that Geer [who told plaintiff to 'knock it off'] and Tarkington [who told plaintiff 'the whole thing was his fault'] could have done more in these circumstances to address [plaintiff]'s complaints,

that may support compensatory damages but not punitive damages," which "is an entirely different issue." *Id*. at 269. District courts throughout this circuit have regularly relied on *Ward* in disallowing punitive damages when this strict burden of proof is not met. *See e.g., Equal Employ. Opportunity Comm'n v. Joe's Old Fashioned Bar-B-Que, Inc.,* No. 518CV00180KDBDS, 2020 WL 3128599 (W.D.N.C. June 12, 2020) (following *Ward* and dismissing punitive damages award because the record did not support that the decision maker acted in the face of a perceived risk to show malice).

The reasoning of *Ward* and its progeny applies with equal force here. Plaintiff cannot attempt to bootstrap comments or statements by non-decision makers, such as statements by Armato in the press about diversity or cherry-picked comments in diversity and inclusion power points authored by Blackmon, to show intentional discrimination by the decision maker, Cureton. This is particularly true because there is no direct evidentiary link between the D&I Program and Plaintiff's termination, and it is why evidence relating to the D&I Program (particularly any targets or bonuses implemented *after* Plaintiff's termination) should not have been admitted in the first place. In *Ward,* the Fourth Circuit plainly rejected the same "mix and match" approach to proving intent that Plaintiff advocates in this case. *Ward*, 958 F.3d 254. This Court should do the same.

2. The D&I Program Cannot Support An Award of Punitive Damages As a Matter of Law

a. *Plaintiff Admitted that the D&I Program Was "Properly Done"*

Because Plaintiff cannot meet his burden of proof with regard to the actual decision maker, Cureton, he may argue that Novant Health should be liable for punitive damages because it authorized the D&I Program. This argument, too, fails to establish the requisite malice or reckless disregard by Novant Health.

First, Plaintiff admitted at trial that the D&I Program was "properly done" during his employment, which is why he never complained. (Doc. 117, 84:16-21; *see also* Doc. 117, 83:6-15). Moreover, the evidence is uncontroverted that Novant Health's D&I Program was lawfully implemented and did not entail terminating employees of one race or gender to make room for another. (Doc. 115, 12:20-24).

In any event, a D&I Program, without directives to terminate white men to make room for diverse candidates *and* proof Plaintiff was improperly terminated pursuant to the program, cannot support an award of punitive damages. Absent such evidence – and none exists – Novant Health cannot be found to have acted with malice or in reckless disregard of Plaintiff's rights. *Lowery,* 206 F.3d at 445-446. Nor did Plaintiff make the required showing that Novant Health implemented this program "in the face of a perceived risk that its actions will violate federal law." *Id.* at 442 (*quoting Kolstad,* 119 S. Ct. at 2124)).

The record conclusively establishes that there were no targets or bonuses tied to increasing diversity in place at any time during Plaintiff's employment that could be used to support a motive for unlawful preferential hiring. (*See* Memorandum in Support of Motion for Sanctions, pp. 13-16, containing a summary of evidence regarding no diversity targets or bonuses during Plaintiff's employment). Tanya Blackmon confirmed that "[Novant Health] never had any targets to hit a certain number of people in the organization. That was never our goal." (Doc. 114, 86:10-12). Novant Health also never had a policy of favoring nonwhite and female employees over white males during Plaintiff's employment. (Doc. 115, 25:23-26:1, 26:25-27:6). Any suggestion by Plaintiff to the contrary is false and entirely unsupported by the evidence.

The first time Novant Health implemented a diversity target or bonus was in 2019, *after Plaintiff had already been terminated*, and it was limited to increasing Hispanic and Asian

Americans. (Doc. 115, 36:9-38:8, 85:8-14). And, there were no targets tied to increasing African Americans or women—the race and gender of the individual hired to replace Plaintiff—at any time. (Doc. 115, 35:8-23; Doc 117, 159:19-160:5, 174:9-21). Plaintiff could not substantiate the existence of a plan to terminate white men to make room for diverse candidates, and he sat on the executive council for diversity and inclusion—the highest-level committee over the subject. (Doc. 115, 13:20-14:1; Doc. 117, 83:2-5).

Plaintiff's attempts to cherry-pick statements in Novant Health's diversity power points and committee minutes provide no evidence of an intent to discriminate for one reason. None of those documents suggests or permits intentional discrimination. Moreover, the documents define diversity to include people from *all* backgrounds and experiences, including white men. (Pl. Ex. 15; Doc. 114, 92:20-23; Doc. 117, 81:25-82:24). Blackmon testified that "[f]or Novant Health, diversity is a broad spectrum of characteristics of people from race, age, ethnicity, religion, job type, sexual orientation, gender identity, military status. So it's all inclusive of that." (Doc. 114, 79:5-8). As Blackmon testified, there was an "inclusion goal" inclusive of all people. (Doc. 114, 97:2-6; Doc. 115, 38:9-40:10). Plaintiff also admitted that white men were included in Novant Health's definition of diversity. (Doc. 117, 81:11-18). Such language cannot constitute evidence of intentional discrimination based on race or sex.

>    b. *Fourth Circuit Precedent Requires Much More Than What Plaintiff Offers Here to Establish a De Facto Unlawful Policy*

The Fourth Circuit's decision in *Lowery* is readily distinguishable from the instant case. In that case, the appellate court affirmed an award of punitive damages where the plaintiff proved that she failed to receive several promotions as a result of an unlawful pattern of not promoting Black employees. 206 F.3d at 448. The Fourth Circuit reasoned: "while the fact that [the company] had a very subjective and unstructured promotional system in place does not alone suggest a secret

corporate policy [] to keep African–Americans in low level positions . . . when this fact is coupled with the fact that the [] executive responsible for the system harbors racial animus towards African–Americans, a reasonable juror could infer that the system was implemented in an effort to mask such a corporate policy." *Id*. at 446.

In *Lowery,* unlike the instant case, there was substantial direct evidence of discriminatory racial animus as demonstrated by the defendant's ignoring overtly discriminatory conduct and statements by multiple company executives, along with evidence that African-American employees feared retaliation if they complained about discrimination. *Lowery*, at 438-39; 445-46.

In contrast to the plaintiff in *Lowery,* Plaintiff here has not presented evidence of any race-based complaints by white men that Novant Health ignored. To the contrary, the one complaint Plaintiff introduced by a white man was fully investigated and found to be unsubstantiated. (Doc. 115, 76:6-18). Novant Health specifically created a business resource group (BRG) for white men to ensure any other concerns white men may have had were fully heard. (Doc. 115, 27:23-29:6). According to Blackmon, this group focused on the different needs and perspectives of white male employees and showed them that they were part of diversity and inclusion efforts. *Id.*

There is no evidence that Novant Health executives harbored any race-based animus towards white men. Indeed, the CEO of Novant Health is a white man (Doc. 115, 46:1-5), and white men held a disproportionately high percentage of leadership positions within Novant Health. (Def. Ex. 16; Doc. 115, 44:16-48:2). There is no evidence of derogatory or discriminatory comments towards white men, nor did Plaintiff ever raise any complaints of discrimination at any time during his entire five years of employment. (*See* Doc. 117, 66:18-25, 74:5-7, 162:21-163:3, 207:20-208:1; Doc. 115, 15:7-22). There is no evidence that Cureton or anyone else had any race-based animus towards white men or Plaintiff. In fact, Cureton hired several white men, including

Plaintiff. (Doc. 117, 72:19-73:3, 146:21-23, 148:5-18; Doc. 117, 167:14-171:20). Plaintiff admitted he had "an excellent working relationship with Jesse [Cureton]" (Doc. 117, 125:20-22) and "an excellent working relationship" with Blackmon. (Doc. 117, 125:23-24). There is no evidence to suggest that white male employees feared retaliation if they complained.

  *c. Plaintiff Cannot Show Novant Health Acted with Malice or Reckless Disregard When Implementing the D&I Program*

   Nor can Plaintiff show Novant Health discriminated against him in the face of a "perceived risk" that its actions could violate the law. *Lowery,* 206 F. 3d at 441 (citing *Kolstad,* 119 S. Ct. at 2124-25)). Novant Health certainly did not believe its D&I Program was unlawful. Novant Health believed the opposite—that it was implementing a robust D&I Program to ensure compliance with the law, to ensure it did not have any "blind spots," and to ensure its workforce was appropriately represented by all individuals in the communities it served. (*See* Doc. 115, 29:9-30:2; Doc. 116, 84:5-13). Even if the D&I Program could support an inference of discrimination, which it does not, it cannot support an award of punitive damages as a matter of law. *See Kolstad,* 119 S. Ct. at 2125 (citing as an example of the type of discrimination that does not give rise to punitive damages when "the employer discriminates with the distinct belief that its discrimination is lawful" because in that scenario, no discrimination "in the face of a perceived risk" that the action could violate the law exists).

   No case law holds that an aspirational D&I Program such as Novant Health's – which seeks to ensure that an employer's workforce is representative of the community it serves – is unlawful. In light of such programs' presumptive legality, Novant Health could be not have been on notice that its D&I Program could subject it to an award of punitive damages. This is particularly true where Plaintiff never complained of discrimination at any time during his employment and

admitted that the D&I Program was "properly done," which is why he never complained about it. (*See* Doc. 115, 15:7-22; Doc. 117, 66:18-25, 74:5-7, 162:21-163:3).

Indeed, Novant Health was unable to find a single case in any circuit holding that the mere existence of a D&I Program, without more, was sufficient to support punitive damages. Plaintiff's reliance on the D&I Program as evidence of alleged discrimination is a prime example of an "underlying theory of discrimination [that] may be novel or otherwise poorly recognized," which cannot give rise to punitive damages because it does not show that the employer was "at least discriminat[ing] in the face of a perceived risk that is actions will violate federal law." *Kolstad*, 119 S. Ct. at 2125. To the contrary, the Fourth Circuit has affirmed judgment as a matter of law *for defendants* when an affirmative action plan – with numerical targets – was the only "evidence" of discrimination. *Bostron v. Apfel*, 104 F. Supp. 2d 548, 555-556 (D. Md. 2000), aff'd, 2 F. App'x 235 (4th Cir. 2001) (granting judgment as a matter of law for defendant where there was no evidence that any decision maker relied on the affirmative action plan in the promotional decisions challenged by plaintiff). This Court should reach the same decision.

As the Fourth Circuit has recognized, showing the propriety of punitive damages is a "high standard to meet." *Ward*, 958 F.3d at 268-69. Plaintiff's reliance on pure speculation about an unsubstantiated "pattern of white men terminations" or pointing to targets or bonuses only implemented after Plaintiff's employment ended is insufficient to support the "extraordinary remedy" of punitive damages.

    3.   Even If Plaintiff Could Establish Malice or Reckless Disregard, Which Is Denied, Novant Health's Good Faith Compliance Precludes a Punitive Damages Award

Even if the Plaintiff could establish intentional discrimination and malice by Novant Health's decision maker, which he did not, the inquiry does not end there. The Court must still determine whether the employer "engaged in good-faith efforts to comply with Title VII." *Bryant*,

333 F.3d at 548. Because it did so, Novant Health cannot be vicariously liable for punitive damages arising from the discriminatory employment actions of its managerial employees. *Id.* (*citing Kolstad*, 527 U.S. at 535–36).

The evidence at trial shows that Novant Health went above and beyond compliance with the law by implementing a robust D&I Program to ensure its workforce was appropriately representative of the communities it serves. In *Bryant,* the Fourth Circuit reversed the award of punitive damages based on similar evidence, finding the good faith standard was met. 333 F.3d at 548 (4th Cir. 2003). Evidence of good faith included, among other things, a "carefully developed diversity training program that included formal training classes and group exercises for … employees" and "voluntarily monitor[ing] departmental demographics as part of an ongoing effort to keep the employee base reflective of the pool of potential employees in the area." *Id.* at 548–49. These "widespread anti-discrimination efforts" precluded an award of punitive damages. *Id. See also Jaudon v. Elder Health, Inc*., 125 F. Supp. 2d 153, 172 (D. Md. 2000) (reversing punitive damages award in a sexual harassment case where the employee was able to report the harassment and the employer quickly investigated).

Novant Health's efforts to ensure compliance exceed those endorsed by the court in *Bryant.* They included:

- The establishment of multiple affinity groups, including for white men ("White Men as Full Diversity Partners"), to ensure the voices of every protected group and category were heard, even having a full-day "White Man's Caucus" (Pl.'s Ex. 22; Pl.'s Ex. 16; Doc. 115, 27:23-29:6, 50:19-52:2);

- "[M]ore than 30 certified diversity and inclusion facilitators" to host "regularly scheduled web chats to engage team members in conversation on topics such as stereotypes, unconscious bias, and national tragedies." (Pl.'s Ex. 22; Doc. 117, 209:21-210:22);

- Structured "listening tours" by Blackmon so that she could hear what "people were thinking" and what concerns they had, including a discussion of how to lawfully

respond to scenarios or question employees raised that may implicate diversity and inclusion topics or concerns of unfair treatment (Pl.'s Ex. 13; Doc. 114, 75:24-76:13);

- The opportunity to raise complaints or concerns to HR, which Plaintiff admittedly did not do (Doc. 115, 15:7-22; Doc. 117, 66:18-25, 162:21-163:3);

- Diversity and inclusion councils and committees (Doc. 115, 13:20-25; Doc. 117, 83:2-5);

- Regularly looking at industry best practices and engaging consultants for the same (Pl. Ex. 19; Doc. 115, 32:22-35:5); and

- Openly recognizing that diversity and inclusion includes people from all backgrounds, races, genders, and experiences, including white men (Pl. Ex. 15; Doc. 114, 92:20-23; Doc. 117, 81:25-82:24; Doc. 117, 81:11-18).

In fact, Plaintiff's contends that Novant Health's efforts to ensure diversity and inclusion were so significant that they went too far. He can hardly claim Novant Health did not comply with the law—a point the Court acknowledged when refusing to strike the good faith instruction in the first place. (Doc. 119, 8:9-12).

4. <u>The Award of Punitive Damages Violates Due Process, Particularly Because the Only Explanation for It Is a Jury Inflamed by Improper Prejudices or Passion</u>

*a. Due Process requires that the punitive damages award here be set aside*

The punitive damages award must also be set aside because it violates due process. While states possess discretion over the imposition of punitive damages, there are procedural and substantive constitutional limitations on these awards. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416, 123 S. Ct. 1513, 1519, 155 L. Ed. 2d 585 (2003). Specifically, the Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments. *Id.* The reason is that "fundamental to the due process analysis is whether the defendant received fair notice that the conduct in question was prohibited and what the potential penalty for engaging in that conduct could be." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574, 116 S. Ct. 1589 (1996). When reviewing a punitive damages award to determine whether it violates

the Due Process Clause, courts consider (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Id.* at 568. All factors invalidate the punitive damages award in this case.

First, Novant Health did not engage in reprehensible conduct. Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct. *BMW, citing Owen*, A PUNITIVE DAMAGES OVERVIEW: FUNCTIONS, PROBLEMS AND REFORM, 39 Vill. L. Rev. 363, 387 (1994). As the Supreme Court stated nearly 150 years ago, exemplary damages imposed on a defendant should reflect "the enormity of his offense." *Day v. Woodworth*, 54 U.S. 363 (1851). This first "reprehensibility" guidepost is defined by five factors, whether: (1) the harm caused was physical as opposed to economic; (2) the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated actions or was an isolated incident; and (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident. *Daugherty v. Ocwen Loan Servicing, LLC*, 701 Fed. Appx. 246, 259 (4th Cir. 2017) (*citing State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 416–17).

In this case, the only "harm" at issue is alleged lost wages, which the Fourth Circuit has held renders any punitive damages award "especially suspect." *Jordan v. Shaw Indus., Inc.*, 131 F.3d 134 (4th Cir. 1997) (punitive damages are "especially suspect when, as here, the compensated harm is only 'economic harm,'" such as a case for lost wages). In fact, Plaintiff did not seek compensatory damages and seeks only seeking lost wages. (*See* Doc. 117, 16:16-18, 18:3-4 and Doc. 118. 22:2-16, 40:3-6). Novant Health's actions did not implicate public health or safety

considerations—this is not a toxic tort case where the defendant exposed the public to substantial health risks. Plaintiff is not vulnerable: he was a high-level executive who was offered $500,000 in severance and hired two different lawyers to negotiate for more. (Joint Ex. 12; Doc. 117, 58:7-60:3, 60:6-8). Indeed, in light of his subsequent earnings at Henry Ford Health Center, (over $1.2 million) (Doc. 117, 44:25-45:16), Plaintiff suffered no lost earnings at all. In fact, he made *more money* by leaving Novant Health than he would have made had he remained employed. (Doc. 117, 100:5-102:25).

The second indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff. *BMW*, 517 U.S. at 580. Here, Plaintiff is not even seeking compensatory damages and any actual damages are nonexistent.

Comparing the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct provides a third indicium of excessiveness. *BMW*, 517 U.S. at 583. This factor establishes that any punitive damages award, even if capped at $300,000, is excessive on its face. First, the punitive damages award in this case is five times higher than any other reported employment discrimination verdict in any federal or state court within the Fourth Circuit in the past ten years. *See* Exhibit A, Chart of Reported Verdicts in the Past 10 Years.[1] Significantly, even in *Ward*, where the plaintiff suffered *repeated incidents* of physical and verbal harassment that management ignored or belittled, the punitive damages award was only $600,000 before the Fourth Circuit vacated that award entirely. If punitive damages were not appropriate in *Ward*, they are surely certainly not appropriate here.[2]

---

[1] The Chart in Exhibit A includes the jury verdicts in employment law cases from all federal/state courts within North Carolina, South Carolina, and Virginia in the past 10 years that are publicly available and reportable.

[2] The Second Circuit Court of Appeals refused to find a punitive damages award of 4:1 to be proper, reducing it to 2:1, with much more egregious facts, including a plaintiff who was subject

> b. *The Due Process concerns are even more significant in this case because Plaintiff's misconduct improperly inflamed the jury*

The Court should also set aside the punitive damages award in light of the misconduct by Plaintiff and his counsel that served to improperly influence the jury. This misconduct surely ignited and inflamed the passions and prejudices of the jury and provides the most obvious explanation for the excessive punitive damages award. Such misconduct included:

(1) Plaintiff's and his counsel's repeated violations of the *In Limine* Order barring improper comparators (*See* Doc. 115, 233:3-13, Doc. 116, 198:21-199:5; Doc. 119, 57:3-11). While the Court gave a curative instruction (Doc. 117, 23:7-17), the size of the jury verdict makes clear that the jury did not disregard this testimony as instructed;

(2) Repeated misrepresentations about diversity bonuses and targets being the cause of Plaintiff's termination when the evidence is undisputed that no such bonuses or targets even existed during Plaintiff's employment (*See* Memorandum in Support of Motion for Sanctions, pp. 13-16, containing a summary of misrepresentations versus actual evidence);

(3) The inflammatory and false statement by Plaintiff's counsel in closing argument accusing Novant Health of terminating a witness because he was willing to testify in favor of Plaintiff at trial (Doc. 119, 56:9-15, 59:6-7); and

(4) Plaintiff's counsel's completely unnecessary reference to George Floyd in his questioning about Plaintiff's replacement (Doc. 117, 175:14-176:11).

George Floyd's death has absolutely no relevance whatsoever to Plaintiff's termination. The only reasonable purpose in mentioning it was to distract the jury from the actual evidence and inflame racial prejudices, which tactics cannot be tolerated and should be sanctioned by this Court. *See, e.g. Slappy v. City of Detroit*, No. 19-10171, 2021 WL 2986284, at *5 (E.D. Mich. July 15, 2021) (finding "no factual or legal connection between nationally reported incidents" and the case

---

to three years of racial slurs, death threats, comments about the KKK, and statements that black men were like apes. *Turley v. ISG Lackawanna, Inc.,* 774 F.3d 140, 144-46 (2d Cir. 2014). In holding the award to be excessive, the court noted "punitive damages awards in workplace discrimination cases rarely exceed $1.5 million." *Id.* at 166.

at hand and concluding that the mention of the "Black/Blue/All Lives Matter may trigger strong public reactions which could unfairly prejudice [defendants].")[3]

Most egregiously, Plaintiff's counsel falsely told the jury in closing argument that punitive damages were particularly appropriate because Novant Health had Matthias Krebs fired because he was going to testify in favor of Plaintiff:

> **And maybe the most shocking part of this case and maybe one round for punitive damages in this case is you learned Matthias tells the story about David was the best boss out of 21 he had**. . . [s]o Matthias meets with counsel when we let him as a witness. And he tells them what he told you on the stand. David was a fantastic boss. **And he tells about his misgivings about Ms. Free, and the next day he gets fired. Oh, my God. Oh, my God. A man with a nine-year-old child and a wife. Because he was willing to come here and speak honestly about his experience with David.**

(Doc. 119, 56:9-15) (emphasis added). Plaintiff's counsel again emphasized this false notion during his closing, stating: "And then they fire Matthias when he's willing to come testify. Unbelievably harsh." (Doc. 119, 59:6-7). Plaintiff's counsel had documentary proof establishing this was false. (*See* Memorandum in Support of Motion for Sanctions, pp. 9-1).

Plaintiff's counsel also explicitly directed the jury to consider Novant Health's wealth and assets, without worrying about actual damages, when coming up with the amount for punitive damages:

> In 2017, the net assets of this company was $3.9 billion; and in 2018, the year he was fired, it was $4.04 billion. That's net assets. **So the question in awarding punitive damages is: How much do you need to award to get their attention?** It needs to be proportionate to sort of what the company is worth and it needs to be proportionate to the severity of what happened to this person. **And don't worry about how it ties to the judge's calculation of the lost wages.** It's just something that you have the power under the law to decide whether or not to award them; and

---

[3] *See also Ochana v. Flores*, 199 F. Supp. 2d 817, 831 (N.D. Ill. 2002), *aff'd,* 347 F.3d 266 (7th Cir. 2003) ("The court finds that any reference to recent publicized events concerning allegations of police misconduct would be unduly prejudicial, as it would distract the jury's attention from the conduct at issue");

if you award them, how much? And they're awarded for reckless disregard of his rights, which is exactly what happened in this case."

(Doc. 119, 109:3-15) (emphasis added). This is improper on its face.

The Supreme Court has explicitly cautioned against permitting outsized jury awards based on improper bias against big businesses. *See State Farm*, 538 U.S. at 417 (noting that "the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses" (citation omitted)); *BMW*, 517 U.S. at 585 ("The fact that BMW is a large corporation rather than an impecunious individual does not diminish its entitlement to fair notice of the demands that the several States impose on the conduct of its business."). "The wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award, and cannot make up for the failure of other factors, such as reprehensibility, to constrain significantly an award that purports to punish a defendant's conduct." *Bains LLC v. Arco Prod. Co., Div. of Atl. Richfield Co.*, 405 F.3d 764, 777 (9th Cir. 2005).

Directing the jury to consider Novant Health's wealth and assets, while disregarding any actual damages, is improper as a matter of law. The motive for this is apparent. In some quarters, D&I Programs are a socially-polarizing issue, a negative example to some of "woke culture." But such controversy is not a valid reason to punish Novant Health in any amount. On that basis, the award violates due process.

In cases like this one where the obvious explanation for an excessive punitive damages award was that the jury considered improper evidence and arguments, courts have found the award to be "fatally defective." *See Burke v. Deere & Co.*, 6 F.3d 497, 512–13 (8th Cir. 1993) (finding punitive damages award to be "fatally defective" when, among other things, counsel made an improper "golden rule" argument in closing, which, when coupled with the improper introduction of evidence of other accidents and size of ultimate verdict, led the court to believe the jury must

have sought to "engage in a social reallocation of resources for the benefit of parties not properly

before the court.") The Court should reach the same result here.

     5.   Even if Punitive Damages Are Permissible, which Novant Health Denies, They Must be Reduced Below Statutory Cap of $300,000

Finally, even if some amount of punitive damages is recoverable, which Novant Health

denies, the punitive damages award must be reduced to comply with the statutory cap of $300,000

under Title VII. 42 U.S.C. § 1981a(b)(3)(D); *Hyland v. Xerox Corp.*, 481 Fed. App'x. 819, 823

(4th Cir. 2012). As *Ward* makes clear, North Carolina law offers Plaintiff no avenue for additional

punitive damages. *Ward*, 958 F.3d at 270. Specifically, in North Carolina:

> Punitive damages may be awarded only if the claimant proves the defendant is
> liable for compensatory damages and that one of the following aggravating factors
> was present and was related to the injury for which compensatory damages were
> awarded: (1) Fraud; (2) Malice; and (3) Willful or wanton conduct.

N.C. Gen. Stat. § 1D-15(a). The existence of an aggravating factor must be proved by clear and

convincing evidence. N.C. Gen Stat. § 1D-15(b). Punitive damages may only be awarded against

a corporation if "the officers, directors, or managers of the corporation participated in or condoned

the conduct constituting the aggravating factor giving rise to punitive damages." N.C. Gen. Stat. §

1D-15(c).

As the Fourth Circuit has recognized, the standard for punitive damages under North

Carolina law is distinct and separate from the standard for punitive damages under Title VII in two

material ways. *Ward*, 958 F.3d at 270. First, the burden is much higher. *Id*. The existence of an

aggravating factor under North Carolina law must be proved by clear and convincing evidence,

not a preponderance of the evidence. N.C. Gen. Stat. § 1D-15(b). "[The clear and convincing

standard] is more exacting than the preponderance of the evidence standard generally applied in

civil cases." *Scarborough v. Dillard's, Inc.*, 363 N.C. 715, 721, 693 S.E.2d 640, 643 (2009)

(internal quotation marks omitted). Second, North Carolina's definition of willful or wanton conduct differs substantially from Title VII's definition of reckless indifference.[4] *Ward*, 958 F.3d 254. When a plaintiff cannot provide evidence that "fully convince[s]" that the manager participated in or condoned willful or wanton conduct as required under North Carolina law, courts in this Circuit have regularly found punitive damages to be improper as a matter of law. *Ward*, 958 F.3d at 271 (finding punitive damages improper as a matter of law under North Carolina law); *Equal Emp. Opportunity Comm'n v. Joe's Old Fashioned Bar-B-Que, Inc.*, No. 518CV00180KDBDSC, 2020 WL 3128599, at *10 (W.D.N.C. June 12, 2020) (dismissing punitive damages under North Carolina law on summary judgment because the evidence did not "fully convince").

Plaintiff's claims for punitive damages under North Carolina law must fail because:

(1) Plaintiff is not seeking compensatory damages, which is a prerequisite to an award of punitive damages under North Carolina law. *See* N.C. Gen. Stat. Chapter 1D (2010) ("Punitive damages may be awarded only if the claimant proves the defendant is liable for compensatory damages …");

(2) Plaintiff did not ask for a clear and convincing evidence jury instruction. The jury was only provided with the preponderance of the evidence instruction, which the Fourth Circuit has recognized is markedly different; and

---

[4] Under North Carolina law, willful or wanton conduct is defined as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm. 'Willful or wanton conduct' means more than gross negligence." *Ward*, 958 F.3d 254 (*quoting* N.C. Gen. Stat. § 1D-5(7)); *Lashlee v. White Consol. Indus., Inc*., 144 N.C. App. 684, 548 S.E.2d 821, 827 (2001) ("A wanton act is an act done with a 'wicked purpose or ... done needlessly, manifesting a reckless indifference to the rights of others.'").

(3)     Plaintiff cannot "fully convince" a jury that Novant Health participated in or condoned any willful or wanton conduct, particularly under the heightened clear and convincing standard. For these reasons, even if the Court finds Plaintiff is entitled to some amount of punitive damages, which the law does not support, they must be reduced to at least the $300,000 cap applicable to Title VII.

### III.     <u>CONCLUSION</u>

As shown above, the Court should set aside the award of punitive damages in its entirety. Plaintiff did not make the requisite showing of malice or reckless disregard required for an award of punitive damages under Title VII, and Novant Health's good faith defense forecloses such an award. Further, the Due Process Clause prohibits an award of punitive damages in this case, where the excessive award stemmed from the misconduct of Plaintiff and his counsel at trial that improperly inflamed the prejudices and passions of the jury. An award of punitive damages here would constitute a miscarriage of justice. Novant Health, accordingly, asks the Court to set aside the jury's punitive damages award.

(*Signature block appears on the next page.*)

Dated this 1st day of February, 2022.

s/ Benjamin R. Holland
Benjamin R. Holland
N.C. Bar No. 28580
ben.holland@ogletree.com
Margaret Santen
N.C. Bar No. 52947
maggie.santen@ogletree.com
Elizabeth R. Gift
N.C. Bar No. 44331
elizabeth.gift@ogletree.com
S. Abigail Littrell
N.C. Bar No. 49354
abby.littrell@ogletree.com

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, North Carolina  28244
Telephone:    704.342.2588
Facsimile:    704.342.4379

*and*

Charles E. Johnson
N.C. Bar No. 9890
cejohnson@robinsonbradshaw.com
Stephen M. Cox
N.C. Bar No. 23057
scox@robinsonbradshaw.com
Angelique R. Vincent-Hamacher
N.C. Bar No. 29547
avincent@robinsonbradshaw.com

ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina  28246
Telephone:    704.377.2536
Facsimile:    704.373.3996

***Attorneys for Defendant Novant Health, Inc.***

## CERTIFICATE OF SERVICE

I, Benjamin R. Holland, hereby certify that I have this day electronically filed the foregoing

**MEMORANDUM IN SUPPORT OF DEFENDANT NOVANT HEALTH, INC.'S MOTION**

**TO SET ASIDE PUNITIVE DAMAGES** with the Clerk of Court using the CM/ECF system,

which will send notification of the filing to the following person:

S. Luke Largess
*Attorney for Plaintiff*
Tin, Fulton, Walker & Owen, PLLC
301 East Park Avenue
Charlotte, NC 28203
Telephone: 704.338.1220
Facsimile: 704.338.1312
Email: llargess@tinfulton.com

Dated this 1st day of February, 2022.

s/ Benjamin R. Holland
Benjamin R. Holland, N.C. Bar No. 28580
*Attorney for Defendant*
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC  28244
Telephone:  704-342-2588
Facsimile:  704-342-4379
Email:  ben.holland@ogletree.com