IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| DAVID DUVALL,<br><br>               Plaintiff,<br><br>v.<br><br>NOVANT HEALTH, INC.,<br><br>               Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 3:19-cv-624-DSC<br>)<br>)<br>)<br>)<br>) |

### DEFENDANT NOVANT HEALTH, INC.'S POST-TRIAL BRIEF
### ON SEVERANCE-RELATED CLAIMS

COMES NOW Defendant Novant Health, Inc. ("Novant Health"), by and through its counsel, and respectfully submits this brief in support of its position that judgment should be entered in favor of Novant Health on Plaintiff David Duvall's severance-related claims.[1]

## I.    INTRODUCTION

Plaintiff filed this action on November 18, 2019, alleging discrimination on the basis of his sex (male) and race (white). Plaintiff further claimed that Novant Health wrongfully terminated his employment to avoid paying him certain severance benefits in violation of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and alternatively, North Carolina's Wage and Hour Act. However, Plaintiff premises these claims on a faulty basis – namely, he is asserting a claim for severance benefits under a policy *that was not in effect at the time of his termination*. Even if this policy had been in effect, Plaintiff failed to prove he was

---

[1] Novant Health refers to Plaintiff's Second Claim for Relief (29 U.S.C. § 1140) and Fourth Claim for Relief (Wrongful Discharge) collectively as the "severance-related claims."

entitled to such a benefit. Nor is there any evidence that Novant Health acted with a specific intent to interfere with his severance benefits, as required for Plaintiff to prevail under ERISA.

At their core, Plaintiff's severance-related claims rely on Plaintiff's speculation that Novant Health schemed to terminate him ahead of his five-year work anniversary to avoid paying him severance benefits. No evidence supports this claim, and Plaintiff's conjecture cannot sustain his burden of proving Novant Health terminated him with the *specific intent* of interfering with his severance benefits. Moreover, Plaintiff's contentions regarding severance ignore the fact that Novant Health offered him a generous severance package in accordance with the applicable policy, which Plaintiff refused. Novant Health had no severance-related incentive to terminate Plaintiff when it did, as the amount was already set in the applicable policy and is unaffected by years of service. Plaintiff also ignores the timeline that led to his lawful termination, including the "straw that broke the camel's back," which had nothing to do with his impending five-year anniversary. (Doc. 117, 181:17-182:18). Finally, there is no evidence that the decision maker was aware of Plaintiff's severance benefits at all and thus they could not have influenced the decision to terminate Plaintiff's employment.

Plaintiff has failed to establish that Novant Health acted with specific intent to interfere with his severance benefits, as required under ERISA. To the extent Plaintiff seeks the same relief under state law (a claim the parties expressly waived in the Pretrial Order), ERISA preempts such a claim. Accordingly, Novant Health is entitled to judgment in its favor on the severance-related claims.

2

Case 3:19-cv-00624-DSC    Document 129    Filed 02/01/22    Page 2 of 17

## II. BACKGROUND

Novant Health hired Plaintiff on August 5, 2013 for the position of Senior Vice President of Marketing and Communications. (Doc. 1, ¶ 9; Doc. 116, 31:10-15; Doc. 117, 47:5-7). At that time, Novant Health had implemented an Executive and Leader Severance Pay Policy (the "2013 Policy"). (*See* Joint Exhibit 5 and Doc. 37, ¶ 3, Exhibit A (hereinafter "Exhibit A"), for a true and correct copy of the 2013 Policy). Plaintiff was classified as a Tier II executive under the 2013 Policy. (Doc. 1, ¶ 11; Doc. 117, 30:9-12, 109:2-5). Pursuant to the 2013 Policy, eligible Tier II executives with five or more years of service would be entitled to 18 months of base salary and an amount equal to 1.5 times the annual incentive award paid to the executive for the fiscal year prior to the year of termination. (*See* Exhibit A at pg. 3; Doc. 1, ¶ 14; Doc. 117, 30:18-31:1, 111:2-6). In his Complaint, Plaintiff claims Novant Health terminated him in 2018 before his fifth anniversary to prevent him from attaining the severance benefit available to those with five years of service. (Doc. 1, ¶ 45). At no time during this litigation or at trial has Plaintiff presented evidence to substantiate this groundless theory.

The evidence makes clear that Plaintiff was never entitled to the severance benefit under the 2013 Policy for two irrefutable reasons. First, the 2013 Policy was no longer in effect at the time of his July 30, 2018 termination. Novant Health had amended the Executive and Leader Severance Pay Policy three years prior in 2015 (the "2015 Policy"). (*See* Joint Exhibit 13 and Doc. 37, ¶ 4, Exhibit B (hereinafter "Exhibit B,"), for a true and correct copy of the 2015 Policy; Doc. 116, 111:7-112:9). The 2015 Policy does not provide any special benefit based on years of service. (*Id*.; Doc. 116, 112:10-19). Tier II leaders such as Plaintiff are eligible for a set rate of severance pay regardless of tenure. (*See* Exhibit B at pg. 3) (providing a severance benefit of 12 months' base salary for Tier II executives).

Second, Plaintiff was terminated on July 30, 2018 and never actually reached five years of service. (Doc. 1, ¶ 16; Doc. 116, 196:2-13). Even if the 2013 Policy had remained in effect, which it did not, Plaintiff would not have been entitled to the severance benefit as described in his Complaint. (Doc. 1, ¶ 14). Simply stated, Plaintiff's claim fails as he is seeking a severance benefit that no longer exists under a Policy that was not in effect at the time of his termination. He never met the required service years under the obsolete 2013 Policy. (Doc. 116, 32:3-7). Plaintiff was terminated for legitimate non-discriminatory reasons independent of his severance benefits and he cannot show Novant Health acted with a specific intent to interfere with those benefits.

Novant Health filed a Motion for Summary Judgment on September 21, 2020, which addressed both Plaintiff's discrimination claims and severance-related claims (Doc. 38, 40). On November 9, 2020, the Court denied both parties' Motions for Summary Judgment and found that there were issues of material fact that would permit, but not require, a reasonable jury to return a verdict in either party's favor. (Doc. 66). The case was tried by a jury from October 19, 2021 through October 26, 2021. Only the discrimination claim was submitted to the jury, as the parties stipulated that the severance-related wrongful discharge claim is preempted by ERISA and should be decided by the Court (Doc. 69, ¶ II.2). Accordingly, Novant Health respectfully requests the Court to enter judgment in its favor on the severance-related claims.

### III. ARGUMENT

**A. Novant Health is entitled to judgment on the severance-related claims because Plaintiff failed to show that Novant Health acted with specific intent to interfere with severance benefits earned by him.**

Plaintiff's severance-related claims are rooted in a futile attempt to use ERISA to turn back the clock and obtain benefits under the obsolete 2013 Policy. Plaintiff has failed to establish such a claim, nor can he.

ERISA § 510 was enacted to protect employees from termination that interferes with their *benefits earned. See Brewer v. Dana Corp. Spicer Heavy Axle Div.*, 205 F. Supp. 2d 511, 518 (W.D.N.C. 2002) (ERISA § 510 protects plan participants from termination that is motivated by an employer's desire to prevent an employee from receiving benefits earned, but not paid). It is not a gateway for former employees to argue entitlement to benefits they never qualified for or did not earn.

To prevail on an ERISA § 510 claim, Plaintiff must prove Novant Health acted with a specific intent to interfere with his severance benefits that were otherwise due. *See Holtz v. Jefferson Smurfit Corp.*, 408 F. Supp. 2d 193, 208 (M.D.N.C. 2006), *aff'd*, 242 F. App'x 75 (4th Cir. 2007). The Fourth Circuit has explained the importance of proving specific intent, as this distinguishes terminations which merely have an incidental effect on an employee's pension rights from actionable firings where the employer's pension obligation was a motivating factor. *See Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 238–39 (4th Cir. 1991). Specific intent can be demonstrated either through direct evidence or circumstantial evidence under the *McDonnell Douglas* burden-shifting scheme. *See Holtz*, 408 F. Supp. 2d 193 at 208. Plaintiff offered no direct evidence of specific intent.

Under the *McDonnell Douglas* analysis, Plaintiff could establish a prima facie case only by showing (1) that he was a member of the protected class, *i.e.,* a participant in an employee benefit plan; (2) that he was qualified for the job; and (3) that he was discharged "under circumstances that give rise to an inference of discrimination." *See Blair v. Young Phillips Corp.*, 235 F. Supp. 2d 465, 473 (M.D.N.C. 2002). If he succeeds, the burden shifts to Novant Health to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Id*. Then, the burden shifts back to Plaintiff to show by a preponderance of evidence that the legitimate reasons

proffered by Novant Health were not its true reasons but were a pretext for discrimination. *Id.* Plaintiff must prove not only that Novant Health's reasons are false, but that discrimination under ERISA was the real reason for his termination. *See Vaughan v. Metrahealth Cos.*, 145 F.3d 197, 202 (4th Cir. 1998).[2]

Plaintiff bears the burden of presenting evidence to support each and element of his claim. *See Brewer*, 205 F. Supp. 2d 511 at 519. But Plaintiff's evidence at trial fell far short of establishing that Novant Health acted with specific intent to interfere with his severance benefits.

### 1. Plaintiff's severance-related claim fails as it is premised upon the 2013 Policy, which was not in effect at the time of his 2018 termination, and the 2015 Policy does not provide the benefit he seeks.

Under the first element of the *McDonnell Douglas* analysis, Plaintiff must show he is a member of the protected class and a participant in an employee benefit plan. *See Blair*, 235 F. Supp. 2d 465 at 473; *see also Holtz*, 408 F. Supp. 2d 193 at 208 ("Plaintiff must show that he was in the protected class (within the group qualified for the ERISA plan)."). Novant Health does not dispute that Plaintiff was a participant in an employee benefit plan, generally. He was eligible under the 2015 Policy and Novant Health offered to pay him severance under the terms of that Policy, which Plaintiff refused. (Doc. 117, 90:18-92:10). However, Plaintiff is not seeking severance under the 2015 Policy, but rather under the 2013 Policy, which was no longer in effect at the time of his termination. Thus Plaintiff, at the time of his termination, was not a participant

---

[2] It is important to note that discrimination, in the context of Duvall's ERISA claim, means ERISA discrimination for the purpose of interfering with the attainment of any right to which a participant may become entitled. *See* 29 U.S.C. § 1140. Duvall failed to make this distinction at trial and claimed that the evidentiary scheme is on same on both the ERISA claim and the Title VII/state law claims, proceeding to argue he was discriminated against on the basis of his gender and race (Doc. 117, 136:11-137:10). His claims of sex and race discrimination cannot be imputed to his ERISA discrimination claim – "discrimination" means something totally different in his ERISA § 510 claim.

in the employee benefit plan at issue because he could not be a participant in a plan that no longer existed.

Plaintiff alleged Novant Health prevented him "from attaining the severance benefit available to those with five years of service" citing to a severance amount that consisted of 18 months of base pay and benefits plus a lump sum of 1.5x the bonus received in the prior fiscal year. (Doc. 1, ¶¶ 14, 45). The 2015 Policy, in effect at the time of Plaintiff's termination, did not provide such a benefit. (*See* Exhibit B, generally). Under the 2015 Policy, Tier II executives such as Plaintiff were entitled to a straightforward severance benefit of 12 months' base salary. In his claim, Plaintiff refers to language in the 2013 Policy, which made a distinction between Tier II executives with less than five years of service and those with more. However, tenure was immaterial at the time of Plaintiff's July 30, 2018 termination as the 2013 Policy had been replaced by the 2015 Policy. (*See* Exhibit B; Doc. 116, 111:9-112:19).

ERISA does not permit a participant to pick and choose which iterations of plan he is covered by or to elect benefits from a policy that is no longer in effect. In a similar situation where employees sought benefits from a past severance policy which was formerly in place before an acquisition, the Fourth Circuit rejected their claim and held, "Nothing in ERISA thus required Warner–Lambert to pay plaintiffs at 1981 benefit levels or to provide continuing coverage for them under its severance policy. *Plaintiffs' interest in the severance plan did not vest simply because they once were covered by it.*" See *Sejman v. Warner-Lambert Co.*, 889 F.2d 1346, 1349 (4th Cir. 1989) (emphasis added) (holding the plaintiffs must look to the new severance policy of the company to which their division was sold and for which they continued to work). The fact that Plaintiff was formerly covered under Novant Health's 2013 Policy does not mean he is entitled to benefits under that policy where it was supplanted by the 2015 Policy. Moreover, Plaintiff never

7

became eligible for benefits under the 2013 Policy because he did not reach five years of service while it was in effect.

Plaintiff's claim that Novant Health acted unlawfully to deprive him of a severance benefit to which employees of five years or more were entitled is wholly unsupported by the written terms of the 2015 Policy, which provide no benefit to such employees. The Supreme Court has emphasized the importance of looking to the plan documents as written in ERISA cases, stating, "The principle that contractual limitations provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan. 'The plan, in short, is at the center of ERISA.'" *See Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013). The focus on the written terms of the plan is the linchpin of "a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place." *Id.* (citing *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996)). Plaintiff's attempt to claim benefits under the 2013 Policy, when only the 2015 Policy was in effect at the time of his termination, violates the letter and purpose of ERISA. By asserting a claim under an inapplicable plan, Plaintiff has failed to show that he is a participant in an employee benefit plan for the severance benefits he seeks.

> **2. Plaintiff failed to establish the remaining elements of a prima facie case under the *McDonnell Douglas* analysis and cannot prove that ERISA interference was the reason for his termination.**

Even if Plaintiff could show he is in a protected class for the purposes of his ERISA § 510 claim, which he cannot, he still must show he was qualified for the job and that he was discharged under circumstances that give rise to an inference of discrimination. *See Blair*, 235 F. Supp. 2d 465 at 473 (outlining the second and third elements of the *McDonnell Douglas* framework). Plaintiff failed to establish either of these elements: he was neither qualified for the job nor

8

Case 3:19-cv-00624-DSC    Document 129    Filed 02/01/22    Page 8 of 17

discharged under circumstances that give rise to an inference of discrimination. Rather, Novant Health offered substantial evidence that it terminated Plaintiff based on an aggregation of legitimate considerations, including his inability to meet the expectations of a Senior Vice President reporting to Jesse Cureton, Novant Health's Executive Vice President and Chief Consumer Officer.[3] (Doc. 117, 181:17-182:18).

The burden then shifts back to Plaintiff to show that the legitimate reasons proffered by Novant Health were not its true reasons but were a pretext for discrimination, and that his entitlement to benefits is the more likely reason for the termination. *See Brewer,* 205 F. Supp. 2d 511 at 518. He must show that discrimination under ERISA was the real reason for his termination. *See Vaughan*, 145 F.3d 197 at 202. Plaintiff, however, offered no competent evidence to counter Novant Health's legitimate, nondiscriminatory reasons for his termination, nor did Plaintiff show that his termination was motivated in any way by a desire to deprive him of severance benefits.

Plaintiff's sole evidence of discrimination under ERISA is that he was terminated five days before his fifth anniversary. (Doc., 1 ¶ 45). But it made no difference whether Novant Health terminated him before or *after* his fifth anniversary – either way he would be entitled to a severance benefit of 12 months' base salary as the 2015 Policy includes no special severance benefit based on years of service. (*See* Exhibit B, pg. 3). Plaintiff's length of service is immaterial under the applicable 2015 Policy. Beginning in 2015, when the new Policy took effect, Plaintiff was entitled to the same benefit as all other Tier II executives regardless of his length of service. The timing of Plaintiff's termination thus cannot support an inference that Novant Health acted with specific intent to interfere with his severance benefits.

---

[3] Novant Health is concurrently filing a Renewed Motion for Judgment as a Matter of Law which addresses Duvall's discrimination claims in full.

The Fourth Circuit has rejected a similar timing-based argument. In *Shores v. Lucent Techs., Inc.*, 2000 WL 20580 (4th Cir. Jan. 13, 2000), the plaintiffs argued that the temporal proximity between their forced retirement date of December 29, 1996 and the January 1, 1997 effective date of an increase in pension benefits created an inference of discrimination. Where the evidence showed that the employer had legitimate reasons for its action, the district court found no legal significance to the apparent temporal proximity. The Fourth Circuit agreed, holding that the "so-called temporal proximity of three days" was not enough to establish a prima facie case under ERISA § 510. *Id.* at *3.

Here Plaintiff's specious claim of discrimination based on the fact that he was terminated five days before his five-year anniversary is similarly unavailing. This is especially true given that his length of service had no bearing on his severance benefits under the applicable 2015 Policy.

### 3. Plaintiff's inability to prove specific intent is fatal to his claim, and the record demonstrates that Novant Health lacked both the knowledge and incentive to intentionally terminate Plaintiff with the purpose of affecting his severance benefits.

The uncontroverted evidence at trial, which showed that the decision maker who terminated Plaintiff had no knowledge of Plaintiff's severance eligibility or claims, poses an absolute bar to Plaintiff's ERISA claim. Mr. Cureton made the decision to terminate Plaintiff. (Doc. 117, 72:19-73:3, 159:7-18). Mr. Cureton testified at trial that he was not aware of the amount or details of any severance benefits that Plaintiff may have previously been entitled to as this was handed by Human Resources. *Id*. Mr. Cureton had not reviewed the severance plan before Plaintiff's termination, and was not aware of Plaintiff's years of service or his impending five-year anniversary.

> Q. Had you reviewed the specific plans applicable to Mr. Duvall before terminating his employment?

> A. I had not. I met with the HR partner and was aware of what we put on the table, which was consistent with what I was thinking in regards to Mr. Duvall.
>
> Q. Were you aware of how years of service was defined under the plan?
>
> A. Absolutely not.
>
> Q. Were you aware of Mr. Duvall's years of service or tenure at that point, specific dates of employment?
>
> A. Absolutely not.
>
> Q. Is it fair to say HR would handle that sort of thing?
>
> A. That's correct.

(Doc. 117, 163:10-22).

Courts have focused on the knowledge of the decisionmaker in determining whether there was intentional interference. If the evidence shows the decision maker was unaware of the facts that underlie the plaintiff's theory of interference, the claim fails. *See Youse v. Duke Energy Corp.*, No. 1:02CV00808, 2003 WL 27356582, at *12 (M.D.N.C. Dec. 15, 2003) (finding no intentional interference with plaintiff's unvested retirement benefits where the decision maker had no knowledge of her retirement plans at the time of termination). Without knowledge there can be no intent, and Mr. Cureton thus could not have acted to deliberately interfere with Plaintiff's severance benefits. His decision to terminate Plaintiff was based on Plaintiff's job performance and completely unaffected by any severance considerations. (Doc. 117, 181:17-182-18). The record contains no evidence of any intent to interfere with Plaintiff's severance benefits.

Plaintiff has offered no evidence to the contrary. At trial, Plaintiff referred only to a conversation he had with Jackie Daniels at the time of his offer in 2013. He claimed that Ms. Daniels told him that a five-year employee is entitled to 18 months of severance. (Doc. 117, 28:8-10; 88:1-4). This is immaterial, as Ms. Daniels was not involved in the decision to terminate

Plaintiff's employment. It is the knowledge and intent of the decisionmaker – Mr. Cureton – that matter. Moreover, purported oral representations pertaining to the obsolete 2013 Policy do not supplant the written terms of the 2015 Policy, which was in place at the time of Plaintiff's termination.

Additionally, Novant Health had no severance-related incentive to terminate Plaintiff. Plaintiff claims that he was terminated ahead of his fifth anniversary so Novant Health could avoid paying him benefits under the 2013 Policy for employees with five years of service. This is pure conjecture, and easily debunked by the terms of the applicable 2015 Policy. Novant Health was obligated to pay Plaintiff 12 months' base salary under the 2015 Policy, regardless of when it terminated Plaintiff. Novant Health never owed Plaintiff benefits pursuant to the obsolete 2013 Policy, and could not have acted with an intent to deprive him of benefits to which he was not entitled. *See Yarber v. Cap. Bank*, 944 F. Supp. 2d 437, 449 (E.D.N.C. 2013) (finding that defendants could not have acted with intent to deprive the plaintiff of severance payments he was not entitled to in the first place). Plaintiff's failure to show that Mr. Cureton knew about his severance benefits combined with the absence of any severance-related reason to terminate Plaintiff when it did so makes clear there was no intentional interference with Plaintiff's rights under ERISA.

### 4. Plaintiff cannot show entitlement to benefits under the 2013 Policy.

Plaintiff concedes that "[t]here is no dispute that Defendant amended the severance plan in 2015…." (Doc. 52, p. 20). Despite his admission, Plaintiff spuriously alleged that he "could have" sought judicial reformation, in a vain attempt to access the obsolete 2013 Policy benefits. (Doc. 52, p. 21). The Fourth Circuit is clear that reformation of an ERISA plan is a limited remedy, available only to correct a mutual mistake or to mitigate a fraudulent scheme. *See Cross v. Bragg*,

329 F. App'x 443, 454 (4th Cir. 2009). Neither circumstance applies here. As of October 2020, "[t]he Fourth Circuit has considered reformation under ERISA § 1132(a)(3) on at least five occasions, each time declining the request." *See Bonner v. SYG Assocs., Inc.*, 498 F. Supp. 3d 859, 875 (E.D. Va. 2020). Reformation is an extremely limited remedy and here, Plaintiff has made no actual claim for reformation in this lawsuit. Furthermore, the law he cited in his response to Novant Health's Motion for Summary Judgment is inapposite. He claimed that *Aiken v. Policy Mgmt. Sys. Corp.* entitles a participant to "sue for reformation of the undisclosed current plan to the more generous benefit previously offered." *Id*. A close reading of *Aiken* refutes this contention. *Aiken* does not discuss reformation. And it did not involve two versions of one plan, one effective and one superseded, as the present case does. Rather, the narrow issue was that the summary plan description differed from the plan document. 13 F.3d 138, 139 (4th Cir. 1993).

Plaintiff also argued that a failure to disclose modifications can justify reformation to the prior benefit, citing *Rodriguez v. MEBA Pension Trust*. (Doc. 52, p. 21). That case is readily distinguishable, as it involved a situation where the participant did not receive fair notice of his option to receive or suspend his pension checks, which impacted further accruals. 872 F.2d 69, 71 (4th Cir. 1989). The Fourth Circuit remanded the case to the district court with instructions to afford the plaintiff the choice of accepting his present pension benefits or the benefits that would have accrued had he exercised the option. *Id.* at 74. The Court did not order reformation of the plan document.

The holding in *Rodriguez* in no way entitles Plaintiff to benefits under the 2013 Policy. To the extent that Plaintiff claims he did not receive notice of the 2015 Policy, such notice would not have included an option that would impact his benefits as was the case in *Rodriguez*. Plaintiff did not have an option to participate in the 2013 Policy instead of the 2015 Policy. Under the language

13

of the 2013 Policy, Novant Health was entitled to issue a new severance policy in 2015, and it did so for all participants. The 2013 Policy states that "[t]he Corporation reserves the right to amend, modify, or terminate this Policy at any time for any reason." (*See* Exhibit A). Nor can Plaintiff argue that he relied on the 2013 Policy and would have somehow acted differently had he received notice of the 2015 Policy. He testified that he had no knowledge of the 2013 Policy and never saw it throughout his employment with Novant Health:

> Q. Okay. During your tenure with Novant, did you ever go look at the severance documents to the best of your recollection?
>
> A. No.
>
> Q. Let me ask it a different way just to be clear. Prior to your termination from Novant, have you ever seen these severance documents related to you?
>
> A. No.

(Duvall Dep.[4] 67:16-23). An ERISA claimant cannot be deemed to have "relied" upon a plan document that he has never seen. *See Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1479 (4th Cir. 1996). Moreover, Plaintiff even admitted at trial that had he known about the 2015 Policy, he would not have done anything differently:

> Q. And you were committed to your job in 2015?
>
> A. Fully.
>
> Q. If it had been communicated to you that there was a change in the severance plan in 2015, would you have quit that job?
>
> A. Doubtful.
>
> Q. You might have?
>
> A. Most likely would not have quit, no.

---

[4] "Duvall Dep." refers to the transcript of Plaintiff's deposition, cited portions of which were admitted at trial.

14

(Doc. 117, 85:24-86:6). Plaintiff's own testimony makes it abundantly clear that he did not rely on the 2015 Policy in any shape or form. Therefore, the Court should reject Plaintiff's unsupported attempts to apply the 2013 Policy and deny all severance-related relief sought under ERISA.

**B. Novant Health is entitled to judgment on the severance-related claims under North Carolina's Wage and Hour Act as the parties agreed that ERISA applies to the severance plan and all state law claim are thus preempted.**

Plaintiff alternatively pleaded a wrongful discharge claim under North Carolina's Wage and Hour Act, "[t]o the extent that his termination is not preempted by his claim under 28 U.S.C. § 1140." (Doc. Entry 1 ¶ 57). The factual underpinning is largely the same as that of the ERISA claim and alleges that Novant Health terminated him prior to his fifth-year work anniversary solely to avoid the purported obligation to pay severance as provided under the 2013 Policy. (*Compare* Doc. 1, ¶ 45 and ¶ 61). ERISA preempts this state law claim 29 U.S.C. § 1144 (ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.").

The parties stipulated before trial that the severance-related wrongful discharge is preempted by ERISA. (Doc., 69 ¶ II.2). Plaintiff has reiterated this in his trial brief. (Doc. 79, p. 2) ("…Plaintiff agrees with Defendant that ERISA preempts his corollary state law claim of severance-related wrongful discharge."). Accordingly, Novant Health is entitled to judgment on the severance-related claim brought under state law.

## IV. CONCLUSION

Because Plaintiff has not shown that Novant Health terminated him with the specific intent to deprive him of severance benefits that were otherwise due to him, he has failed to establish a right to recovery on his severance-related claim under ERISA. Accordingly, the Court should enter judgment in favor of Novant Health on Plaintiff's severance-related claims.

Dated this 1st day of February, 2022.

                    s/ Benjamin R. Holland
Benjamin R. Holland
N.C. Bar No. 28580
ben.holland@ogletree.com
Margaret Santen
N.C. Bar No. 52947
maggie.santen@ogletree.com
Elizabeth R. Gift
N.C. Bar No. 44331
elizabeth.gift@ogletree.com
S. Abigail Littrell
N.C. Bar No. 49354
abby.littrell@ogletree.com

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, North Carolina 28244
Telephone: 704.342.2588
Facsimile: 704.342.4379

        *and*

Charles E. Johnson
N.C. Bar No. 9890
cejohnson@robinsonbradshaw.com
Stephen M. Cox
N.C. Bar No. 23057
scox@robinsonbradshaw.com
Angelique R. Vincent-Hamacher
N.C. Bar No. 29547
avincent@robinsonbradshaw.com

ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone: 704.377.2536
Facsimile: 704.373.3996

***Attorneys for Defendant Novant Health, Inc.***

# CERTIFICATE OF SERVICE

I, Benjamin R. Holland, hereby certify that I have this day electronically filed the foregoing **DEFENDANT NOVANT HEALTH, INC.'S POST-TRIAL BRIEF ON SEVERANCE-RELATED CLAIMS** with the Clerk of Court using the CM/ECF system, which will send notification of the filing to the following person:

S. Luke Largess
*Attorney for Plaintiff*
Tin, Fulton, Walker & Owen, PLLC
301 East Park Avenue
Charlotte, NC 28203
Telephone: 704.338.1220
Facsimile: 704.338.1312
Email: llargess@tinfulton.com

Dated this 1st day of February, 2022.

    s/ Benjamin R. Holland
    Benjamin R. Holland, N.C. Bar No. 28580
    *Attorney for Defendant*
    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
    201 South College Street, Suite 2300
    Charlotte, NC 28244
    Telephone: 704-342-2588
    Facsimile: 704-342-4379
    Email: ben.holland@ogletree.com