IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| DAVID DUVALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 3:19-cv-00624-DSC |
| ) | |
| NOVANT HEALTH, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ENTRY OF JUDGMENT IN HIS FAVOR ON HIS ERISA CLAIM

Plaintiff respectfully submits this memorandum in support of his Motion for Judgment on his Second Claim for Relief.

Plaintiff's second claim is filed under Section 510 of ERISA, which provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]

29 U.S.C. § 1140. The Fourth Circuit has interpreted the language regarding the "attainment of any right ... to which such participant *may* become entitled" to provide an employee a cause of action when the employee is discharged either to prevent vesting in a qualified pension plan or to prevent accrual of additional benefits. *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 236, 237–38 (4th Cir.1991).

Section 510 of ERISA "prevents unscrupulous employers from discharging" employees to stop them from obtaining additional, not yet vested, benefits. *Id.* at 237.

Plaintiff alleges that he was fired on July 30, 2018, days shy of his fifth work anniversary, to prevent him from making a claim to the fifth-year severance enhancement offered to him at the time of hire. There is no dispute that Novant Health had such a severance policy at the time it employed Duvall in 2013. Pl. Tr. Ex. 26. And Plaintiff testified to the note he made on his offer letter when that severance enhancement was explained to him by human resources. Pl. Ex. 25. Novant Health changed the policy in 2015, Jt. Tr Ex. 13 but Defendant has not contested that it failed to provide Duvall any notice of that change.

As in a Title VII discrimination claim, a Plaintiff must show specific intent of the unlawful motive under § 510 to terminate him on July 30 to deprive him of the enhanced severance on his fifth anniversary. *Conkwright,* 933 F.3d at 238-39. And, as in a Title VII claim, there are two ways a plaintiff may prove that claim at trial. First, the employee can present direct evidence of the employer's intent to interfere, such as an admission by the employer that it fired the employee to prevent the vesting of a benefit. *Id.* at 239. Defendant had harped on the absence of any direct evidence. The Fourth Circuit recognizes, however, that "employers rarely, if ever, memorialize their specific intent to act unlawfully." *Id.* Accordingly, employees may also utilize the burden-shifting approach articulated by the Supreme Court in the Title VII context in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). 933 F.3d. at 239.

Under a *McDonnell Douglas* approach, once the plaintiff establishes a *prima facie* case – here, that he was meeting performance expectations, was terminated, and under circumstances that prevented him from claiming the fifth-year enhancement, a presumption of illegal interference arises, and the burden of production, but not persuasion, shifts to the Novant Health to produce evidence of a legitimate reason for the challenged conduct. The steps are well-known. If a plaintiff "puts forth sufficient evidence to establish a prima facie case of retaliation" and a defendant "offers a non-discriminatory explanation" for his termination, the plaintiff "bears the burden of establishing that the employer's proffered explanation is pretext." *Yashenko v. Harrah's Casino*, 446 F.3d 541, 551 (4th Cir.2006).

The § 510 claim is a matter for the Court under § 502 and not for the jury. But the resolution of the ERISA claim is highly unusual substantively and procedurally as a result of the jury verdict, which rejected in clear terms the justifications proffered by Novant Health for terminating Plaintiff. The jury both found that Novant Health fired Duvall because of his race and sex, and rejected Novant Health's affirmative defense that it would have made the same decision in the absence of those unlawful motives. That means that it found Novant Health's stated reasons for dismissing Plaintiff lacked credibility, particularly in light of the punitive damages award.

The verdict raises the question as to whether this Court, absent setting aside the verdict, is bound by that jury's strong rejection of the proffered reasons for termination, and accepting those findings, must enter judgment for Plaintiff on his §

3

510 claim as well. Again, Plaintiff met his burden under *McDonnell-Douglas* to persuade the jury that Novant Health's reasons for termination were false. That is the § 510 proof scheme under *Conkwright*. This Court should accept the jury's findings as to Novant Health's justifications for the termination or it will create two completely inconsistent verdicts.

Even if not bound factually by the verdict, the jury had ample reason not to accept Novant Health's stated justifications for the termination, and so does this Court.

**1.     The April 2016 Speaking Incident**. Defendant claimed that it fired Plaintiff because, 30 months prior, he "froze" on the podium and had to step down at the start of a speech to a gathering of the various boards of the Novant affiliated hospitals. Pl. Ex. 107, p. 4. Plaintiff testified that he felt sick that morning and got dizzy and had to sit down, but then returned to the podium to finish the speech. At trial, Mr. Armato called it a "black eye" on Novant, but admitted he never asked if Plaintiff was ill or why he had to step down. And, no one mentioned this incident to Plaintiff as a performance concern at any time. He continued to give speeches over the next 30 months, including one at a national conference that a listener called "quite possibly the best marketing presentation I've ever attended". Pl. Ex. 29, p. 2.

The jury rejected this justification. But apart from the jury verdict, this Court should also reject the wholly undocumented concern about his April 2016 incident as any explanation for the termination of Plaintiff in July 2018, days before his fifth

4

anniversary. The passage of so much time without any mention of the event as a concern makes this stated justification wholly incredible; and it provides no explanation at all for the *timing* of the termination.

**2. Failure to Engage.** Defendant stated in written discovery and at trial that Plaintiff was terminated for not "developing partnerships with other leaders," Pl. Ex. 107, p. *,* and that his supervisor, Jesse Cureton, had to encourage Duvall "to 'provide strategic leadership and stay engaged' in his last leader performance check-in." *Id.,* at p. 5.

As for developing partnerships, however, Cureton had written in Duvall's 2016 performance review that it was the single thing he did best, something that others could learn from. Pl. Ex. 31, p. 1, In Section 3, called "Do Well" and described as identifying what the employee did well and "from which others could learn," Cureton wrote: "Always meets with stakeholder for feedback and collaboration." That is, developing partnerships was the thing *he did best*.

And, as for having to be encouraged "to provide strategic leadership and stay engaged," Novant had redacted, in a verified discovery response, the words "Continue to" that preceded the quoted language in the actual leader performance check in. Pl. Ex. 55, p. 3. That response was dissembling.

Given this evidence, the jury rejected the "engagement" justification for the termination. This Court should as well.

3. **Not Attending the May 2018 Board Meeting.** Though not listed explicitly in the discovery responses, Cureton testified dramatically about his concern that Plaintiff did not attend the May 2018 Board meeting. But Plaintiff and his marketing team had been selected by a national symposium to be studied as an exemplar health marketing program. Pl. Ex. 52. Duvall's participation in that group was an AIP goal for 2018. Pl. Ex. 56 (last entry, Health Management Academy). The HMA scheduled a national meeting the same day as the quarterly meeting of the Novant Board where Marketing & Communications would present its plans for the year. Plaintiff wrote an email to Cureton a month before the meeting about that scheduling conflict, identified who would present for his team at the Board meeting and noted that the power point presentation for the meeting was almost complete. He explained that he and his Vice President for Marketing, Tammy Jones, would attend the symposium. Pl. Ex. 67. Cureton asked that one of them attend the Board meeting instead. *Id.* Plaintiff testified that Ms. Jones attended the Board meeting and he attended the symposium. There is no record of any communications from Cureton challenging how the scheduling conflict was handled.

The jury rejected this justification for the termination. This Court should as well.

4. **Patient Experience Task Force.** Finally, Defendant claimed at trial that Plaintiff was fired for failing to attend a meeting of a newly formed Patient Experience Task Force. Plaintiff showed that he already had planned a trip to a

family reunion in Texas, taking off Friday, June 22 and Monday, June 25 to travel there and back. Pl. Ex. 69. The Patient Experience Task Force met on June 25 and Plaintiff had asked his Vice President for Communications, Kati Everett, to attend the meeting. The trial record is devoid of any documented concern over Plaintiff missing this June 25 meeting because of a planned vacation. Nor is there any documentation of any of the claimed urgency surrounding this task force or Duvall's participation on June 25. In fact, the calendar shows that there was another meeting of the Task Force on July 16, *id.*, and all records indicate that Plaintiff attended -- it was on his calendar to attend and he had no scheduling conflicts.

The jury rejected this evidence as justification for the termination, so should the Court.

### 5. The Anniversary is the Only Reason in the Record for the Timing of the Termination.

In sum, Defendant provided no credible evidence at the trial explaining the timing of the termination. The jury rejected all of the purported justifications. This Court should accept those findings of the jury. But if it does not, it should make the same findings based on the evidence above regarding the claimed reasons for the decision and its timing days before the fifth anniversary.

Proving "specific intent" in violating § 510 does not require Plaintiff to show direct evidence that the abrupt termination took place before the fifth anniversary to keep Plaintiff from claiming the enhanced severance that Novant had promised when

7
Case 3:19-cv-00624-DSC   Document 133   Filed 02/01/22   Page 7 of 9

he was hired. Again, "employers rarely, if ever, memorialize their specific intent to act unlawfully." *Conkwright,* 933 F.3d at 239. Instead, Plaintiff can prove that intent circumstantially by showing the stated justifications for the termination were pretext.

And they were. As counsel urged the Court and the jury during the trial, these justifications were "nonsense." Absent some credible explanation for the termination and for its timing, there is no reason offered at trial for the timing of the dismissal other than the undisputed fact of the fifth year anniversary that next week.

The Court should enter judgment for Plaintiff on his § 510 discharge claim. The remedies under § 502 for that violation overlap with the equitable relief sought for the Title VII verdict, which are incorporated here by reference.

## CONCLUSION

Plaintiff respectfully asks that the Court enter judgment for him on his Second Claim for Relief, under 29 U.S.C. § 1140, and award the same relief sought on the Title VII claim.

Respectfully submitted, this 1st day of February, 2022.

**/s/ S. Luke Largess**
NC Bar No. 17486
*Attorney for Plaintiff*
Tin, Fulton, Walker & Owen, PLLC
301 East Park Avenue
Charlotte, NC 28203
Telephone: 704.338.1220
Email:llargess@tinfulton.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document contains fewer than 6,000 word.

This is the 1st day of February, 2022.

/s/S. Luke Largess
N.C. Bar No. 17486
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record:

This is the 1st day of February, 2022.

/s/S. Luke Largess
N.C. Bar No. 17486
*Attorney for Plaintiff*
