CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER

**NOVANT HEALTH**

| POLICY TITLE | Executive and Leader Severance Pay |
|---|---|
| JCAHO FUNCTIONS | HR                                May 18, 2015 |
| APPLIES TO | Novant Health, Inc. |

I. **SCOPE / PURPOSE**

This policy applies to executives and leaders ("Employees") of Novant Health, Inc. (the "Corporation") who are in Tiers I, II, III, or IV of the Corporation's Executive and Leadership Compensation Program ("Compensation Program"), who have been continuously employed full-time by the Corporation for at least six (6) months, and whose employment is terminated for the reasons described below, and subject to all of the exclusions and requirements of this policy. Its purpose is to provide transition assistance in the form of post-employment compensation and benefits to Eligible Employees to assist them while they confront the many issues associated with a change in employment.

This Policy shall not apply to Employees who are employed by MedQuest Associates, Inc.

II. **POLICY**

**Eligibility Criteria**

1. Employees in Tiers I, II, III, or IV of the Compensation Program who do not have an individual severance agreement with the Corporation, and who have been continuously employed full-time by the Corporation for at least six (6) months, are eligible for the Severance provided by this Policy upon the occurrence of one or more of the following events, unless such occurrence is part of a uniform or broad-based compensation and/or Tier participation reduction approach under which all similarly situated Employees are treated in a similar manner. In such instances where it is a uniform or broad-based reduction approach an Employee is not eligible for Severance under this Policy. For purposes of the Policy, a "material" reduction in Base Salary means a 15% or greater reduction.

   a. The Corporation eliminates the position held by the Employee and the Corporation does <u>not</u> offer any other employment to the Employee (i) in a comparable Tier AND (ii) at a Base Salary that is not materially less than the Base Salary being paid to the Employee at the time the position is eliminated;

   b. The Corporation (i) materially reduces the Employee's Base Salary, and/or the Corporation downgrades the Employee's position to a lower Tier in the Compensation Program, and/or the Corporation removes the Employee's position from the Compensation Program; AND (ii) the Employee resigns within thirty (30) days after the effective date of such reduction or change;

   c. The Corporation sells, merges or otherwise disposes of the Employee's business unit and terminates the Employee's employment as a result thereof;

   d. The Corporation conditions an Employee's continued employment upon (i) a transfer within the Corporation or on accepting a different position, AND (ii) at a Base Salary that is materially less than the Base Salary being paid to the Employee at the time such condition is communicated to the Employee, or in a lower Tier (or no Tier), AND (iii) the Employee resigns within 30 days after the effective date of such condition change; or

   e. The Employee's skills no longer meet the requirements of the Corporation, as determined by the Corporation, and the Employee's employment is terminated by the Corporation.

2. Additionally, to be eligible for Severance, within sixty (60) days after employment termination,

(i) the Employee must sign a Separation Agreement, satisfactory to the Corporation, containing a comprehensive release, appropriate covenants against competition and disclosure of proprietary/confidential information, appropriate covenants agreeing to post-termination cooperation as needed, appropriate covenants prohibiting the making of disparaging remarks against the Corporation (ii) other terms acceptable to the Corporation, and any revocation provisions required by applicable law with respect to the Separation Agreement must have expired and not have been exercised by the Employee.

3. Notwithstanding anything in this Policy to the contrary, an Employee is not eligible for Severance if the Employee's employment terminates for any of the following reasons:

    a. Voluntary Resignation, except pursuant to 1(b) or 1(d) above
    b. Retirement
    c. Temporary layoff or suspension
    d. The Employee no longer meets the qualifications for the position
    e. Discharge for violating a Corporation policy or for unsatisfactory job performance
    f. Refusal to accept a reasonable request to transfer or accept a different position within the Corporation. Reasonable requests for transfer include lateral transfers and demotions where the Employee's Base Salary is not materially less than the Employee's Base Salary prior to the effective date of transfer and the new position is in a comparable Tier.
    g. As a result of sale, merger or other disposition of any business unit, division or subsidiary if an arrangement has been made for the Employee's continued employment in a comparable position and salary not materially less than the position held by, and Base Salary being paid to, the Employee, immediately prior to such sale, merger or other disposition.

4. This policy shall not apply to any Employee with respect to which the Corporation has made an agreement in writing concerning the payment of Severance (a "Severance Agreement"). In such a case, an Employee's right to Severance and the amount thereof shall be governed exclusively by the Severance Agreement.

**Severance Pay and Benefits**

1. It is the policy of the Corporation to pay an Eligible Employee the Severance described below, but only if all of the eligibility and other criteria and requirements contained in this policy are satisfied and no exclusions are applicable. Any Severance required to be provided under the policy to Eligible Employee will be based on classification and length of service, as follows:

    a. *Tier IV Executives* – 6 months Base Salary plus one week of Base Salary for each Year of Service, up to an aggregate maximum of 9 months of Base Salary to be paid in equal installments during such applicable period in accordance with the Corporation's customary payroll practices, and, if the Last Date of Employment is on or after April 1 of the applicable calendar year, a single sum amount equal to a prorated annual incentive award based on the number of full months the Employee worked in the year of termination and the Employee's progress towards achievement of the individual goals under the annual incentive plan, as determined by Novant Health in its sole discretion, provided that such prorated amount shall not exceed a dollar amount equal to the maximum annual incentive award the Employee could have achieved in the year of termination had the Employee not terminated, multiplied by a fraction, the numerator of which is the number of days elapsed from the beginning of the applicable year until the date of employment termination, and the denominator of which is three hundred sixty-five (365).

    b. *Tier III Executives* – 9 months Base Salary to be paid in equal installments during such applicable period in accordance with the Corporation's customary payroll practices, and, if the Last Date of Employment is on or

after April 1 of the applicable calendar year, a single sum amount equal to a prorated annual incentive award based on the number of full months the Employee worked in the year of termination and the Employee's progress towards achievement of the individual goals under the annual incentive plan, as determined by Novant Health in its sole discretion, provided that such prorated amount shall not exceed a dollar amount equal to the maximum annual incentive award the Employee could have achieved in the year of termination had the Employee not terminated, multiplied by a fraction, the numerator of which is the number of days elapsed from the beginning of the applicable year until the date of employment termination, and the denominator of which is three hundred sixty-five (365).

c. *Tier II Executives*– 12 months Base Salary to be paid in equal installments during such applicable period in accordance with the Corporation's customary payroll practices, and, if the Last Date of Employment is on or after April 1 of the applicable calendar year,, a single sum amount equal to a prorated annual incentive award based on the number of full months the Employee worked in the year of termination and the Employee's progress towards achievement of the individual goals under the annual incentive plan, as determined by Novant Health in its sole discretion, provided that such prorated amount shall not exceed a dollar amount equal to the maximum annual incentive award the Employee could have achieved in the year of termination had the Employee not terminated, multiplied by a fraction, the numerator of which is the number of days elapsed from the beginning of the applicable year until the date of employment termination, and the denominator of which is three hundred sixty-five (365).

d. *Tier I Executives* – 12 months Base Salary to be paid in equal installments during such applicable period in accordance with the Corporation's customary payroll practices, and, if the Last Date of Employment is on or after April 1 of the applicable calendar year, a single sum amount equal a prorated annual incentive award based on the number of full months the Employee worked in the year of termination and the Employee's progress towards achievement of the individual goals under the annual incentive plan, as determined by Novant Health in its sole discretion, provided that such prorated amount shall not exceed a dollar amount equal to the maximum annual incentive award the Employee could have achieved in the year of termination had the Employee not terminated, multiplied by a fraction, the numerator of which is the number of days elapsed from the beginning of the applicable year until the date of employment termination, and the denominator of which is three hundred sixty-five (365). Additionally, Tier I Employees are entitled to an additional 6 months of the benefits described in this subsection in the event of a Change in Control, but only under the circumstances expressly permitting such additional benefits, as set forth in the Change in Control definition section below.

e. *CEO* – 24 months Base Salary to be paid in equal installments during such applicable period in accordance with the Corporation's customary payroll practices and, if the Last Date of Employment is on or after April 1 of the applicable calendar year,, a single sum amount equal to a prorated annual incentive award based on the number of full months the Employee worked in the year of termination and the Employee's progress towards achievement of the individual goals under the annual incentive plan, as determined by Novant Health in its sole discretion, provided that such prorated amount shall not exceed a dollar amount equal to the maximum annual incentive award the Employee could have achieved in the year of termination had the Employee not terminated, multiplied by a fraction, the numerator of which is the number of days elapsed from the beginning of the applicable year until the date of

05/18/2015
POLICY:

Executive Severance Pay

Page 3 of 11

Case 3:19-cv-00624-DSC   Document 133-3   Filed 02/01/22   Page 3 of 11

NOVANT-000035

employment termination, and the denominator of which is three hundred sixty-five (365). Additionally, the CEO is entitled to an additional 12 months of the benefits described under this subsection in the event of a Change In Control, but only under the circumstances expressly permitting such additional benefits, as set forth in the Change in Control definition section below.

2. Generally, an Employee's Last Date of Employment will be the date they are notified that their job has been affected. The Severance payments will begin after the Employee timely returns the signed Separation Agreement (in accordance with the requirements of this policy), which was provided to the Employee upon notification, and the required time period for revocation has passed and revocation rights have not been exercised, and will be retroactive so that the Severance Period is immediately following the Last Date of Employment. Employees who are out on approved leave, under an applicable Novant Health policy, at the time of termination may receive a lump-sum payment of severance pay. Provided, however, that if the sixty (60) day period (following the Employee's termination of employment during which the Employee must sign and return the Separation Agreement, and during which the Separation Agreement's revocation provisions, if any, must have expired and during which the employee must not have exercised such revocation rights) begins in one tax year and ends in the next, then no payment required under this policy shall commence until the beginning of such second tax year (the "Anti-Straddle Requirement").

3. All Employees shall receive their vested Unpaid Incentive Plan Award, paid in a one-time single sum within a reasonable time after the Last Date of Employment.

4. Severance begins the day following the Last Date of Employment, subject to the Separation Agreement-related and other requirements of this policy. Except as otherwise expressly provided in this policy, the Employee normally will be paid in installments on a regular pay period basis until the expiration of the Severance Period.

5. Severance is based on an Employee's Base Salary as of the Last Date of Employment.

6. If an Employee has accrued but unused paid time off ("PTO"), PTO will be paid out as a lump sum. PTO is calculated in accordance with the Paid Time Off Policy and is calculated as of the Last Date of Employment. Sick time is *not* payable upon termination.

7. Except for certain employees out on approved non-benefitted leave at the time of termination, group medical and dental benefits will continue for as long as the Employee receives Severance, subject to applicable plan limitations and exclusions. If applicable and available, and not excluded, under the applicable plan documents or prohibited by applicable law, then the Employee's above-mentioned benefit coverage will be maintained at the same level that had been previously elected under the applicable benefit plans. The Employee shall continue to share in and timely pay the cost of coverage using the Corporation's Novant Health dollar contributions and their own contributions. If the Executive is determined to be a "highly compensated employee" under Internal Revenue Code Section 105(h), then the Executive shall be imputed gross income on the value of the Novant Health dollar contributions and taxed accordingly in respect of any medical and dental benefits and services provided during the Severance Period. In the event it becomes necessary to alter the manner in which benefits are provided to an Employee because of the requirements of the Corporation's medical or dental plans or because of legal requirements applicable to such plans, Novant will use commercially reasonable efforts to continue to provide the Employee with the above-mentioned benefits comparable to those the Employee receives (or is to receive) as of the Last Date of Employment. Upon termination of Severance, coverage will end subject to normal grace periods, COBRA provisions and/or conversion rights as defined by each plan. It is the Employee's responsibility to contact the Human Resources Department to arrange for benefit continuation. Please refer to the chart following this policy for a summary of benefit

05/18/2015
POLICY:

Executive Severance Pay

Page 4 of 11

Case 3:19-cv-00624-DSC   Document 133-3   Filed 02/01/22   Page 4 of 11

NOVANT-000036

continuation provisions.

8. Any and all payments under this policy shall be subject to applicable employment-related, tax and other withholding as may be required by applicable law.

**Outplacement Assistance**

Eligible Employees may be offered the opportunity to participate in professional outplacement services that will encompass career assessment, career counseling, job search, etc. The Corporation, in its discretion, will determine what level assistance will be provided as well as the service provider. In no event will an Employee be provided with cash in lieu of the outplacement assistance.

**Change in Control**

For purposes of this Policy, a "Change in Control" of Novant Health shall be deemed to have occurred as of the first day that any of the following conditions shall have been satisfied:

- An organization becomes the owner, either in a single transaction or in a series of related transactions within twenty-four consecutive months, directly or indirectly, of at least fifty percent (50%) of Novant Health's operating assets, provided that the organization was not an Affiliate immediately prior to the commencement of such transaction or series of related transactions;

- The Board approves and there is consummated (i) a plan of complete or substantial liquidation of Novant Health; or (ii) a merger, consolidation, or reorganization, as defined under North Carolina state law, of Novant Health with or into an organization that is not an Affiliate immediately prior to the commencement of such transaction, in each such case, excluding, however, any such transaction in connection with which a majority (greater than 50%) of the governing board of the surviving entity will consist of persons who were serving on the Board of Trustees of Novant Health immediately prior to such transaction;

- The Board approves the election or appointment of individuals to the Board from the organization which will then own substantially all of the assets of, or which will have merged or consolidated with Novant Health (other than the election or appointment of individuals arising out of the normal retention and vacancy practices of the Board), whose membership on the Board would result in the voting membership immediately prior to such election or appointment to cease constituting at least fifty percent (50%) of the voting membership of the Board;

- Acquisition, for monetary consideration or otherwise, by any organization that was not an Affiliate immediately prior to such acquisition, of the right to appoint and remove, or to approve the appointment or removal, a majority (greater than 50%) of the Novant Health Board members; or

- The transfer to any organization that was not an Affiliate immediately prior to such transfer, for monetary consideration or otherwise, of the actual or effective control of (including, but not limited to, the sole right to operate, use, lease, and/or market), Novant Health's operating assets which generate more than fifty percent (50%) of Novant's annual net operating revenues.

However, in no event shall a Change in Control be deemed to have occurred, with respect to the Employee and for purposes of this Policy if the Employee is an officer, key employee or equity participant in the organization involved in the Change in Control (or an affiliate of such organization), as determined prior to the Change in Control by a majority of the Board.

If the Employee's employment is terminated involuntarily without Cause, or the Employee voluntarily terminates employment for Good Reason, in either event within twenty-four (24) months following a Change in Control, then the Severance Period for purposes of the payment of

Severance Benefits otherwise payable under this Policy shall be extended as set forth in Section 1 for Tier I Employees and the CEO. Notwithstanding anything in this Policy to the contrary, the payment of Severance Benefits shall be made in a single-sum payment after all of the Separation Agreement-related requirements of this Policy have been met.

Severance payable under this Policy are assumed, but not assured or guaranteed, to satisfy the requirements for an excess parachute payment exemption under Code Sections 280G(b)(5) and 4999, as such exemption is provided in Treasury Regulations under Code Section 280G. If Severance payable under this Policy is deemed not to be exempt from the requirements of Code Section 280G and shall constitute an "excess parachute payment," within the meaning of Section 280G of the Code, then the payments to be made to the Employee under this Policy shall be reduced such that the value of the aggregate total payments that the Employee is entitled to receive shall be one dollar ($1) less than the maximum amount which the Employee may receive without becoming subject to the tax imposed by Code Section 4999. However, such reduction in payments hereunder shall apply if, and only if, the resulting Severance Benefits with such reduction is greater in value to the Employee than the value of the Severance Benefits without a reduction, net of any tax imposed on the Employee pursuant to Code Section 4999. For purposes of this Policy, the terms "excess parachute payment" and "parachute payments" shall have the meanings assigned to such terms in Section 280G of the Code, and such "parachute payments" shall be valued as provided in this Policy.

Within fifteen (15) calendar days following notice by Novant Health to the Employee of its belief that there is a payment or benefit due the Employee which will result in an "excess parachute payment" as defined in Code Section 280G, the Employee and Novant Health, at Novant Health's expense and discretion, shall obtain the opinion of Novant Health's outside legal counsel, accounting firm, and/or compensation and benefits consulting firm, which sets forth: (a) the amount of the Employee's "annualized includable compensation for the base period" (as defined in Code Section 280G(d)(1)); (b) the present value of the total payments; and (c) the amount and present value of any "excess parachute payment."

In the event that such opinion determines that it is reasonably likely that there would be an "excess parachute payment," such that a reduction in Severance would result in a greater net benefit to the Employee (as provided above), then Severance hereunder or any other payment determined by such counsel to be includable in Total Payments shall be reduced or eliminated as specified by the Employee in writing delivered to Novant Health within ten (10) calendar days of his or her receipt of such opinion, or, if the Employee fails to so notify Novant Health, then as Novant Health shall reasonably determine, so that under the basis of calculations set forth in such opinion, there will be no "excess parachute payment."

The provisions of this Section including the calculations, notices, and opinion provided for herein, shall be based upon the conclusive presumption that the following amounts are reasonable: (a) Severance provided for under this Policy; and (b) any other compensation earned prior to the Last Date of Employment by the Employee pursuant to Novant Health's compensation programs (if such payments would have been made in the future in any event, even though the timing of such payment is triggered by the Change in Control).

**Limitations under Internal Revenue Code Section 4958 and Internal Revenue Code Section 409A**

Notwithstanding anything in this policy to the contrary:

The Corporation reserves the right to reduce any Severance payable and/or modify the terms of the payments to an Eligible Employee if the Chief Administrative Officer, based on advice from independent legal counsel and compensation advisers, reasonably determines that the Severance to be paid may cause a violation of the Intermediate Sanctions provisions of Internal Revenue Code of 1986, as amended ("Code"), Section 4958, or the Severance to be paid would not be in compliance with Code Section 409A. Further, in the event that Code Sections 409A and/or 457(f) or other applicable provisions of law require that any amounts payable as

Severance to be subject to federal, state or local income taxation prior to the date such amounts are actually paid, the Corporation shall remit all necessary federal, state and local income tax withholding and shall reduce the amounts otherwise payable under this Policy by the amount of such withholding.

The intent of this Policy is that payments and benefits under this Policy comply with Code Section 409A such that taxation thereunder will not arise and, accordingly, to the maximum extent permitted, this Policy shall be interpreted to be in compliance therewith. In no event whatsoever shall the Corporation or any of its Affiliates be liable for any additional tax, interest or penalty that may be imposed on the Employee by Code Section 409A or 457(f), or damages for failing to comply with either such Code section.

A termination of employment shall be deemed not to have occurred for purposes of any provision of this policy providing for the payment of any amount or benefit upon or following a termination of employment unless such termination constitutes a "separation from service" within the meaning of Code Section 409A and, for purposes of any such provision of this Policy, references to a "termination," "termination of employment" or like terms shall mean such "separation from service."

If Employee is deemed on the date of termination to be a "specified employee" within the meaning of that term under Code Section 409A(a)(2)(B), then each of the following "(i)" and "(ii)" shall apply:

(i) With regard to any payment that is considered deferred compensation under Code Section 409A payable on account of a "separation from service," such payment shall be made on the date which is the earlier of (A) the expiration of the six (6)-month period measured from the date of such "separation from service" of Employee, and (B) the date of Employee's death (the "Delay Period") to the extent required under Code Section 409A. Upon the expiration of the Delay Period, all payments delayed pursuant to this Section (whether they would have otherwise been payable in a single sum or in installments in the absence of such delay) shall be paid to Employee in a lump sum, and all remaining payments due under this policy shall be paid or provided in accordance with the normal payment dates specified for them herein; and

(ii) To the extent that any benefits to be provided during the Delay Period are considered deferred compensation under Code Section 409A provided on account of a "separation from service," and such benefits are not otherwise exempt from Code Section 409A, Employee shall pay the cost of such benefits during the Delay Period, and the Corporation shall reimburse Employee, to the extent that such costs would otherwise have been paid by the Corporation or to the extent that such benefits would otherwise have been provided by the Corporation at no cost to Employee, the Corporation's share of the cost of such benefits upon expiration of the Delay Period, and any remaining benefits shall be reimbursed or provided by the Corporation in accordance with the procedures specified herein.

The Employee shall be required to perform "substantial services" within the meaning of Code Sections 409A(d) and 457(f) for the Corporation through the date upon which any amount becomes required to be paid and any benefit is required to be provided under this policy, except for the Delay Period, the sixty (60) day period-requirements applicable to execution of the Separation Agreement and expiration and lapse of any revocation period required under applicable law with respect to the Separation Agreement and non-revocation of the Separation Agreement, as well as any required waiting period pursuant to the Anti-Straddle Requirement.

Neither the Corporation nor the Employee or any other person or entity, acting alone or jointly, may exercise any discretion, through an amendment of this policy or otherwise, with respect to any payment or benefit to be provided under this policy which is not exempt from the requirements of Code Section 409A, regarding acceleration or other action or omission in respect of any such non-exempt payment or provision of benefits, in a manner which would give rise to

taxation under Code Section 409A.

Any right to reimbursement or in-kind benefits is not subject to liquidation or exchange for another benefit, and no such reimbursement, expense eligible for reimbursement, or in-kind benefits provided in any taxable year shall in any way affect the expenses eligible for reimbursement, or in-kind benefits to be provided, in any other taxable year.

For purposes of Code Section 409A, the Employee's right to receive any installment of periodic payment pursuant to this policy shall be treated as a right to receive a series of separate and distinct payments.

### Reinstatement

If a terminated Employee while receiving severance is reinstated, the Employee will not be required to reimburse the Corporation for any such payments received prior to reinstatement. Any remaining unpaid Severance will be forfeited upon an Employee's reinstatement. If the Employee becomes eligible for Severance again, within two (2) years from the last day of the Severance Period, the amount to which the Employee would then be entitled hereunder will be reduced by the amount paid the Employee prior to reinstatement.

### Modification and Termination

The Corporation reserves the right to amend, modify, or terminate this Policy at any time for any or no reason, without notice to any person or entity.

## III. DEFINITIONS

1. <u>Affiliate</u>: any corporation, association, joint venture, limited liability company, partnership, limited partnership, or other business entity, of which Novant Health, directly or indirectly, has more than a fifty percent (50%) ownership (in the case of a for-profit business entity) or control over the appointment and replacement of members of the governing board (in the case of a nonprofit business entity).
2. <u>Base Salary</u>: the Employee's actual annual base salary, including amounts deferred, in effect on the Last Date of Employment, exclusive of any other form of compensation.
3. <u>Cause</u>: shall be determined in the sole discretion of the Novant Health Board Compensation & Leadership Committee, and shall mean the occurrence of any one of the following:
   - Loss of any professional license required to perform the duties of the position;
   - Grossly negligent failure by the Employee to substantially perform the duties of his or her position as they are set forth in writing or as those duties have been performed at any time during the previous twelve (12) month time period;
   - The Employee's conviction of a felony;
   - Any act of dishonesty of the Employee with respect to his or her employment;
   - The Employee's use of alcohol, controlled substance or drugs to the extent that his or her job performance or his or her ability to carry out the duties and responsibilities of his or her position is impaired; or
   - The Employee's illegal use of a controlled substance or use of illegal drugs.
4. <u>Days</u>: Calendar days.
5. <u>Eligible Employee</u>: An Employee or leader in Tier I, II, III, or IV of the Compensation Program

who satisfies the criteria described in the Eligibility Criteria section in this policy, and who is not excluded from participation or benefits under any applicable provision of this policy.

6. Full-time: working at least 40 hours per week.

7. Good Reason: Without the Employee's prior express written consent: (i) a material reduction (which for purposes of this Policy is determined to be fifteen percent (15%) or more) in the Employee's total cash compensation opportunity, expressed as an aggregate dollar amount (i.e., the sum of Base Salary plus highest available payment under the Annual Incentive Plan and Long Term Incentive Plan) from the calendar year preceding the termination, unless the reduction is part of a uniform or broad-based compensation reduction approach under which all similarly situated Novant Employees are treated in a similar manner; (ii) the conditioning of the Employee's continued employment on a transfer within the organization or on accepting a different position, which in either event of this clause (ii) is at a materially lesser Base Salary (which for purposes of this Policy is determined to be fifteen percent (15%) or more) or is in a lower Tier (or no Tier) in Novant Health's Executive & Leader Compensation Program; or (iii) demotion of the Employee's position to a lower Tier (or no Tier) in Novant Health's Executive & Leader Compensation Program, including but not limited to removal of the Employee's position from the Executive & Leader Compensation Program, unless such demotion or removal is part of a uniform or broad-based position demotion/removal approach in which all similarly situated Novant Health employees are treated in a similar manner. For the Employee's Separation from Service to be considered to be for Good Reason, the Employee must provide written notice of the circumstances constituting Good Reason to the Committee within thirty (30) days following the initial existence of the circumstances giving rise to Good Reason, the Committee must fail to correct such circumstances within thirty (30) days following receiving the Employee's notice, and the Employee must thereafter specify an Effective Date of Separation that is not more than thirty (30) days following the end of the Committee's thirty (30) day correction period.

8. Last Date of Employment: the last date the Employee is an employee of Novant Health.

9. Separation Agreement: the agreement outlining the parties' respective obligations regarding the termination of the Employee's employment, including without limitation the payment of Severance.

10. Severance: the gross amount calculated under the Severance Pay and Benefits section in this Policy.

11. Severance Period: the period over which Severance is paid, the length of which is determined by the Employee's position and Years of Service, as explained under the Severance Pay and Benefits section of this Policy. The Severance Period begins the day following the Last Date of Employment.

12. Voluntary Resignation: termination of employment initiated by the Employee.

13. Tier: the level of participation in Novant Health's Compensation Program.

14. Unpaid Incentive Plan Award: the amount of incentive award earned by the Employee, under Novant Health's Annual Incentive Plan and/or Long-Term Incentive Plan, but not paid as of the Last Date of Employment. Earned but unpaid means the Employee has met the vesting requirements under the respective Plan but the award has not yet been paid as of the Last Date of Employment.

15. Years of Service: each continuous 12-month period of full-time employment calculated from hire date to anniversary of hire date, beginning with the Employee's most recent hire date. There is no pro-ration or rounding up of service. Severance is based on the number of full years of service an Employee has as of the Last Date of Employment.

IV. **RELATED DOCUMENTS**

Paid Time Off

V. **REFERENCES**

Not applicable

VI. **SUBMITTED BY**

Jacque Daniels, Executive Vice President/Chief Administrative Officer

VII. **KEY WORDS**

Severance, post-employment compensation, job elimination

VIII. **INITIAL EFFECTIVE DATE**     May 18, 2015

05/18/2015
POLICY:
Executive Severance Pay
Page 10 of 11

Case 3:19-cv-00624-DSC   Document 133-3   Filed 02/01/22   Page 10 of 11
NOVANT-000042

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER

## POLICY SIGNATURE SHEET (one copy only to be maintained by author)

| | |
|---|---|
| Company / Facility(s) | Novant Health, Inc. |
| Department | Human Resources |
| Policy | Executive and Leader Severance Pay |
| Action | |

### POLICY APPROVED BY:

| Title | Approved By | Signature | Date |
|---|---|---|---|
| Employee Vice President, Chief Administrative Officer | Jacque Daniels | Jacque Daniels | 6/29/2015 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

### COMMITTEES REVIEWED AND/OR APPROVED BY:

| Committee | Chairperson/Designee | Date |
|---|---|---|
| Compensation and Leadership Committee of the Novant Board of Trustees | Larry Stone | May 18, 2015 |
| | | |

### DATES OF APPROVAL:

| | |
|---|---|
| Initial Effective Date | |
| Date Revised | May 18, 2015 |
| Date to be Reviewed | May 2018 |

05/18/2015
POLICY:
Executive Severance Pay
Page 11 of 11

Case 3:19-cv-00624-DSC   Document 133-3   Filed 02/01/22   Page 11 of 11
NOVANT 000043