CONFIDENTIAL - SEE PROTECTIVE ORDER



## SEPARATION AGREEMENT AND RELEASE OF ALL CLAIMS

This Separation Agreement and Release of All Claims ("Release") is made this 30th day of March, 2020, by and between **HENRY FORD HEALTH SYSTEM ("HFHS")** and **David G. Duvall ("Duvall")**, sometimes collectively referred to as the Parties.

HFHS and Duvall acknowledge the following: the Parties are party to an Executive Severance Agreement dated April 25, 2019 ("ESA"), which outlines the terms under which severance payment is or is not due Duvall; HFHS decided to terminate Duvall's employment "without cause," effective January 6, 2020; and the Parties have agreed to this Release in accordance with Paragraph 12 of the ESA.,

**IN CONSIDERATION OF THE FOREGOING, IT IS HEREBY MUTUALLY AGREED BETWEEN HFHS and DUVALL AS FOLLOWS:**

1. As used herein, the term "**HFHS**" means Henry Ford Health System, Henry Ford Macomb Hospital Corporation, Henry Ford Wyandotte Hospital, Henry Ford Hospital, Henry Ford Cottage Hospital, Henry Ford West Bloomfield Hospital, Henry Ford Allegiance Health, Henry Ford Medical Group, Henry Ford Community Care Services, Henry Ford Continuing Care Corporation, Health Alliance Plan Of Michigan, Alliance Health And Life Insurance Company, Kingswood Hospital, and their past, present and future parent corporations, affiliated organizations, divisions, insurers, subsidiaries, predecessors, successors and assigns, employees, physicians, staff members, officers, directors, trustees, agents, representatives, and attorneys.

2. As used herein, the term "**Duvall**" means **DAVID G. DUVALL,** as well as his heirs, attorneys, representatives, administrators, executors, successors, personal representatives, and assigns.

3. In exchange for the promises and agreements of HFHS herein, Duvall hereby relinquishes and releases HFHS (as defined in Paragraph 1) of any and all rights, claims, and causes of action he has, had, or may have against HFHS, whether known or unknown, which arise or accrue prior to or on the effective date of this Release, including, but not limited to, the following:

PLAINTIFF'S EXHIBIT 99

1

CONFIDENTIAL - SEE PROTECTIVE ORDER

(a) any claim for discrimination, harassment, interference, or retaliation, on the basis of age, sex, race, color, national origin, ancestry, religion, handicap, disability, marital status, weight, height, sexual orientation, protected activities, or any other illegal criteria arising under any local, state or federal statute, common law, or ordinance, including, but not limited to, any claims arising under the Civil Rights Act of 1866, 42 U.S.C. §1981; the Civil Rights Act of 1871, 42 U.S.C. §1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*; the Equal Pay Act, 29 U.S.C. §206(d); the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001, *et seq.*; the Americans With Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq.*; the Family Medical Leave Act ("FMLA"), 29 U.S.C. §2611; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et seq.*; the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), MCLA §37.2101, *et seq.*; the Michigan Whistleblowers' Protection Act, MCLA §15.361, *et seq.*, MSA §17.428(1); the Michigan Handicappers Civil Rights Act, MCLA §37.101, *et seq.*; the Michigan Wages and Fringe Benefits Act, MCLA §408.471, *et seq.*, MSA §17.277(1), *et seq.*, or MCLA §600.2961, MSA §27A.2961; the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*; or any other federal, state or local common law, statute, ordinance, or constitution. To the extent required by law, nothing in this Release shall be construed to prevent Duvall from filing any future charge(s) of discrimination with the EEOC or similar state agency against HFHS; however, Duvall acknowledges and agrees that he hereby waives any compensation, remedy or relief that could arise out of the filing of such a charge or any legal or administrative proceeding filed against HFHS by the EEOC or any other agency, person or entity.

(b) any and all claims which could be asserted in a lawsuit against HFHS;

(c) any and all claims that Duvall was discharged improperly, constructively discharged, or illegally denied any educational opportunities, training, employment, re-employment, promotion(s), transfer(s), job opportunities, or job assignment(s);

(d) any and all claims for violation(s) of any Court Orders, administrative orders, Court Rules, or Regulations;

2

Duvall0408

(e) any and all claims for severance pay under the ESA or otherwise, lost wages, front pay, wage increases, paid or unpaid time off, stipends, or any other form of compensation, fringe benefits, or privileges of employment, except as expressly set forth herein;

(f) any claims for attorney fees, costs, or expenses;

(g) any claims for breach of any program or personnel policies or practices;

(h) any claims for mental distress, emotional problems, pain, suffering, and any other claims for non-economic damages of any kind whatsoever;

(i) any claims for breach of any implied or express contracts;

(j) any and all claims for fringe benefits including, but not limited to, health insurance, pension benefits, life insurance, sickness and/or accident insurance, vacation pay, stock options, dividends, Keogh Plans, 403(b) contributions, 457b contributions or disputes, etc., except as expressly set forth herein, or any tax liability related thereto;

(k) any claims for damages or compensation for civil rights violations, emotional distress, anxiety, embarrassment, or any physical or psychological injuries whatsoever;

(l) any claims of negligence, intentional torts, defamation, invasion of privacy, or any other tort of any kind whatsoever;

(m) any and all claims for loss of consortium, loss of affection, affiliation, or conjugal relations;

(n) any and all claims for retaliation or violation of public policy;

(o) any and all claims for interference with contractual, prospective, or advantageous relationships of any kind; and

3

    (p)    any and all claims for defamation, libel, slander, or invasion of privacy.

Likewise, HFHS agrees to waive and release Duvall from any and all claims, rights and causes of action that arise from any facts or circumstances related to his employment with, hire by and termination of employment by, HFHS.

Provided, however, nothing herein shall be considered a waiver of claims that cannot be waived by law, or for breach of this Agreement.

4. Duvall further promises and agrees not to file suit or institute any lawsuit, complaint, legal, or administrative proceedings seeking damages, compensation, benefits, attorney fees, or any other remedy or relief for Duvall based upon any rights, claim, or cause of action released in Paragraph 3 above, or based upon any alleged failure by HFHS to comply with any local, state or federal laws or regulations in connection with any compliance violation(s). Duvall covenants and affirms that he has disclosed to HFHS any and all compliance violations and concerns he has or had in connection with his tenure at HFHS. Duvall further agrees not to allow or authorize any person or entity to file such lawsuit, legal, or administrative proceeding on his behalf. Duvall understands that he does not waive or release any rights or claims that may arise or accrue after the effective date of this Release.

5. Duvall waives his right to recover and promises not to accept any compensation, benefits, damages, attorney fees, or any other remedy or relief, which arise out of any lawsuit, complaint, legal, or administrative proceeding initiated or pursued by any person or entity against HFHS based upon any claim, right, or cause of action released in Paragraph 3 above or based upon any alleged failure by HFHS to comply with any local, state or federal laws or regulations. Nothing in this Release shall interfere with Duvall's right to cooperate in an investigation or proceeding conducted by any governmental agency against HFHS.

6. In the event Duvall institutes any lawsuit, complaint, legal, or administrative proceeding, petition, or grievance described in Paragraphs 4 or 5, or authorizes any person or entity to do so, he agrees to immediately return to or reimburse HFHS for all monies,

CONFIDENTIAL - SEE PROTECTIVE ORDER

consideration, compensation, and benefits he received under this Release and reimburse HFHS for any attorney fees incurred by HFHS in defending such lawsuit, legal, or administrative proceeding, and further agrees that all provisions of this Release shall remain in full force and effect.

7. As further consideration for the promises and agreements of HFHS set forth herein, Duvall waives any right or claim to reinstatement or reemployment to any position with HFHS, and agrees not to apply for training, education, or employment with any entity that is owned or operated by HFHS or any employees of HFHS while they are employed with HFHS in any capacity at any time after the date of this Release, and further agrees not to seek damages or any other remedy or relief for the failure or refusal of HFHS or any employees of HFHS while they are employed with HFHS to train, educate, or employ him in any capacity at any time after the date of this Release. A breach by Duvall of this provision shall be cause for Duvall's immediate termination, regardless of when the breach is discovered.

8. That the ESA, inclusive of subparagraphs, is agreed to by the Parties and fully incorporated into this Release by reference. However, in the event this Release and the ESA are in conflict, this Release shall control and be enforced.

9. That Duvall's last day of employment with HFHS shall be January 6, 2020.

10. HFHS agrees that it made the decision to terminate Duvall's employment for reasons other than for Cause, as defined in the ESA.

11. HFHS hereby confirms that it was aware of Duvall's involuntary separation from Novant Health, Inc. prior to him commencing his employment with HFHS in mid-June 2019. HFHS confirms, further, that any assertion or insinuation in any media outlet (including those reports attributed to anonymous internal HFHS sources) that HFHS was unaware of Duvall's involuntary separation from Novant Health, Inc. prior to the commencement of Duvall's employment with HFHS is/are not accurate.

12. Provided Duvall otherwise complies with the terms and conditions of this Release and the ESA incorporated by reference, upon termination of Duvall's employment with HFHS,

CONFIDENTIAL - SEE PROTECTIVE ORDER

HFHS agrees to pay Duvall the full severance benefits under the ESA as follows:

(a) HFHS will pay Duvall severance in the total amount of $575,016 (less applicable taxes and other withholdings) ("severance pay" or "severance") paid in accordance with HFHS' normal payroll cycle over a period of 12 months, or such other duration based upon the reductions as contemplated in Paragraph 6 above; and

(b) HFHS will pay the insurance premiums for Duvall and his eligible spouse and dependents to continue health and/or dental coverage under COBRA (Consolidated Omnibus Budget Reconciliation Act of 1985) (if eligible) for a period of twelve (12) months commencing in February 2020. HFHS will reimburse Duvall for the COBRA premiums that Duvall paid out of pocket for February, March and April 2020, and HFHS will pay the COBRA premiums directly beginning in May 2020, continuing through January 2021. For tax purposes, the amounts HFHS pays for COBRA premiums will be grossed-up for taxes. Thereafter, Duvall may continue health and/or dental coverage under COBRA at his own expense. HFHS' obligation under this paragraph is subject to Duvall's eligibility under COBRA and his timely election of COBRA continuation health and/or dental coverage. Duvall shall receive a separate explanation from HFHS of his rights to continue health and/or dental insurance coverage under COBRA;

(c) HFHS will pay Duvall an Annual Incentive Plan Payment of $100,625 (less applicable taxes and other withholdings), paid in one lump sum within 20 days after the expiration of the revocation period described in Paragraph 23 below, and provided Duvall does not revoke his acceptance of this Release;

(d) HFHS will cause the immediate vesting of Duvall's non-vested balances in his 2009 Supplemental Executive Retirement Plan (SERP) account, which, as of February 10, 2020, was a total of $32,467.12. Duvall understands that his SERP account balance is subject to fluctuation based on market conditions and that the balance at payout, therefore, may be different.

13. HFHS will deliver all of the furniture that Duvall purchased from Restoration Hardware to his home residence or other Detroit-area location of his choosing, at HFHS's expense. Delivery will be scheduled when mutually convenient.

14. HFHS will confirm in a letter (marked "Confidential") to be provided both: (1) to Duvall (addressed to "To Whom It May Concern") upon the expiration of the revocation period described in Paragraph 23 below, provided that Duvall does not revoke his acceptance of this Release, and (2) in response to any inquiry received from any third party claiming to be a future or prospective employer of Duvall or reference-checker (HFHS will request the email address and/or fax number of the inquirer, and tell them that it handles such inquiries about former executives in writing by email or fax), that:

    a. HFHS employed Mr. Duvall beginning June 10, 2019, through January 6, 2020, in the position of Senior Vice President of Public Relations, Marketing, Communications & Chief Experience Officer;

    b. HFHS made the decision to terminate Mr. Duvall's employment for reasons other than for Cause, as defined in the Executive Severance Benefits Agreement ("ESBA") between HFHS and Mr. Duvall, which was executed before Mr. Duvall commenced employment with HFHS.

    c. HFHS will be paying Mr. Duvall the full severance benefits he is entitled to, pursuant to the terms of the ESBA.

    d. HFHS was aware of Mr. Duvall's involuntary separation from Novant Health, Inc. prior to him commencing his employment with HFHS in mid-June 2019. Any assertion or insinuation in any media outlet that HFHS was unaware of Mr. Duvall's involuntary separation from Novant Health, Inc. prior to the commencement of his employment with HFHS is not accurate; and

    e. HFHS wishes Mr. Duvall the best in his future endeavors, whatever they may be.

HFHS and Duvall each agrees that they will not publish or provide a copy of the above-referenced letter to any reporter or member of the media, and further agrees that their distribution of the above-reference letter will be limited to: (1) Duvall's prospective and future employers and job

7

Duvall0413

search consultants, exclusively in his job search effort, and (2) responding to the discovery process and/or as evidence in Duvall's ongoing litigation against Novant Health, Inc., in federal court in North Carolina (both Parties understand that the letter may become part of the public record in that litigation).

15. In the event that there is a determination of a breach pursuant to the arbitration process described in Paragraph 16, HFHS shall have the right to cease making any remaining severance payments otherwise owing to Duvall under this Release, shall have the right to cease providing any other benefits to Duvall provided for under this Release, and shall have the right to seek damages that accrued as a result of the determination of such breach. In no event shall Duvall be obligated to seek other employment or take any action by way of mitigation of the amounts payable to Duvall under any of the provisions of this Release; provided, however, that HFHS' obligation to pay premiums for health insurance coverage during the severance pay period shall cease at such time as Duvall obtains comparable alternative health care coverage through another employer.

16. Any controversy, claim or dispute arising out of or relating to this Release, any other agreement between Duvall and HFHS, or otherwise pertaining to Duvall's employment with HFHS, or the termination of such employment, shall be resolved by binding confidential arbitration, in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association and this Paragraph 16, such arbitration to be held within twenty miles of HFHS' principal corporate offices at the time the arbitration is commenced. The arbitrator shall allow such discovery as is appropriate for accomplishing a fair, speedy and cost-effective resolution of the matters in dispute. Pending the resolution of any claim, Duvall (and Duvall's beneficiaries or other proper parties) shall continue to receive all undisputed payments and benefits due under this Release or otherwise, except to the extent that the arbitrator otherwise provides. Notwithstanding the foregoing provision for arbitration, either party may seek injunctive relief from a court of competent jurisdiction where such relief would apply.

CONFIDENTIAL - SEE PROTECTIVE ORDER

17. Duvall acknowledges and agrees that any liability for taxes, withholdings, or penalties which may be imposed on him by reason of the payment of said amount shall be his sole responsibility and shall not be the responsibility of HFHS. Duvall further agrees to reimburse, indemnify, and hold harmless HFHS for any taxes, penalties, interest, or costs that HFHS may incur or be assessed resulting from his obligation and failure to pay taxes on payments made herein.

18. Duvall agrees that nothing in this Release shall be construed as an admission of wrongdoing or liability by HFHS. Duvall further agrees that this Release shall not be offered or admitted in any proceeding to prove or infer against HFHS any wrongdoing or liability. Rather, the Parties acknowledge that they have entered into this Release to amicably resolve their differences and to avoid litigation expenses and arbitration or court costs.

19. The Parties and their attorneys agree that they, their agents, attorneys, financial advisors, and any person acting on their behalf, will not otherwise discuss or disclose the terms and conditions of this Release, including but not limited to, publishing the results of this Release, the contents of any discussions and negotiations between the parties regarding this Release, with or to any person, corporation, or entity, unless legally compelled to do so by a court or administrative agency of competent jurisdiction or otherwise required by law or necessary to enforce the terms of the Release in court or in arbitration. Duvall may disclose the terms of this Release to his spouse as well as to his attorneys and accountants ("agents") as is necessary to obtain legal and financial advice, however, in making such disclosures, Duvall agrees to inform said persons of these non-disclosure provisions. All parties and their agents shall respond with "no comment" in the event either party or their agents are contacted by the press or other media, or any other third party, about Duvall's separation from HFHS. The Parties agree that a breach of this paragraph shall constitute a material breach of this Release. Both Duvall and HFHS expressly agree that they will hereafter refrain from making any remark or statement, whether verbal or in writing, except where required by law (such as in sworn testimony), that reasonably may be construed as disparaging of the other. In the event of any ensuing lawsuit or arbitration

claiming a breach of this paragraph, the prevailing party shall be entitled to reimbursement for reasonable attorneys' fees incurred in prosecuting or defending the action as well as damages to be determined by the court or arbitrator.

20. Duvall and HFHS represent that they have read and understand the terms of this Release and that they enter into it knowingly and voluntarily, without any coercion or intimidation. Duvall and HFHS acknowledge that they have been advised to consult with an attorney of their choosing, at their expense, concerning their legal rights and the consequences of entering into this Release.

21. Duvall and HFHS agree that they have been afforded a reasonable period of time to consider the terms of this Release and to discuss it with their respective his attorneys.

22. Duvall understands that he has the right under the ADEA and the Older Workers Benefit Protection Act to consider this Agreement for a period of twenty-one (21) days. If Duvall decides to sign this Agreement prior to the end of the twenty-one (21) day period, he acknowledges that he does so knowingly and voluntarily and without inducement by HFHS through fraud, coercion, misrepresentation or a threat to withdraw or alter HFHS' offer, prior to the expiration of the twenty-one (21) day time period.

23. Duvall understands that this Release is revocable by him for seven (7) calendar days following his signing of this Release, and that this Release shall not become effective or enforceable until that revocation period has expired. Duvall understands and agrees that to revoke this Release he must send, via certified mail, a signed written revocation to Michelle Johnson Tidjani, General Counsel for HFHS, 1 Ford Place, 4B, Detroit, MI 48202, within seven (7) days of signing this Release. Duvall understands and agrees that this Release shall automatically become enforceable and effective on the eighth (8th) day after he signs it so long as he has not revoked his signature in the manner prescribed herein. Should Duvall exercise the right to revoke his signature within the seven (7) day period following the signing of this Release, he understands and agrees that this Release is null and void and he will not receive the severance pay set forth in Paragraph 10.

Duvall0416
Case 3:19-cv-00624-DSC   Document 134-1   Filed 02/01/22   Page 10 of 12

24. All parties hereto promise, covenant, and agree to exercise their best, good faith, judgment and efforts to effectuate and promote the spirit of this Release and to prepare and execute any and all documents and undertake all actions necessary to effectuate the purpose of this Release as rapidly as possible.

25. The parties acknowledge and agree that if any provision of this Release is determined to be unenforceable by any court or tribunal, the remainder of this Release shall remain in full force and effect and shall not be affected thereby; provided, however, that Duvall may not challenge the validity of any provision of this Release, whether by claim or defense, without first tendering back all compensation or benefits or consideration he received pursuant to it.

26. This Release represents the complete understanding of the parties and shall be binding upon the parties, their representatives, successors, and assigns. No other promises or agreements shall be binding between the parties unless in writing and signed by the parties. Duvall represents that other than the promises set forth herein, no other promises, representations, or inducements have been made to induce him to enter into this Release.

THIS IS A WAIVER AND RELEASE -- READ BEFORE SIGNING

*/s/ David Duvall*

DAVID G. DUVALL

Dated: 3/30/20

HENRY FORD HEALTH SYSTEM

By: *Nina Ramsey*

Its: SVP Chief Human Resource Officer

Dated: April 6, 2020

11

ACKNOWLEDGMENT AND AGREEMENT

Pursuant to Paragraph 19 of the Settlement Agreement and Release of All Claims ("Release") between David G. Duvall and Henry Ford Health System dated **3/30/20**, David G. Duvall may disclose the terms of the Release to the undersigned as his spouse conditional upon my agreement to be bound by the non-disclosure provisions. By signing in the space provided below, I acknowledge that I, Duvall's spouse, have read and agree to be legally bound to the confidentiality and non-disclosure obligations outlined in Paragraph 19 of the Release.

*/s/ Karen Duvall*

Printed name: Karen Duvall

Date: 3/30/20