IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| DAVID DUVALL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NOVANT HEALTH, INC., )<br>)<br>Defendant. )<br>) | C.A. No. 3:19-cv-00624-DSC |

**RESPONSE TO MEMO IN SUPPORT OF SANCTIONS**

Plaintiff, through counsel, submits this response to Defendant's memo [ECF 131] in support of its motion for sanctions. [ECF 130]

Defendant's memo sets out legal standards for sanctions and a series of cases where sanctions were awarded. Plaintiff's counsel does not dispute that a court has the power to sanction counsel in appropriate circumstances. None exist here.

Since Defendant makes no effort to explain how the conduct of counsel in the six cases bulleted at page 4 of its brief apply to the accusations made here, Plaintiff's counsel does not analyze those cases. Instead, counsel sets out the portions of the record that Defendant cites as sanctionable conduct. Plaintiff's counsel does not believe any of them involve sanctionable conduct.

### I. The Purported Violations of the Court's Order Limiting Comparator Evidence.

Defendant seeks sanctions for Plaintiff's counsel allegedly violating the Court's rulings to disallow evidence regarding the terminations of six white males identified in discovery, on that basis that Jesse Cureton was not involved in their terminations. ECF 84, p. 1, ¶ 1. Defendant seeks sanctions for three alleged violations of that order over the six days of trial. See, ECF 131, p. 5 referring to ECF 115, 233:3-13, ECF 116, 198:21-199:5; and ECF 119, 57:3-11.

    A.    **ECF 115, 233:3-13**. Here is the testimony of Matthias Krebs that Defendant claims violated the *in limine* Court's order.

> BY MR. LARGESS:
> Q. Mr. Krebs, in the people you saw being let go without reason --
> A. Um-hum.
> Q. -- to you was the pattern one where they intended to be white men?
> A. Yes.
> MR. HOLLAND: Objection.
> THE COURT: Overruled.
> THE WITNESS: Sorry.
> THE COURT: No, you may answer.
> THE WITNESS: Yes.

Counsel does not believe that asking a question that the Court allowed violated the *in limine* order or was otherwise sanctionable.

    B.    **ECF 116, 198:21-199:5**. This segment is the testimony of Plaintiff that Defendant cites to repeatedly as preventing it from having a fair trial. Counsel agrees that Plaintiff should not have mentioned the positions held by these persons, but the

2

Court gave a limiting instruction that Defendant has not shown failed to remedy any impact, except to claim baldly this is the reason it lost the trial.

> And then, you know, I was aware that several senior male executives had been let go from the company in the months prior to me being let go. And then in the weeks and months following my termination, more and more were being let go. And that's when you know, a very clear pattern started to emerge when you have, you know, <u>your chief legal officer, your chief experience officer, your chief medical officer, your chief IT officer, your president of the Charlotte market, yourself</u>.

Defendant did not object during this testimony, but waited until the jury was dismissed for the day to raise a "plain error" claim. These positions were referred to in the Court's *in limine* ruling. Overnight, at the Court's direction, the parties attempted unsuccessfully to negotiate a limiting instruction.

The next morning, as the parties presented competing instructions, Plaintiff's counsel took the Court through evidence that had already admitted without Defendant's objection, including the testimony of Mr. Brunstetter about Defendant setting bonuses and "actual targets for diverse individuals to move into leadership positions" about the time he was let go. *See* ECF 117, 5:12 – 7:7.

Counsel then pointed out the deposition testimony, read into the record without objection, of Shane Grady, the recruiter, who asked Jesse Cureton why there had been changes in leadership at Novant, to which Cureton responded: "Lots of change in the last 12 months, re-executive leaders." . . . "Desire to bring in new leaders, not a performance, not a reflection of doing a poor job. It was a desire for different point of view, different, quote, unquote, flare."

Then there was this gap in the testimony excerpted out that named some of the positions that had been filled, but then a last line was read. "So, it was going through the executives that had been in place."

Then counsel reviewed the testimony of Mr. Armato, allowed by the Court, about his comments in the press about the impact of a diversity training with white male senior leaders on embedding a culture of diversity at Novant, and then showing Armato the attendance list and asking if 12 of 16 attendees were no longer with Novant.

Counsel then asked what needed to be remedied from Plaintiff's testimony, given what the jury had heard already. Plaintiff asked for a simple instruction to disregard Duvall's testimony about the positions because the persons did not report to Cureton.

The Court asked aloud if Defendant' failure to object was invited error. *Id.* 8:20-21. It heard from Defendant and then read this instruction to the jury.

> Ladies and gentlemen, the plaintiff,
> Mr. Duvall, testified yesterday identifying by position some
> employees who separated from Novant but did not report to
> Jesse Cureton. You are instructed to disregard that
> testimony. There is no evidence in the record concerning
> those separations.

*Id.* p. 23:7-12. Defendant now claims this instruction was inadequate, but does not cite to any case authority supporting that assertion. In fact, there is an "almost

invariable assumption of the law that jurors follow their instructions". *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

      C.    **ECF 119, 57:3-11**. This third portion of the trial was closing argument, where counsel reviewed in shorter form the admitted evidence described above, along with describing how defense counsel tried to get Plaintiff to testify that any time a minority replaced a white person that was discrimination.

> And they want to savage him and say you said that just because a white person gets replaced by a black person, that's evidence of discrimination. And they leave out both, you know, his testimony here, but also in the video that they played they leave out his explanation I'm talking about the pattern. I'm talking about what I saw. And that pattern was described by Mr. Armato, described by Mr. Cureton to the recruiter, and described by Mr. Brunstetter that began this focus on numbers.

ECF 119, 57:3-11. This argument discussed evidence admitted by the Court, most of it without any objection from Defendant, and none of which violated the *in limine* order. Arguing in closing about the evidence admitted during the trial is permissible trial advocacy.

      D.    Defendant argues, again without case law, that Plaintiff's counsel made arguments in closing that destroyed the effectiveness of the limiting instruction. These included

      1.    **ECF 119, 20:5-6**. Plaintiff underlines the offending section, and then shows the context of the word "pattern". Counsel was simply explaining the

5

*McDonnell Douglas* proof pattern. It is as if Defendant did a word search for "pattern" and now seeks sanctions for any time it was uttered at trial.

> <u>And then there's circumstantial evidence, and I'll explain sort of the proof pattern there</u>. But that's where you make inferences that this wouldn't have happened but for that kind of thing. And there's a pattern in employment cases that you look at whether the person's sort of protected by the statute. We just explained why he is.
> And then was he performing his job adequately, and I think (in spades?) he was doing a great job. And then was he fired or somehow some adverse action. Here he was terminated, clearly.

There is nothing sanctionable in describing the *McDonnell Douglas* pattern of proof to the jury.

    2.    **119: 27:20 to 28:6**. Defendant then asks for sanctions for discussing the evidence the Court allowed about the CEO Armato boasting in the press about the impact of the training seminar on the culture at Novant.

> And what do we know happened? It's an interesting testimony. Mr. Armato, if you remember, would put in front of him this magazine article from 2019, Beckers, which is this health trade journal, and in it he's boasting about sort of the initiatives they've done to sort of accomplish all of this stuff. And in one of them was that he had put his senior leadership through this White Men for Diversity Partners, WMFDP training, and that it had a profound effect on embedding diversity at Novant. And then he admitted 12 of those 16 white men at that conference no longer worked for Novant, and he said they were all fired for performance. Performance like David's?

It was not a violation of the Court's order to discuss admitted evidence with the jury.

6

3. **119 56:3-11**. In this citation to the closing, counsel simply recounted Matthias Krebs testimony about his reaction to Vicky Free as Plaintiff's replacement. It did not violate the *in limine* order.

> . . .did to take them to the next level, because she didn't. She
> didn't have any experience in health care. She didn't have
> any unique training other than what David had, and she didn't
> have any great idea. I think that was Matias's testimony.
> But if you remember during the time I kept waiting for the
> great idea. None came. And then she left.
> So Matthias meets with counsel when we list him as
> a witness. And he tells them what he told you on the stand.
> David was a fantastic boss. And he tells about his . . .

It may be that Defendant made a mistake in this citation, but this section, recounting his misgivings about Duvall's replacement hardly seems improper.

4. **119, 106:9-12**. This part of the closing refers to defense counsel's questioning of Duvall and Plaintiff's response to Defendant's questions.

> And then finally on legal matters. This kind of
> continually hammering Mr. Duvall for explaining that he has
> concern that being replaced -- this pattern of being replaced
> is discriminatory. If it were that simple that his . . .

It is a little difficult to understand the objection here, but it seems that Defendant believes it was improper to use the word pattern. But Plaintiff believed he was let go due to the D&I initiative when he saw others let go similarly. This excerpt does not identify anyone.

5. **119: 107:23-25**   This segment refers to counsel juxtaposing to admitted exhibits.

7

> We have no idea who created it. It was created for this trial. And they want to use it to contrast with that document that we showed you that showed from 2018 when this sort of ratchet downtime to 2019 the number of women and vice president and higher went up 21 percent, and they're trying to contradict that. They're contradicting their own two documents. So, which one do you believe? The one that they presented to, you know, as their document celebrating the success in the third phase, or the one that they created in this lawsuit to try to make an argument that the number of SVPs hasn't changed much. Remember we went through this in the testimony asking her about that. This is a high level up. Making change of significant dimension with people at high levels in these organizations takes time. But they don't dispute the core fact here. You can't fire people to try to make those changes. We don't know all of the ins and out of what happened in all of the various departments and who sort of, you know, and also whether there's been mergers, whether people have been added from other health systems. There's just a lot of data in that. <u>But it's sort of an interesting question because it's a defense about the pattern overall outside of Mr. Cureton going from seven to none. The pattern overall.</u>

Plaintiff provides the context preceding the three lines Defendant cites here. Plaintiff's counsel was asking the jury if it believed the pattern of change shown in the statistics in Pl. Ex. 21, p. 2 – the September 2019 summary of annual demographic progress since 2016, or the pattern of little change in the exhibit on SVPs that Defendant prepared for trial. This argument had nothing to do with the *in limine* order. Indeed, it is an argument about the one evidentiary irony of this case. Defendant produced this SVP document to show a pattern across Novant for several

years in defense of the lawsuit, but objected then and now to any use of the term "pattern" by Plaintiff to prove his claim.

6. **ECF 116, 199:6-12.** Finally, Defendant asks the Court to sanction Plaintiff's counsel for asking Plaintiff about other white men whom Cureton let go and replaced. Cureton had already testified that he had seven white male direct reports in January 2018, then only two by January 19, and then none at the at the time of trial. Plaintiff identified some of them.

> Q. And then you also had people within direct reports of
> Mr. Cureton. Mr. Brajer had been let go?
> A. Yeah, our head of strategy, Dr. Will Caldwell, the head
> of our network development. Subsequent to my departure,
> Dr. Hayes Willom at corporate -- out of concierge medicine.
> I know I'm missing one, Luke.
> Q. It's okay. Q. And then you also had people within direct reports of
> Mr. Cureton. Mr. Brajer had been let go?
> A. Yeah, our head of strategy, Dr. Will Caldwell, the head
> of our network development. Subsequent to my departure,
> Dr. Hayes Willom at corporate -- out of concierge medicine.
> I know I'm missing one, Luke.
> Q. It's okay.

Plaintiff and his counsel do not understand how eliciting this information – putting names on evidence already before the jury – violated any order of this Court

### E. The Termination of Matthias Krebs

Defendant then turns to Matthias Krebs' testimony that he was fired on September 2, 2021, the day after telling Novant counsel that he would testify favorably for Duvall at trial. The record shows that Novant received a service copy of Duvall's subpoena on August 31, 2021 and Krebs was contacted by in house counsel

9

that same day, directed to meet with Defendant's trial counsel on September 1. He spoke favorably of Duvall at that meeting and was terminated on September 2. ECF 95-4 (Krebs Decl.). Krebs then testified about being fired. ECF 115, pp. 223-24.

Defendant claims that this testimony was improper because it had provided Plaintiff's counsel with declarations from Novant employees that the timing of the termination was coincidental. Counsel notes that the emails provided from the human resource person who fired Plaintiff show that she was notified on September 1 to fire him. ECF 131-4. And the emails supposedly showing longtime plans to fire Krebs only mention his name once, in a February 2020 a message discussing whether his job classification ("J.D.") was correct. ECF 131-2, p. 5. Plaintiff's counsel was not persuaded by this evidence that Krebs' termination was coincidental. Can he be sanctioned for that?

Defense counsel did not object when Krebs testified about his termination, cross-examined Krebs without challenging the reason for his termination, and did not attempt to bring in any of these witnesses. Plaintiff's counsel does not have a duty to believe Defendant or present its evidence to the jury.

### F. The Evidence about Bonuses and Targets

Finally, Defendant requests sanctions because Plaintiff argued to the jury that Defendant used financial incentives and diversity targets during the 2016 to 2019 push. It creates a chart of Ms. Blackmon denying that there were any bonuses or

targets. Defendant fails once again to mention the evidence on these subjects introduced at trial that directly contradicted her denials. It includes the following:

- A statement in the timetable to create diversity metrics and incorporate D&I goals in the annual and long-term incentive plan in 2017. Pl. Ex. 3
- A copy of payroll records showing the change in 2017 in the annual goal to replace "patient satisfaction" with "team member engagement" Pl. Ex. 75
- A long-term incentive document for 2017 setting "Diversity and Inclusion" as one of three measures for LTI bonuses, also called "team member engagement," as in the AIP goals. Pl. Ex. 6
- The Diversity, Inc scorecard showing Defendant's statement that its CEO signed off on diversity-based compensation and his direct reports received diversity incentive pay. Pl. Ex. 7.
- Testimony from Armato about the AIP plan document, Pl. Ex. 86, which required patient satisfaction/experience as an AIP goal. But it was removed as an AIP goal after 2016. Pl. Ex. 75, 83, 84
- Armato's testimony that the change from patient satisfaction goal to "team member engagement" increased the value of the system AIP bonus by 25% or about $275,000 for him in 2017, and about $300,000 in 2018, and large bonuses for all EVPs as well.
- Brunstetter's testimony that at the time he was separated, the executive team was focused on "bonus and targets" and "making goals out of the diversity and inclusion programs where we would set actual targets for individuals to -- for diverse individuals to move into leadership positions."
- The timetable goal of setting up the DIEC and using a diversity lens for decisions in 2018. Pl. Ex. 3, p. 4
- The minutes from the May 2018 DIEC meeting showing that diversity metrics were reviewed. Pl. Ex. 14.
- Those metrics showed a decline in female leaders from 2015 to 2017, except for the executive team. Pl. Ex. 15
- That Plaintiff was fired in July 2018 without warning to be replaced by two women. Pl. Ex. 16
- At the October 2018 DIEC, the minutes contain a declaration of the right to set targets to transform the workforce and leadership to reflect the community, and list concerns being voiced about the focus on promoting and hiring women, whether white men had any future at Novant and when would this emphasis on diversity targets end. Pl. Ex. 18
- The February 2019 report to the Board recommending targets for Black leaders and Asian and Hispanic employees and leaders. Pl. Ex. 19

11

- The 2019-21 LTI showing bonuses tied to meeting goals for Hispanic and Asian employees. Pl. Ex. 20
- The September 2019 Phase 3 report showing the progress since 2016 including an increase in female representation at VP and higher from 47.4% to 68.5% and a decrease in white leadership of 5.6% since 2016. Pl. Ex. 21

This evidence supported the arguments of bonuses and targets. Plaintiff's counsel should not be sanctioned for viewing the evidence differently than Defendant. Defendant had failed to mention any this evidence in its 98 pages of post-trial briefing – while seeking sanctions against Plaintiff and his counsel for relying on it. That is unfortunate.

## CONCLUSION

Plaintiff respectfully asks the Court to deny the motion.

Submitted, this 18th day of February, 2022.

>  **/s/ S. Luke Largess**
> NC Bar No. 17486
> *Attorney for Plaintiff*
> Tin, Fulton, Walker & Owen, PLLC
> 301 East Park Avenue
> Charlotte, NC 28203
> Telephone: 704.338.1220
> Email:llargess@tinfulton.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have this day electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record:

      This is the 18th day of February, 2022.

                              /s/S. Luke Largess
                              N.C. Bar No. 17486
                              *Attorney for Plaintiff*